# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| AMERICAN WATER WORKS ASSOCIATION and ASSOCIATION OF METROPOLITAN WATER AGENCIES, | ) ) ) ) | |
| | ) | |
| Petitioners, | ) | |
| | ) | Lead Case No. 24-1188 |
| v. | ) | |
| | ) | consolidated with |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, and LEE M. ZELDIN, in his official capacity as Administrator, United States Environmental Protection Agency, | ) ) ) ) ) ) ) | Nos. 24-1191, 24-1192 |
| | ) | |
| Respondents. | ) | |

## RESPONDENT-INTERVENORS' OPPOSITION TO EPA'S MOTION TO SEVER AND HOLD CHALLENGES TO INDEX PFAS IN ABEYANCE

# TABLE OF CONTENTS

TABLE OF CONTENTS.................................................................................. ii

TABLE OF AUTHORITIES ......................................................................... iii

INTRODUCTION .........................................................................................1

BACKGROUND ...........................................................................................1

STANDARD OF REVIEW ...........................................................................5

ARGUMENT .................................................................................................6

    I.   EPA's Request Is Unworkable Because the Index PFAS Issues Are Inextricably Intertwined with Other Issues in the Case ..................................7

    II.  EPA Has Not Justified an Abeyance .............................................8

    III. An Abeyance Would Prejudice Intervenors.....................................11

    IV. The Requested Abeyance Would Waste the Resources of the Parties and the Court ...............................................................16

CONCLUSION .............................................................................................18

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT..................20

CERTIFICATE OF SERVICE .............................................................21

# TABLE OF AUTHORITIES

**Cases**

*Am. Petrol. Inst. v. EPA*,
683 F.3d 382 (D.C. Cir. 2012) ........................................................................ 10, 18

*Am. Waterways Operators v. Wheeler*,
427 F. Supp. 3d 95 (D.D.C. 2019) ................................................................... 15–16

*AT&T Corp. v. FCC*,
841 F.3d 1047 (D.C. Cir. 2016) ........................................................................ 6, 18

*Athridge v. Aetna Cas. & Sur. Co.*,
604 F.3d 625 (D.C. Cir. 2010) ..............................................................................5

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
668 F.3d 724 (D.C. Cir. 2012) ..................................................................... 6, 9, 11

*Clinton v. Jones*,
520 U.S. 681 (1997) ............................................................................................6, 9

*Dellinger v. Mitchell*,
442 F.2d 782 (D.C. Cir. 1971) ...............................................................................6

*Devia v. Nuclear Regul. Comm'n*,
492 F.3d 421 (D.C. Cir. 2007) ..............................................................................16

*Hall v. S. River Restoration, Inc.*, No. 16-cv-2239,
2017 WL 11727906 (D.D.C. Mar. 3, 2017) ...................................................... 5, 16

*Lake Carriers' Ass'n v. EPA*,
652 F.3d 1 (D.C. Cir. 2011) ...................................................................................9

*Landis v. N. Am. Co.*,
299 U.S. 248 (1936) ................................................................................ 6, 8, 11, 15

*Lockyer v. Mirant Corp.,*
398 F.3d 1098 (9th Cir. 2005) ...............................................................................9

*Nat. Res. Def. Council v. EPA*,
67 F.4th 397 (D.C. Cir. 2023) ..............................................................................10

*Ohio Forestry Ass'n v. Sierra Club,*
523 U.S. 726 (1998)......................................................................................15

*Sierra Club v. U.S. Dep't of Transp.,*
125 F.4th 1170 (D.C. Cir. 2025)...................................................................10

*United Mine Workers of Am. v. Gibbs,*
383 U.S. 715 (1966).........................................................................................5

*Utah ex. rel. Cox v. EPA*, No. 23-1157,
2025 WL 1354371 (D.C. Cir. May 2, 2025) ...............................................16

**Statutes**

42 U.S.C. § 300g-1(b)(9) ......................................................................... 10, 17

42 U.S.C. § 300g-2(a) ...................................................................................13

**Federal Register Notices**

PFAS National Primary Drinking Water Regulation,
89 Fed. Reg. 32532 (Apr. 26, 2024) ....................................................... 1–2, 12

**Regulations**

40 C.F.R. § 141.900(b) ...................................................................................12

**Other Authorities**

Am. Water Works Ass'n, *PFAS Treatment Evaluation* (2025),
https://www.awwa.org/wp-content/uploads/PFAS-Treatment-Evaluation-
Framework-for-Approaching-Permit-Plan-Approval.pdf ...................................12

D.C. Cir. Handbook of Practice and Internal Procedures V.A. .............................5, 8

*EPA Announces It Will Keep Maximum Contaminant Levels for PFOA, PFOS,*
EPA (May 14, 2025), https://www.epa.gov/newsreleases/epa-announces-it-
will-keep-maximum-contaminant-levels-pfoa-pfos ............................................3

Fed. R. App. P. 27(a)(2)(A) .............................................................................8

Fed. R. Civ. P. 18 ............................................................................................5

Fed. R. Civ. P. 42(b) .......................................................................................5

Mem. from Marietta Echeverria, Dir., EPA Drinking Water Capacity &
Compliance Assistance Div., to EPA Regional Water Div. Dirs., Regions
1-10 (Jan. 12, 2026) ...................................................................................13

## INTRODUCTION

This Court should reject EPA's request to further complicate this litigation by severing and placing in abeyance Petitioners' challenges to EPA's regulatory determinations and drinking water goals and standards for the PFAS chemicals PFNA, PFHxS, HFPO-DA, and PFBS (the "Index PFAS Provisions"). EPA fails to explain how the Court could practicably sever Petitioners' arguments pertaining to the those four PFAS, many of which are inextricably intertwined with Petitioners' arguments concerning the other two PFAS regulated by the challenged rule. EPA also fails to establish any legitimate need for an abeyance, nor any prejudice from proceeding with this litigation in full. Indeed, EPA previously conceded that it lacks discretion to pursue the very rulemaking to rescind the Index PFAS Provisions that it now invokes as the basis for its abeyance request. EPA also ignores that its requested abeyance would prejudice Respondent-Intervenors. Further, splitting this litigation in two would not promote judicial economy. To the contrary, as EPA acknowledged in its unsuccessful motion to vacate the Index PFAS Provisions, delaying resolution of Petitioners' challenges to those provisions would only spawn more litigation.

## BACKGROUND

In these consolidated petitions for review, Petitioners representing the chemical industry and drinking water utilities challenge EPA's "PFAS National

Primary Drinking Water Regulation," 89 Fed. Reg. 32532 (Apr. 26, 2024) (the "Rule"), which establishes limits on toxic chemicals known as PFAS in drinking water and related monitoring and public notification requirements. The Rule regulates six PFAS chemicals: HFPO-DA, PFBS, PFHxS, and PFNA (collectively, the "Index PFAS"); PFOA; and PFOS. The Rule includes EPA's determinations to regulate under the Safe Drinking Water Act HFPO-DA, PFHxS, and PFNA individually and mixtures of the Index PFAS (the "Determinations"), as well as non-enforceable Maximum Contaminant Level Goals ("Goals") and enforceable Maximum Contaminant Levels ("Standards") for these chemicals. These provisions are referred to collectively as the "Index PFAS Provisions." The Rule also establishes Goals and Standards for PFOA and PFOS.

Petitioners filed their two opening briefs on October 7, 2024, seeking vacatur of the entire Rule. Op. Br. of Pet'rs' Am. Water Works Ass'n et al. 57, Dkt. No. 2078734 ("Utility Br."); Br. for Pet'rs' Nat'l Ass'n of Mfrs. et al. 60, Dkt. No. 2078731 ("Industry Br."). Among other arguments, Petitioners challenged the Index PFAS Provisions on the grounds that EPA purportedly violated the Safe Drinking Water Act by proposing and finalizing the Index PFAS Goals and Standards concurrently with its Determinations for the Index PFAS. Utility Br. 18–32; Industry Br. 34–37. In addition to this procedural challenge, Petitioners also challenged the evidentiary and analytical bases for the Index PFAS Provisions as

2

well as EPA's authority to regulate mixtures of the Index PFAS. Utility Br. 33–57; Industry Br. 14–60.

EPA filed its brief on December 23, 2024, defending all aspects of the Rule. Resp'ts' Proof Br. 122, Dkt. No. 2091318. Intervenors, who represent individuals harmed by contamination of their drinking water with PFAS subject to the Rule, filed their brief on January 17, 2025, and likewise defended the entire Rule. Proof Br. of Resp't-Intervenors 47, Dkt. No. 2094834.

On May 14, 2025, while this case was in abeyance to permit EPA to reconsider its positions following the change in presidential administration, EPA announced "its intent to rescind the regulations and reconsider the regulatory determinations for" the Index PFAS for the asserted purpose of "ensur[ing] that the determinations and any resulting drinking water regulation follow the legal process laid out in the Safe Drinking Water Act." *EPA Announces It Will Keep Maximum Contaminant Levels for PFOA, PFOS*, EPA (May 14, 2025), https://www.epa.gov/newsreleases/epa-announces-it-will-keep-maximum-contaminant-levels-pfoa-pfos. In the same announcement, EPA stated that it intends to retain the Standards for PFOA and PFOS but delay their implementation. *Id.* In the intervening nine months, EPA has not published proposed rules to effectuate this announcement, much less final rules.

EPA subsequently filed two motions in which it has taken opposite positions on how this litigation should proceed in light of its plans to administratively rescind the Index PFAS Provisions. First, on September 11, 2026, EPA moved for vacatur of the Index PFAS Provisions, reversing its prior position that the provisions are lawful and instead advancing Petitioners' argument that EPA violated the Safe Drinking Water Act by simultaneously promulgating its Determinations and Standards for the Index PFAS. Resp'ts' Mot. for Partial Vacatur 2, Dkt. No. 2134523 ("Vacatur Mot."). EPA urged the Court to rule immediately on the alleged procedural invalidity of the Index PFAS Provisions, arguing that proceeding with its planned rulemaking to rescind those provisions "under the cloud of [this] disputed legal issue" would burden the agency. *Id.* at 3. Intervenors opposed EPA's Vacatur Motion, Resp't-Intervenors' Opp'n to EPA's Mot. for Partial Vacatur, Dkt. No. 2137412 ("Vacatur Opp'n"), and the Court denied EPA's motion on January 21, 2026, because "[t]he merits of the parties' positions are not so clear as to warrant summary action." Order 1, Dkt. No. 2155270.

Second, on February 19, 2026, approximately two weeks before the scheduled conclusion of merits briefing, EPA filed another motion asking the Court to *delay* ruling on the legality of the Index PFAS Provisions—the very question it was pressing the Court to expeditiously resolve a few months ago. *See*

4

*generally* EPA Mot. to Sever and Hold Challenges in Abeyance, Dkt. No. 2160037 ("Abeyance Mot."). As explained below, EPA fails to justify severance and abeyance of the Index PFAS issues, which is not practicable and would prejudice Intervenors and waste the resources of the Court and the parties.

## STANDARD OF REVIEW

The Court's rules do not address severing issues from a petition for review, though the Court has a stated preference for resolving together all challenges to the same agency action. D.C. Cir. Handbook of Practice and Internal Procedures V.A. Similarly, the rules of civil procedure "strongly encourage[]" "the broadest possible scope of action consistent with fairness to the parties," including "joinder of claims, parties and remedies." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *see* Fed. R. Civ. P. 18. Courts have discretion to sever issues "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P. 42(b). A motion to sever generally will be denied, however, if the issues "involve extensive proof and substantially the same facts, or if any saving in time and expense is speculative." *Hall v. S. River Restoration, Inc.*, No. 16-cv-2239, 2017 WL 11727906, at *3 (D.D.C. Mar. 3, 2017) (quotation omitted); *see also Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 635 (D.C. Cir. 2010).

When requesting an abeyance, "if there is even a fair possibility that the [abeyance] … will work damage to some one else," the moving party must make

out "a clear case of hardship or inequity in being required to go forward." *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936); *see Clinton v. Jones*, 520 U.S. 681, 708 (1997) ("The proponent of a stay bears the burden of establishing its need.").[1] Where, as here, a party seeks an abeyance of "indefinite duration," it must demonstrate a "pressing need," and any order granting such an abeyance "must be supported by a 'balanced finding that such need overrides the injury to the party being stayed.'" *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 731–32 (D.C. Cir. 2012) (first quoting *Landis*, 299 U.S. at 255; and then quoting *Dellinger v. Mitchell*, 442 F.2d 782, 787 (D.C. Cir. 1971)). A court must also consider judicial economy, *Belize*, 668 F.3d at 732–33 (discussing *Landis*, 299 U.S. at 254–55, 259), which favors deciding the issues before it when doing so would "avoid re-litigation of identical issues in a subsequent petition." *AT&T Corp. v. FCC*, 841 F.3d 1047, 1054 (D.C. Cir. 2016).

## ARGUMENT

EPA's motion to sever and place in abeyance Petitioners' challenges to the Index PFAS Provisions should be denied. First, severance is impracticable because many of Petitioners' claims pertain to the Rule as a whole; EPA does not even

---

[1] For purposes of this motion, the terms "stay" and "abeyance" are used interchangeably and the cited caselaw pertains to a stay or abeyance that pauses judicial proceedings (as opposed to a stay that prevents a judicial order or agency rule from taking effect during the pendency of ongoing proceedings).

attempt to explain how the Court or the parties could parse which aspects of those cross-cutting arguments apply only to the Index PFAS Provisions. Second, EPA's request for an abeyance fails because (1) EPA has not even attempted to demonstrate prejudice from having to proceed nor identified any legitimate—let alone pressing—need for an abeyance, (2) an abeyance would prejudice Intervenors, and (3) an abeyance would waste the resources of the parties and the Court.

## I.     EPA's Request Is Unworkable Because the Index PFAS Issues Are Inextricably Intertwined with Other Issues in the Case

EPA seeks to "sever Petitioners' challenges to the Index PFAS regulatory determinations and regulations." Abeyance Mot. 1. But the agency fails to identify which specific "challenges" it seeks to sever. In so doing, EPA elides the fact that severance is unworkable because, while it is true that the Rule's provisions are severable, many of Petitioners' challenges to those provisions are not. For example, Petitioners seek vacatur of the entire Rule based on alleged flaws in EPA's cost-benefit analysis that implicate the Standards for the Index PFAS and PFOA and PFOS. *See* Industry Br. 14–18 (arguing that "the entire Rule" should be vacated based on alleged errors in cost-benefit analysis, including that EPA combined analyses of the costs and benefits of regulating all six PFAS covered by the Rule); Reply Br. for Pet'rs Nat'l Ass'n of Mfrs. et al. 2, Dkt. No. 2160312 ("Industry Reply") (arguing that supposed "errors" in cost-benefit analysis "taint

7

all the final [Standards]"); Utility Br. 56 (arguing generally that EPA arbitrarily considered nonquantifiable benefits to justify the Rule). Similarly, Industry Petitioners argue that the Rule is unlawful because EPA failed to adequately consider factors bearing on its feasibility, such as laboratory capacity to test water for the regulated PFAS. Industry Br. 3, 23–27; Industry Reply 14–17.

EPA does not even attempt to explain how the Court should parse these cross-cutting arguments and which arguments, or parts of them, would be subject to the requested abeyance. *See* Abeyance Mot. 1; *cf.* Fed. R. App. P. 27(a)(2)(A) (requiring motions to state with particularity relief sought). And it is facially impracticable to do so. Moreover, even if severance were practicable, it would run counter to this Circuit's preference for resolving together all challenges to the same agency action. D.C. Cir. Handbook of Practice and Internal Procedures V.A.

## II. EPA Has Not Justified an Abeyance

Even if Petitioners' challenges to the Index PFAS Provisions were severable, which they are not, EPA's motion fails because EPA does not even attempt to demonstrate hardship from litigating those challenges now. *See Landis*, 299 U.S. at 255. And EPA fails to identify any other need for the requested abeyance, *see*

*Clinton*, 520 U.S. at 708, let alone the "pressing need" required to justify an abeyance of indefinite duration, *Belize*, 668 F.3d at 731–32 (quotation omitted).[2]

EPA does not claim that proceeding with the pending challenges to the Index PFAS Provisions would interfere with EPA's nascent effort to rescind those provisions administratively. *See* Abeyance Mot. 2–5. Nor could EPA credibly advance that argument. Just a few months ago, EPA argued the opposite, claiming that proceeding with its rescission rulemaking "under the cloud of [the] disputed legal issue" it now asks this Court to delay resolving would burden the agency with "needless additional proceedings." Vacatur Mot. 3.

The only basis EPA does offer for its abeyance request—"that agencies may generally … revise their past decisions" based on their "reevaluation of which policy would be better in light of the facts," Abeyance Mot. 4 (quotations omitted)—is meritless because in this case the Safe Drinking Water Act deprives EPA of that discretion. As EPA conceded in its unsuccessful motion to vacate the Index PFAS provisions, "[p]ursuant to this Court's precedent, *EPA cannot rescind a regulatory determination* based on additional data or analysis." Vacatur Mot. 20

---

[2] EPA may not attempt to fill this void by raising such arguments for the first time on reply. *See*, *e.g.*, *Lake Carriers' Ass'n v. EPA*, 652 F.3d 1, 10 n.9 (D.C. Cir. 2011) (affirming that "arguments not raised until the reply brief are waived"). Moreover, merely "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.,* 398 F.3d 1098, 1112 (9th Cir. 2005).

(emphasis added) (citing *Nat. Res. Def. Council v. EPA*, 67 F.4th 397, 405 (D.C. Cir. 2023)). EPA also conceded that it lacks discretion to revise the Index PFAS Standards unless that revision "maintain[s], or provide[s] for greater, protection of … health." *Id.* at 21 (quoting 42 U.S.C. § 300g-1(b)(9)). Having failed to spin these constraints on its authority into justifications for prompt judicial vacatur of the Index PFAS Provisions, EPA cannot now pretend those constraints do not exist. Because the governing statute and controlling precedent forbid EPA's recission of the Index PFAS Provisions based on "reapprais[ing] … the costs and benefits of its … regulations," Abeyance Mot. 4 (quotation omitted), the justification EPA offers for an abeyance is spurious.

Furthermore, even setting aside the statutory bar to the administrative rescission that is the basis for EPA's abeyance request, this Court "ha[s] rejected the notion that an agency can stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way." *Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170, 1180 (D.C. Cir. 2025) (quotation omitted). While the Court has previously deferred pending challenges to a rule where the agency's planned changes likely would "dispense with the need for" judicial resolution of the disputed issues, *Am. Petrol. Inst. v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012), that is not the case here. Instead, as explained *infra* Point IV, it is virtually certain that this Court will be called upon to decide whether

10

EPA's procedure for promulgating the Index PFAS Provisions was lawful and, if it was not, whether the Provisions must be vacated as a result.

In short, EPA identifies no legitimate need for an abeyance—let alone the "pressing need," *Belize*, 668 F.3d at 731–32 (quotation omitted), or "clear … hardship," *Landis*, 299 U.S. at 255, required to justify that relief given the indefinite duration of the requested abeyance and the hardship it would inflict on Intervenors, *see infra* Point III. For this reason alone, EPA's motion should be rejected.

## III. An Abeyance Would Prejudice Intervenors

There is more than a "fair possibility," *Landis* 299 U.S. at 255, that an abeyance would harm Intervenors, and that harm outweighs EPA's nonexistent hardship from continuing to litigate all issues in this case. Intervenors are the only parties still defending the Index PFAS Provisions and seeking to have them implemented on schedule. Deferring a judgment about the legality of the Index PFAS Provisions would prejudice Intervenors because meeting the Rule's deadlines requires action now by water systems, which are unlikely to timely complete all necessary actions while the Provisions' legal status is in limbo. Compliance delays would increase and prolong the burden on Intervenors and their members to expend resources to try to protect themselves from exposure to the Index PFAS. And compliance delays would deprive Intervenors and their members

of the informational and contaminant-reduction benefits of the Index PFAS Provisions, to which they are legally entitled, within the Rule's deadlines.

To meet the deadlines that apply to the Index PFAS Provisions, water systems' compliance actions should be starting or under way now. Water systems face deadlines to complete initial monitoring for the Index PFAS by April 2027 and to comply with the enforceable Standards for the Index PFAS by April 2029. 89 Fed. Reg. at 32633; 40 C.F.R. § 141.900(b). Initial monitoring must take place over a 12-month period, so water systems must start monitoring by about April 2026 at the latest. *See* 89 Fed. Reg. at 32612. Installation of treatment technologies for PFAS, "on average, take[s] about three or more years to complete," plus time for securing funding and pilot testing. *Id.* at 32632. To meet the April 2029 deadline, water systems should begin to implement necessary capital improvement projects now. *See* Am. Water Works Ass'n, *PFAS Treatment Evaluation* 1-2 to 1-3 (2025), https://www.awwa.org/wp-content/uploads/PFAS-Treatment-Evaluation-Framework-for-Approaching-Permit-Plan-Approval.pdf (providing example compliance timeline for the Rule in which detailed design and bidding is underway now and construction begins this year); *see also* Vacatur Opp'n 28–29 & n.4

(noting that some water systems have already commenced multi-million dollar projects to comply with the Rule).[3]

Prolonged uncertainty about the legality of the Index PFAS Provisions may also deter states from enforcing the Rule. The Safe Drinking Water Act embodies a cooperative federalism approach in which states typically have "primary enforcement responsibility" as long as they adopt regulations "no less stringent" than federal drinking water regulations within two years after EPA promulgates a new federal regulation. 42 U.S.C. § 300g-2(a). For the PFAS Rule that deadline is less than two months away, but EPA is undermining timely adoption of state enforcement authority by encouraging states to request extensions and delay state regulations to implement the Rule based on EPA's legally dubious plan to rescind the Index PFAS Provisions. Mem. from Marietta Echeverria, Dir., EPA Drinking Water Capacity & Compliance Assistance Div., to EPA Regional Water Div. Dirs., Regions 1-10, at 1, 3 (Jan. 12, 2026) (attached as Exhibit 1). EPA's guidance signals to water systems that EPA, and likely some states, will not enforce the Index PFAS Provisions while their legal status is uncertain, which an abeyance would prolong indefinitely. And without expectation of enforcement, water

---

[3] That some water providers have taken steps toward compliance does not address the prejudice to Intervenors' members whose water systems have not taken such steps and may be deterred from doing so if uncertainty over the Rule's legal status is prolonged.

systems may defer compliance actions and hedge their bets until their obligations are clear.

This in turn would prolong pecuniary harms to Intervenors and their members. For example, Intervenor Fight for Zero provides water filters to Floridians affected by PFAS contamination when it has sufficient resources to do so. Bailey Decl. ¶ 19, Dkt. No. 2062232. Similarly, Intervenor Concerned Citizens of WMEL Water Authority Grassroots provides bottled water to its members and other local residents in Morgan County, Alabama, where the public water is not treated to remove PFAS. Hampton Decl. ¶¶ 10, 12, Dkt. No. 2062232. And individual members of the Intervenor organizations pay for bottled water or to maintain home filters to mitigate Index PFAS contamination in their drinking water. *See, e.g.*, Harrison Decl. ¶¶ 5–7, Dkt. No. 2062233. These expenditures will be unnecessarily prolonged if adjudication of the Index PFAS Provisions' legality, and efforts to comply with and enforce those Provisions, are delayed.

Compliance delays also would impair the legal rights of Intervenors and their members. The Rule creates a legal right for Intervenors and their members to receive initial monitoring information about the Index PFAS in their drinking water by April 2027, which is critical for them to understand the risks their drinking water poses to their health and their children's health and take action—if they have the means—to purchase home filtration systems or bottled water. And

Intervenors and their members have a strong interest in water systems undertaking the planning and capital investments that are needed now to fulfill the legal right to have treatment technologies for the Index PFAS fully operational by 2029. Impairment of legal rights created by a rule is a classic example of a hardship that courts weigh when evaluating whether to defer adjudication, *see Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998) (discussing hardship analysis in ripeness context), and counsels strongly against granting an abeyance here.

The harms to Intervenors that would be caused by an abeyance are "damage to some one else," *Landis* 299 U.S. at 255, and weigh against granting an abeyance. For example, prejudice to intervenors weighed against EPA's request for a voluntary remand to defer adjudication of a challenge to its decision where delay would "leave … in limbo" a decision that provided public health and environmental benefits and create "substantial uncertainty" for regulated parties "as to whether to begin the process of coming into compliance with" the challenged decision "or wait to see if EPA reverses course." *Am. Waterways*

*Operators v. Wheeler*, 427 F. Supp. 3d 95, 99–100 (D.D.C. 2019) (denying

voluntary remand due to these hardships). The same conclusion applies here.[4]

## IV. The Requested Abeyance Would Waste the Resources of the Parties and the Court

Judicial economy also weighs against issuing an abeyance. EPA

unpersuasively argues that placing the Index PFAS challenges (if severable) in

abeyance while it proceeds with its rescission rulemaking would "best preserve

both judicial economy and the parties' resources." Abeyance Mot. 3. But as noted

above, just a few months ago EPA asserted the opposite, acknowledging that

proceeding with its rulemaking prior to judicial resolution of the Index PFAS

claims "*would only lead to more litigation*, burdening the Agency and this Court

with needless additional proceedings." Vacatur Mot. 3 (emphasis added). EPA was

correct then and is wrong now.[5]

---

[4] Although in dicta some judges of this Court have questioned whether to consider prejudice to respondent-intervenors when considering whether to defer adjudication, these statements are not precedential and, for the reasons discussed in this section, are not persuasive under the circumstances presented here. *See Utah ex. rel. Cox v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 n.1 (D.C. Cir. May 2, 2025) (statement of Rao, J.) (per curiam) (discussing these issues in the abstract); *Devia v. Nuclear Regul. Comm'n*, 492 F.3d 421, 427 (D.C. Cir. 2007) (questioning the relevance of harms to intervenors in ripeness analysis but ultimately considering them and finding as a factual matter that intervenors' claimed hardships in that case were "insubstantial").

[5] This factor also weighs against severance. *See Hall*, 2017 WL 11727906, at *3 (explaining that motions to sever generally are denied unless the movant establishes that severance will save time and expense).

If the Court denies EPA's abeyance request, its final judgment in this case would resolve all pending challenges to the Rule. It should also obviate any need for EPA's planned rescission rulemaking. If this Court rejects Petitioners' procedural challenge to the Index PFAS Provisions, EPA presumably would not pursue that rulemaking, thereby saving EPA and interested parties the time and resources involved in the rulemaking process. [6] Alternatively, if the Court rules that the process was unlawful and prejudicial and that vacatur of the Index PFAS Provisions is warranted, EPA's recission of them is unlikely to be challenged.

On the other hand, an abeyance would likely result in multiple lawsuits and protracted litigation that could take years to resolve. An abeyance to facilitate EPA's planned rescission rulemaking would almost certainly result in the filing of a second lawsuit challenging EPA's rescission rule, as EPA appeared to acknowledge a few months ago. Vacatur Mot. 3; *see supra* Point II (describing EPA's concession that it lacks authority to administratively rescind the Index PFAS Provisions). That second suit would tee up the same procedural issue concerning the Index PFAS Provisions that is fully briefed in this case because

---

[6] EPA does not assert any other basis for rescinding the Index PFAS Provisions beyond the alleged procedural error and, as noted, EPA has conceded that it can neither "rescind a regulatory determination based on additional data or analysis" nor revise Standards unless that revision "maintain[s], or provide[s] for greater, protection of … health." Vacatur Mot. 20–21 (quoting 42 U.S.C. § 300g-1(b)(9)).

EPA presumably would contend that the alleged procedural error justifies their rescission. *See* Vacatur Mot. 3, 8, 16, 20–21; Abeyance Mot. 2 (citing agency press release asserting that the purpose of EPA's planned rulemaking is to address the "legal process" for promulgating Index PFAS Provisions). Furthermore, if the Court were to overturn EPA's rescission rule in that second lawsuit, Petitioners here might then seek to lift the abeyance in this case to pursue their record-based challenges to the Index PFAS Provisions. Thus, this is not a case in which deferring pending challenges to a rule based on the agency's intent to modify the rule would likely "dispense with the need for" judicial resolution of the disputed issues. *Am. Petrol. Inst.*, 683 F.3d at 388.

In sum, judicial economy favors denying the request for abeyance and addressing the statutory interpretation issue—and all other pending issues—now "to avoid re-litigation of identical issues in a subsequent petition," *AT&T Corp.*, 841 F.3d at 1054, to obviate the need for a second lawsuit altogether, and to avoid procedural complexity and protracted resolution of matters already fully briefed and before the Court.

## CONCLUSION

For the foregoing reasons, Intervenors respectfully request that the Court deny EPA's motion.

DATED: March 2, 2026

/s/Katherine K. O'Brien
KATHERINE K. O'BRIEN
Earthjustice
P.O. Box 2297
South Portland, Maine 04116
(212) 284-8036
kobrien@earthjustice.org

SUZANNE NOVAK
HILLARY AIDUN
Earthjustice
48 Wall St., 15th floor
New York, New York 10005
(212) 823-4981
(212) 284-8040
snovak@earthjustice.org
haidun@earthjustice.org

*Counsel for Buxmont Coalition
for Safe Water, Clean Cape Fear,
Clean Haw River, Concerned
Citizens of WMEL Water Authority
Grassroots, Environmental Justice
Task Force, Fight for Zero,
Merrimack Citizens for Clean Water,
and Newburgh Clean Water Project*

Respectfully submitted,

/s/Jared J. Thompson
JARED J. THOMPSON
Natural Resources Defense Council
40 West 20th Street
New York, NY 10011
(202) 513-6249
jared.thompson@nrdc.org

KAREN CHEN
Natural Resources Defense Council
111 Sutter Street, 21st Floor
San Francisco, CA 94104
(415) 875-8261
kchen@nrdc.org

ERIK D. OLSON
Natural Resources Defense Council
1152 15th Street NW, Suite 300
Washington, DC 20005
(202) 289-2415
eolson@nrdc.org

*Counsel for Natural Resources
Defense Council*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

I hereby certify that the foregoing opposition contains 4,178 words, excluding the items listed in Fed. R. App. P. 27(d)(2)(A), and was composed in Times New Roman font, 14-point. The opposition complies with applicable word limits, type-volume and typeface requirements. Fed. R. App. P. 32(a)(5)-(6); Fed. R. App. P. 27(d)(1); D.C. Cir. R. 27(c).

DATED: March 2, 2026                              /s/Katherine K. O'Brien

**CERTIFICATE OF SERVICE**

I certify that on this 2nd day of March, 2026, the foregoing document was filed with the electronic case filing (ECF) system of the U.S. Court of Appeals for the D.C. Circuit, which will provide electronic notice to all counsel of record.

DATED: March 2, 2026 /s/Katherine K. O'Brien