# IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN WATER WORKS
ASSOCIATION, et al.,

*Petitioners*,

v.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY, et al.,

*Respondents*,

CONCERNED CITIZENS OF WMEL
WATER AUTHORITY GRASSROOTS,
et al.,

*Respondent-Intervenors*.

No. 24-1188
(consolidated with Nos. 24-1191,
24-1192)

**RESPONSE OF PETITIONERS AMERICAN WATER WORKS
ASSOCIATION AND ASSOCIATION OF METROPOLITAN WATER
AGENCIES IN OPPOSITION TO RESPONDENTS' MOTION TO SEVER
AND HOLD IN ABEYANCE**

Petitioners American Water Works Association ("AWWA") and Association

of Metropolitan Water Agencies ("AMWA") (together, "Water Associations")

respectfully submit this response in opposition to Respondents' (collectively, "EPA"

or "Agency") Motion to Sever and Hold Challenges to Index PFAS in Abeyance.

*See* Doc. 2160037 (Feb. 19, 2026) ("EPA Mot.").

This case was originally scheduled for briefing to be completed this time last year. Petitioners have waited, with increasing anxiety, through repeated abeyances and delays while compliance deadlines loom closer and closer. Now, at the eleventh hour, EPA is attempting once again to further delay proceedings and risk the parties needing to re-brief this case with little justification. Filed just a day before Petitioners submitted their reply briefs, EPA's motion for severance and abeyance is premised solely upon a just "commenced" action to rescind certain portions of the EPA rule challenged in this case, entitled "PFAS National Primary Drinking Water Regulation," 89 Fed. Reg. 32,532 (Apr. 26, 2024) ("Rule"). *See* EPA Mot. ¶ 5; EPA Rule 28(j) Letter (Feb. 26, 2026), Doc. 2161291 ("EPA 28(j) Letter"). Specifically, EPA's motion concerns the determinations to regulate and the enforceable Maximum Contaminant Levels for each of the contaminants PFNA, PFHxS, and HFPO-DA, individually, as well as mixtures of two or more of PFNA, PFHxS, HFPO-DA, and PFBS ("Index PFAS"). *See* EPA Mot. ¶¶ 1, 11.[1] According to EPA, "the Office of Management and Budget (OMB) has accepted EPA's notice of proposed rulemaking . . .into interagency review, thus commencing the rulemaking process" although no deadline or timeline is provided. EPA 28(j) Letter.

---

[1] As used herein, "Index PFAS provisions" refers to the determinations to regulate and the Maximum Contaminant Levels for the Index PFAS that are the subject of EPA's motion.

EPA's motion provides little justification to further postpone judicial review of a significant portion of the case at hand. This case has now been fully briefed (pending submission of final-form briefs), after much delay, and will soon be ready to schedule oral argument. The initiation of a new administrative proceeding is not a valid ground for indefinitely delaying judicial review, especially when considering that the Index PFAS provisions still remain in effect; Water Associations' members would be prejudiced by the delay as they remain subject to the Rule's compliance deadlines and must alter their conduct accordingly. Judicial economy weighs heavily in favor of denial: no matter what course EPA takes below, this Court will almost certainly be faced with the same arguments that have already been exhaustively briefed in the inevitable challenge to the rulemaking EPA states that it is undertaking. Specifically, the position of Respondent-Intervenors in this litigation, combined with the Safe Drinking Water Act's anti-backsliding provision, means it is all but inevitable that this Court will still have to adjudicate the legality of EPA's current PFAS Rule if EPA does complete its promised rulemaking. *See* 42 U.S.C. § 300g-1(b)(9). Worse, EPA's request, if granted, would set a problematic precedent by allowing the Agency to dodge imminent judicial review of challenged agency action simply by announcing an intention to review it.

The Court should deny EPA's motion.

# BACKGROUND

This case has been subject to repeated fits and starts in its timeline. Water Associations, along with Petitioners National Association of Manufacturers, American Chemistry Council, and The Chemours Company FC, LLC, filed petitions for review of the Rule **in June 2024**. The Rule finalized determinations to regulate several per- and polyfluoroalkyl substances ("PFAS"): HFPO-DA, PFHxS, and PFNA, and mixtures of HFPO-DA, PFBS, PFHxS, and PFNA. The Rule also finalized non-enforceable Maximum Contaminant Level Goals and enforceable Maximum Contaminant Levels for the PFAS contaminants PFOA and PFOS, as well as for HFPO-DA, PFHxS, and PFNA, and mixtures of HFPO-DA, PFBS, PFHxS, and PFNA. *See* 89 Fed. Reg. at 32,534-35.

Petitioners filed their opening briefs on October 7, 2024, challenging, among other things, EPA's process for promulgating the Index PFAS provisions. *See* Opening Br. of Pet'rs Am. Water Works Ass'n and Ass'n of Metro. Water Agencies, at 18-32 (Oct. 7, 2024), Doc. 2078734 ("Utility Br."); Br. of Pet'rs Nat'l Ass'n of Mfrs., Am. Chemistry Council, and The Chemours Co. FC, LLC, at 34-37 (Oct. 7, 2024), Doc. 2078731 ("Industry Br."). EPA filed its answering brief on December 23, 2024. *See* Resp'ts' Proof Br. (Dec. 23, 2024), Doc. 2091318 ("EPA Br."). Intervenor-Respondents filed their brief on January 17, 2025. *See* Proof Br. of Resp't-Intervenors (Jan. 17, 2025), Doc. 2094834 ("Buxmont Br.").

Petitioners were initially scheduled to file their reply briefs on February 25, 2025—**<u>more than a year ago</u>**. *See* Order (Sept. 3, 2024), Doc. 2072754. However, on February 7, 2025, EPA filed the first of four unopposed motions to hold this case in abeyance while the Agency reconsidered its positions following the change in presidential administration; this Court granted the motion. *See* Unopposed Mot. to Hold Case in Abeyance (Feb. 7, 2025), Doc. 2099439; Order (Feb. 7, 2025), Doc. 2099658 (granting motion). This case remained in abeyance for about five months.[2]

The case was removed from abeyance after EPA had concluded its review of its positions in this case. *See* Order (July 22, 2025), Doc. 2126755. The parties then filed a joint motion to governing proceedings, wherein EPA indicated that "intend[ed] to file either a motion or letter with the Court clarifying their position in this litigation." Joint Mot. to Govern ¶ 6 (Aug. 1, 2025), Doc. 2128362.

EPA subsequently filed a motion for partial vacatur, wherein EPA sought this Court's vacatur of the Index PFAS provisions. *See* Resp'ts' Mot. for Partial Vacatur (Sept. 11, 2025), Doc. 2134523 ("Mot. for Partial Vacatur"). The parties then proposed a briefing schedule that would accommodate both briefing of EPA's motion for partial vacatur and completion of merits briefing—specifically Petitioners' reply briefs—and ultimately concluding with final-form briefs to be

---

[2] *See* Order (Apr. 10, 2025), Doc. 2110289 (granting motion to continue abeyance); Order (May 14, 2025), Doc. 2115832 (same); Order (June 5, 2025), Doc. 2119400 (same).

filed on December 19, 2025. *See* Joint Mot. to Establish Briefing Format and Schedule, at 4-5 (Sept. 12, 2025), Doc. 2134741. The Court entered the briefing dates for EPA's motion for partial vacatur but declined to do so for completion of merits briefing. *See* Order (Sept. 16, 2025), Doc. 2135130. Water Associations sought reconsideration of the scheduling order, specifically requesting institution of the dates to complete merits briefing. *See* Unopposed Mot. of Pet'rs Am. Water Works Ass'n and Ass'n of Metro. Water Agencies to Reconsider Clerk's Order of September 16, 2025 (Sept. 26, 2025), Doc. 2137231. The motion, though, was dismissed as moot after the proposed deadlines had lapsed. *See* Order (Dec. 1, 2025), Doc. 2147732.

During briefing on EPA's motion for partial vacatur, the case was again placed in abeyance due to the lapse in government appropriations. *See* Order (Oct. 3, 2025), Doc. 2138691 (granting motion for abeyance). After the case was removed from abeyance on December 1, 2025, the parties completed briefing on EPA's motion for partial vacatur. On January 21, 2026, the Court denied EPA's motion for partial vacatur and ordered resumption of briefing. *See* Order (Jan. 21, 2026), Doc. 2155270.

Petitioners filed their reply briefs on February 20, 2026. Ultimately, submission of those reply briefs had been delayed by nearly **an entire year**, *see* Order (Sept. 3, 2024) (ordering submission of reply briefs by February 25, 2025),

largely to afford EPA additional time to review and reconsider the Index PFAS provisions. The day prior, on February 19, 2026, EPA filed the instant motion, effectively seeking to prolong matters yet further. On February 27, 2026, the parties filed the joint appendix for this case. *See* Joint App. (Feb. 27, 2026), Doc. 2161491.

## ARGUMENT

EPA seeks to sever and place in indefinite abeyance the Rule's Index PFAS provisions based upon its "plan[] to rescind" those provisions and having just commenced the rulemaking process. EPA Mot. ¶ 5; *see id.*, Kramer Decl. ¶ 5; EPA 28(j) Letter. But the Agency's mere promise of action is not a valid basis for an indefinite halt to judicial review. Indeed, EPA has not identified adequate grounds for the continued delay in this now fully briefed case. EPA's motion for severance and abeyance should be rejected.

**I.      Severance and Abeyance at this Late Stage Is Unwarranted.**

**A.      EPA's motion comes after major investments in litigation efforts by the parties, *amici curiae*, and the Court and just as briefing was completed.**

EPA's motion came **one day** before Petitioners filed their reply briefs in these consolidated cases and approximately one week before compilation of the deferred appendix. *Compare* EPA Mot. (filed Feb. 19, 2026), *with* Order (Jan. 21, 2026) (directing that Petitioners' reply briefs be due February 20, 2026, and the deferred appendix be due February 27, 2026). The fact that EPA chose to submit its motion so late in the judicial process militates against granting the requested relief. The

parties, *amici curiae*, and the Court have already spent substantial resources on this case, including extensive briefing and motions practice on the Index PFAS provisions.

As explained above, *see supra* pp. 6-7, submission of Petitioners' reply briefs was delayed by nearly an entire year. *Compare* Order (Sept. 3, 2024), *with* Order (Jan. 21, 2026). In the interim, there was extensive and additional briefing specifically regarding the Index PFAS provisions, in conjunction with EPA's motion for partial vacatur. Given that the arguments on the Index PFAS provisions now have been fully and extensively briefed (pending submission of the final-form briefs), EPA's motion does not come close to demonstrating cause to stave off judicial review and indefinitely delay this already prolonged litigation.

**B.   EPA's planned rulemaking does not constitute a valid ground for severance and abeyance.**

The fact that EPA commenced a proposed rulemaking to rescind the Index PFAS provisions, without any sort of concrete timeline or deadline, is not a compelling reason to mothball legal challenges that are, finally, fully briefed and very soon to be ready for scheduling of oral argument. EPA 28(j) Letter.

Notably, EPA does not point to an occasion where this Court has granted a motion under similar circumstances. This Court, in fact, has cautioned that a federal agency may not "stave off judicial review of a challenged rule simply by initiating a new proposed rulemaking that would amend the rule in a significant way," citing

concern that "a savvy agency could perpetually dodge review." *Am. Petroleum Inst. v. EPA*, 683 F.3d 382, 388 (D.C. Cir. 2012) ("*API*") (citing *Am. Petroleum Inst. v. EPA*, 906 F.2d 729, 739-40 (D.C. Cir. 1990) (per curiam) ("If the possibility of unforeseen amendments were sufficient to render an otherwise fit challenge unripe, review could be deferred indefinitely."))[3] Here, the risk of "dodg[ing] review" is very real: Now that a challenge to the Index PFAS provisions is finally fully briefed (pending submission of the final-form briefs), and after prolonged delay, EPA seeks to snatch the issue back and "stave off judicial review." The Court should not entertain the request.

As it stands, there has been no assurance whatsoever regarding when the Agency will complete a rulemaking, what specific changes the Agency will propose, and how long it will take to complete the notice-and-comment process. The Agency may only change or rescind its regulations by following the Safe Drinking Water Act's rulemaking procedures. *See* 42 U.S.C. § 300g-1(d); *see also generally id.* § 300g-1 (provisions for national drinking water regulations). Complex environmental rulemakings such as this can, and often do, take more than a year.

---

[3] Although this Court in *API* granted EPA's requested abeyance, several facts distinguish it from the Agency's present motion. In *API*, the challenged decision— EPA's decision to omit some of the petitioners' waste products from an exemption under the Resource Conservation and Recovery Act—was viewed as "tentative" because the Agency had "already published [a] proposed rule" and was required, by terms of a settlement, to finalize the rule "in a matter of months." 683 F.3d at 387-89. No such circumstances exist here.

And EPA's history here does not suggest it is acting with speed in this matter: EPA has only just started the rulemaking process, despite publicly announcing its intention to do so over nine months ago.

Halting judicial review of the Index PFAS provisions at such an advanced stage of litigation simply because EPA initiated a new rulemaking—the timing and result of which is unknowable at this time—risks leaving the Index PFAS provisions in a protracted state of limbo. The fact remains that the Rule is presently in effect. *See* 89 Fed. Reg. at 32,532 ("This final rule is effective on June 25, 2024."). The initial monitoring deadline for the covered PFAS contaminants, as EPA acknowledges, is April 26, 2027, *see id.* at 32,535, 32,752, and the deadline for compliance with the substantive regulations is April 26, 2029, *see id.* at 32,535. 32,751. EPA may not simply hold out a planned proposal as reason to hold in abeyance the now fully briefed challenges to the Index PFAS provisions, while those same provisions remain in effect. *See Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170, 1180 (D.C. Cir. 2025) (concluding that agency's suspension of challenged rule pending an ongoing proposed rulemaking did not make unripe or moot case because challenged rule was still slated to "go into effect … if it is not modified" by a certain date and notwithstanding that agency "may, at some point, amend" the challenged rule).

Furthermore, even if EPA issues a proposed rulemaking, that does not mean that the process will ultimately yield a final rule. As just one example, when President Obama assumed office in 2009, EPA declared the "inten[t] in the near term to initiate a rulemaking" to revise a Clean Air Act standard for ozone pollution set under the Bush Administration. Joint Mot. to Continue to Hold Cases in Abeyance, at 3, *Mississippi v. EPA*, No. 08-1200 (D.C. Cir. Oct. 16, 2009), Doc. 1211554. About two years later, though, EPA withdrew its reconsideration proceedings, leaving the Bush Administration standards in effect. *See Mississippi v. EPA*, 744 F.3d 1334, 1341-42 (D.C. Cir. 2013) (per curiam). Other examples abound where an agency declared an intent to revise a rule, or even formally published a proposed rule, but ultimately declined to finalize any action.[4]

EPA's tentative posture provides little assurance to the public water systems subject to the Rule. So long as the Rule remains effective, those water systems must conform their operations to meet the Rule's requirements, which will require (among other things) capital planning and facility improvement projects. *Cf. N.Y. Republican*

---

[4] *See, e.g.*, 70 Fed. Reg. 61,081 (Oct. 20, 2005) (proposed, but never finalized, regulatory amendments to the definition of "emissions increase" in Clean Air Act new source review regulations); 62 Fed. Reg. 66,182 (Dec. 17, 1997) (proposing pretreatment standards for control of certain wastewater pollutants; withdrawn two years later by 64 Fed. Reg. 45,072 (Aug. 18, 1999)); 55 Fed. Reg. 30,798 (July 27, 1990) (proposed regulations on Resource Recovery and Conservation Act corrective action; "most provisions" of the proposal were withdrawn nine years later by 64 Fed. Reg. 54,604, 54,604 (Oct. 7, 1999)).

*State Comm. v. SEC*, 799 F.3d 1126, 1136 (D.C. Cir. 2015) ("[P]eople cannot reliably order their affairs in accordance with regulations that remain for long periods under the cloud of categorical legal attack."). *Contra* EPA Mot. ¶ 10 (asserting that "[n]o party would be prejudiced by the requested abeyance").

Indeed, one need only look to a different recent Safe Drinking Water Act rulemaking to see the potential problems of an indefinite abeyance. In 2021, EPA promulgated a series of revisions to its regulations for lead and copper contamination, called "LCRR." *See* 86 Fed. Reg. 4,198 (Jan. 15, 2021). EPA then delayed compliance with LCRR for about nine months until October 16, 2024, *see* 86 Fed. Reg. 31,939, 31,939-40 (June 16, 2021), in order "[t]o allow the EPA to engage with stakeholders and review" the regulations before they "took effect," 89 Fed. Reg. 86,418, 86,431 (Oct. 30, 2024). It was not until over two years later that EPA proposed revisions, called "LCRI." *See* 88 Fed. Reg. 84,878 (Dec. 6, 2023). In that proposal, EPA explained that it "intend[ed] to promulgate the LCRI prior to" the delayed compliance date for LCRR of October 16, 2024, and that EPA "propos[ed] to revise the compliance dates for most of the LCRR's requirements." *Id.* at 84,881. EPA, however, did not promulgate the final version of LCRI until October 30, 2024, *see* 89 Fed. Reg. 86,418, which created a gap in compliance dates and meant that water systems had been left in regulatory limbo, awaiting EPA action.

Here, EPA risks a similar problem: promising regulatory action, without formalizing a proposal and without modifying existing compliance dates, while also indefinitely delaying legal challenge to the Index PFAS provisions. That outcome is untenable, undermines regulatory certainty for directly regulated parties, and risks allowing EPA to dodge judicial review for an indefinite amount of time.

Finally, the cases that EPA cites to show "good cause" for an abeyance are entirely inapposite. *See* EPA Mot. ¶ 9. In *Anchor Line Limited v. Federal Maritime Commission*, this Court addressed whether the agency had legal authority to reopen an enforcement proceeding against the petitioner while the petitioner's petition for review of the initial order was pending. 299 F.2d 124, 125 (D.C. Cir. 1962). Here, no one disputes that EPA has authority to revisit its regulations. *Center for Biological Diversity v. EPA* is likewise distinguishable because there, the Court entered a consent order to stay proceedings pending implementation of the parties' settlement agreement. 56 F.4th 55 (D.C. Cir. 2022). No such circumstances exist here, and there is no reasonable expectation that party agreement will mitigate the need for judicial resolution. Indeed, EPA notes that **<u>no petitioner</u>** supports its motion. EPA Mot. 1.[5]

---

[5] This Court's decision in *National Association of Home Builders v. EPA*, 682 F.3d 1032 (D.C. Cir. 2012), is likewise off-point. *See* EPA Mot. ¶ 8. There, this Court principally addressed an ordinary arbitrary-and-capricious challenge. *See Nat'l Ass'n of Home Builders*, 682 F.3d at 1036-39. The language that EPA quotes is in reference to such a challenge, as informed by *FCC v. Fox Television Stations, Inc.*,

## C. EPA's proposed abeyance would not preserve judicial economy and the parties' resources.

EPA suggests, without further elaboration, that an abeyance "would best preserve both judicial economy and the parties' resources." EPA Mot. ¶ 6. This suggestion ignores reality. *First*, it suspends belief that the parties' resources are not best served by moving forward with a legal challenge that has now been fully and extensively briefed (pending submission of the final-form briefs), including yet-additional briefing related to the motion for partial vacatur. The parties' resources have largely been allocated at this juncture, beyond what was initially expected by all involved.

*Second*, EPA's proposed severance and abeyance would not preserve judicial economy. If EPA's motion for partial vacatur is indicative, a new administrative proceeding would likely concern whether the Agency violated the Safe Drinking Water Act when it proposed regulations for and finalized determinations to regulate the Index PFAS "simultaneously and in tandem." Mot. for Partial Vacatur at 2, 10-16. Again, the issue has been briefed extensively by the parties,[6] and it is one that

---

556 U.S. 502 (2009), and judicial review of an agency's change in policy. *See* EPA Mot. ¶ 8 (citing *Nat'l Ass'n of Home Builders*, 682 F.3d at 1038, 1043). There was no discussion in the opinion of an abeyance.

[6] *See, e.g.*, Utility Br. 18-32; Industry Br. 34-37; EPA Br. 29-38; Buxmont Br. 11-12; Reply Br. of Pet'rs Am. Water Works Ass'n and Ass'n of Metro. Water Agencies, at 3-7, 13 (Feb. 20, 2026), Doc. 2160311; Reply Br. for Pet'rs Nat'l Ass'n

EPA acknowledged is a "pure question of law that can be resolved" by this Court here and now. *Id.* at 3.

Moreover, if the issue is not decided now, the Court would likely face it again in the future, regardless of what EPA does at the administrative level. *See AT&T Corp. v. FCC*, 841 F.3d 1047, 1054 (D.C. Cir. 2016) ("[J]udicial economy suggests that we address some of [petitioner's] other arguments to avoid re-litigation of identical issues in a subsequent petition."). If EPA rescinds the Index PFAS provisions, that rescission action would likely be challenged. In fact, the Interventor-Respondents in this case have defended EPA's actions with respect to process by which EPA issued the Index PFAS actions, even after EPA sought their vacatur. *See* Resp't-Intervenors' Opp'n to the Env't Prot. Agency's Mot. for Partial Vacatur and Resp't-Intervenors' Mot. for Leave to File a Revised and Expanded Br. 9-18 (Sept. 26, 2025), Doc. 2137412 (arguing that no error on EPA's part justifies voluntary vacatur); *see also* 42 U.S.C. § 300g-1(b)(9). Furthermore, if EPA takes action to suspend, revise, or rescind the Index PFAS provisions, and that action is later found unlawful and vacated, the presently challenged Rule will remain in effect, and this Court will find itself again needing to address the same issues—i.e., all involved will back where we are now, but years later and with many pages of briefing wasted. *See*

---

of Mfrs., Am. Chemistry Council, and The Chemours Co. FC, LLC, at 21-22 (Feb. 20, 2026), Doc. 2160312.

*Action on Smoking & Health v. Civil Aeronautics Bd.*, 713 F.2d 795, 797 (D.C. Cir. 1983) (per curiam) ("[B]y vacating or rescinding the rescissions proposed by [the new rule], the judgment of this court had the effect of reinstating the rules previously in force . . . .").

If EPA opens a new rulemaking but does not end up rescinding the Index PFAS provisions, then this present case will resume, although with the penalty of lost time to public water systems facing compliance deadlines. *See infra* Part III.

*Third*, and relatedly, EPA acknowledged in its motion for partial vacatur that "[p]rompt resolution is preferable to holding the case in abeyance" and that "finalizing a potential new rule under the cloud of a disputed legal issue would only lead to more litigation, burdening the Agency and this Court with needless additional proceedings." Mot. for Partial Vacatur at 3. This remains true, despite EPA's new posture.

## II. EPA's Speculative Arguments About Mootness Are Meritless.

EPA suggests that "if" the planned rescission action "is finalized as proposed," the action "may moot Petitioners' challenges" to the Index PFAS provisions. EPA Mot. ¶ 6. But merely to recite this argument is to note the high degree of speculation upon which it depends—not to mention how far it departs from the mootness standard. *See El Paso Nat. Gas Co. v. United States*, 750 F.3d 863, 883 (D.C. Cir. 2014) (case or controversy moot where "events have so transpired that the

decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future" (citation omitted)). As it stands, EPA has taken no concrete action that would suggest that Petitioners' rights—or those of their members subject to the Rule—would not be affected by a judicial decision in this case vacating the Rule, in whole or in part.

EPA's argument rests upon confidence as to the ultimate result of a planned, but yet to be proposed, rescission action. The truth is that the timing or outcome of EPA's proposed action, if and when it is proposed, cannot be known at this juncture. EPA cannot prejudge the outcome of the rulemaking and cannot control the input or timing of the Office of Management and Budget. That uncertainty disfavors an abeyance, which would place on hold Petitioners' rights, even as compliance deadlines approach.

## III. Water Associations Would Be Prejudiced by EPA's Proposed Severance and Abeyance.

EPA is flatly wrong to assert that "[n]o party would be prejudiced by the requested abeyance." EPA Mot. ¶ 10. As an initial matter, the burden is on EPA to demonstrate that severance and abeyance is warranted, not for Water Associations to demonstrate that they would prejudiced by severance and abeyance. In any event, Water Associations would be prejudiced. EPA's proposal would allow the Agency to evade judicial review on legal issues that Water Associations have been seeking judicial resolution since filing their petition for review in June 2024, and which

either or both EPA or Intervenor-Respondents continue to contest. EPA's proposal would also leave the Index PFAS provisions in legal limbo for an indefinite period of time.

EPA, moreover, is incorrect to assert that the only possible prejudice derives from the Rule's initial monitoring deadline. *Cf. id*. As an initial matter, keeping the initial monitoring requirements for the Index PFAS in place pending agency reconsideration would still likely result in real costs to public water systems that could be avoided if the Court vacates the Index PFAS provisions. *Compare* 89 Fed. Reg. at 32,663 (The "[e]stimated national annualized [public water system] sampling costs for the final rule have an expected value of $36.23 million."), *with id.* at 32,667 (expected value of annualized public water system sampling costs of $35.98 million, *when excluding the Index PFAS*); *cf. Uzuegbunam v. Preczewski*, 592 U.S. 279, 291 (2021) (explaining that "a single dollar" could redress an asserted harm). Initial compliance monitoring, moreover, must be *completed* by April 26, 2027, *see* 89 Fed. Reg. at 32,535, 32,752, meaning that water systems cannot sit idle, awaiting further action by the Agency—expenditures will need to be made sooner rather than later.

But in any event, deferring resolution of the legal challenges to the Index PFAS provisions for an indefinite period of time could result in public water systems incurring sunk costs in order to achieve compliance with regulatory requirements that presently remain on the books. Public water systems are expected to incur

significant monetary and time costs as a result of the Rule, including investment in capital projects to engineer, install, upgrade, operate, and/or maintain PFAS removal technologies and facilities, or to achieve nontreatment options, such as changing water sources. Those projects will generally require monetary investments and long lead times to plan, fund, and accomplish. *See* Utility Br., Mehan Decl. ¶¶ 13-14, SA-5 to -6; *see also id.*, Granger Decl. ¶¶ 13-14, SA-43 to -44; *id.*, Braker Decl. ¶¶ 12-13, SA-33 to -34; *id.*, Gross Decl. ¶¶ 9-10, SA-57 to -58. Thus, although the treatment compliance deadline is April 26, 2029, water systems cannot remain idle but rather must plan to achieve that deadline. But if the challenges to the Index PFAS provisions move forward now, and Petitioners are successful in those challenges, water systems may be able to avoid at some of the costs of complying with those provisions. By EPA's own estimate, the incremental difference in annualized treatment costs between a Rule with and without the Index PFAS provisions is approximately $11.3 million.

EPA's proposal to sever and hold in abeyance the challenges to the Index PFAS provisions, however, delays any such regulatory certainty, even as the April 26, 2029, compliance deadline for treatment approaches during the pendency of an administrative proceeding. Even if the Index PFAS provisions are set aside at some later date, it is likely that at least some water systems will have made investments in reliance on the presently in-effect compliance deadline—investments that would

19

likely become unrecoverable sunk costs. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220-21 (1994) (Scalia, J., concurring in part and concurring in judgment) ("[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs."). And as noted above, past experience with EPA's lead and copper rulemaking efforts indicates that despite assurances of promptness, public water systems may indeed face impending compliance deadlines without a finalized rescission action, placing them in the difficult and untenable position of risking non-compliance or unnecessarily incurring significant costs. *See supra* pp. 12-13.

What's more, state primacy authorities, which have primary enforcement responsibility under the Safe Drinking Water Act, will need sufficient time to implement the Rule in their respective jurisdictions well before the relevant regulatory deadlines, including initial monitoring and reporting requirements. *See* 89 Fed. Reg. at 32,533, 32,535 (noting implementation obligations). Like with water systems themselves, EPA's proposed severance and abeyance will put state primacy authorities in a difficult and untenable position, needing to implement regulatory requirements that exist in a state of legal limbo.

In sum, Water Associations (including their members), as well as state primacy authorities, would be prejudiced by EPA's proposed severance and abeyance.

## **CONCLUSION**

The Court should deny EPA's motion for severance and abeyance.

Date: March 2, 2025

Respectfully submitted,

*/s/ Corinne V. Snow*

Corinne V. Snow
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington DC 20037
csnow@velaw.com
Phone: (202) 639-6622
Fax: (917) 879-8998

*Counsel for Petitioners American Water Works Association and Association of Metropolitan Water Agencies*
*(Case No. 24-1188)*

## CERTIFICATE OF COMPLIANCE

1.      This response complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2) because it contains 4,755 words, excluding the parts exempted by Federal Rules of Appellate Procedure 32(f) and 27(d)(2).

2.      This motion complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because it has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

Date: March 2, 2026

*/s/  Corinne V. Snow*

Corinne V. Snow
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington DC 20037
csnow@velaw.com
Phone:  (202) 639-6622
Fax:  (917) 879-8998

*Counsel for Petitioners American Water Works Association and Association of Metropolitan Water Agencies (Case No. 24-1188)*

# CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25, I hereby certify that on March 2, 2026, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system, and served copies of the foregoing via the Court's CM/ECF system on all ECF-registered counsel.

Date: March 2, 2026

*/s/ Corinne V. Snow*

Corinne V. Snow
VINSON & ELKINS LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington DC 20037
csnow@velaw.com
Phone: (202) 639-6622
Fax: (917) 879-8998

*Counsel for Petitioners American Water Works Association and Association of Metropolitan Water Agencies (Case No. 24-1188)*