**ORAL ARGUMENT NOT YET SCHEDULED**

No. 24-1188 (consolidated with Nos. 24-1191, 24-1192)

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

AMERICAN WATER WORKS ASSOCIATION, et al.,

*Petitioners*,

*v.*

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al.,

*Respondents*.

_____

On Petition for Review of Final Action by the
United States Environmental Protection Agency —
89 Fed. Reg. 32,532 (April 26, 2024)

_____

**STATUTORY AND REGULATORY ADDENDUM OF
PETITIONERS AMERICAN WATER WORKS ASSOCIATION AND
ASSOCIATION OF METROPOLITAN WATER AGENCIES**

_____

(Names and addresses of counsel appear inside cover.)

Dated: March 6, 2026

Corinne V. Snow
Nathan Campbell
Vinson & Elkins LLP
2200 Pennsylvania Avenue NW
Suite 500 West
Washington, DC 20037
Phone:  (202) 639-6622
Fax:  (917) 879-8998
Email: csnow@velaw.com
Email: ncampbell@velaw.com

*Counsel for Petitioners American Water Works Association and Association of Metropolitan Water Agencies*

# TABLE OF CONTENTS

5 U.S.C. § 706(2)(A)................................................................ADD-1

42 U.S.C. § 300f(3)................................................................ADD-2

42 U.S.C. § 300g..................................................................ADD-5

42 U.S.C. § 300g-1...............................................................ADD-8

42 U.S.C. § 300g-1 (1986)........................................................ADD-18

42 U.S.C. § 300j-4 ..............................................................ADD-22

42 U.S.C. § 300j-7 ..............................................................ADD-26

40 C.F.R. § 141.61 ..............................................................ADD-28

40 C.F.R. § 141.66 ..............................................................ADD-35

N.H. Code Admin. R. Env-Dw 705.06(b) ...........................................ADD-41

N.J. Admin. Code § 7:10-5.2(a)(5)(i) ............................................ADD-42

Vt. Code R. 12-037-001 ..........................................................ADD-57

erwise final is final for the purposes of this section whether or not there has been presented or determined an application for a declaratory order, for any form of reconsideration, or, unless the agency otherwise requires by rule and provides that the action meanwhile is inoperative, for an appeal to superior agency authority.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 392.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(c). | June 11, 1946, ch. 324, § 10(c), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

## § 705. Relief pending review

When an agency finds that justice so requires, it may postpone the effective date of action taken by it, pending judicial review. On such conditions as may be required and to the extent necessary to prevent irreparable injury, the reviewing court, including the court to which a case may be taken on appeal from or on application for certiorari or other writ to a reviewing court, may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(d). | June 11, 1946, ch. 324, § 10(d), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

## § 706. Scope of review

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

(Pub. L. 89–554, Sept. 6, 1966, 80 Stat. 393.)

HISTORICAL AND REVISION NOTES

| Derivation | U.S. Code | Revised Statutes and Statutes at Large |
|---|---|---|
| .................. | 5 U.S.C. 1009(e). | June 11, 1946, ch. 324, § 10(e), 60 Stat. 243. |

Standard changes are made to conform with the definitions applicable and the style of this title as outlined in the preface of this report.

**Statutory Notes and Related Subsidiaries**

ABBREVIATION OF RECORD

Pub. L. 85–791, Aug. 28, 1958, 72 Stat. 941, which authorized abbreviation of record on review or enforcement of orders of administrative agencies and review on the original papers, provided, in section 35 thereof, that: ''This Act [see Tables for classification] shall not be construed to repeal or modify any provision of the Administrative Procedure Act [see Short Title note set out preceding section 551 of this title].''

## CHAPTER 8—CONGRESSIONAL REVIEW OF AGENCY RULEMAKING

Sec.
801.    Congressional review.
802.    Congressional disapproval procedure.
803.    Special rule on statutory, regulatory, and judicial deadlines.
804.    Definitions.
805.    Judicial review.
806.    Applicability; severability.
807.    Exemption for monetary policy.
808.    Effective date of certain rules.

## § 801. Congressional review

(a)(1)(A) Before a rule can take effect, the Federal agency promulgating such rule shall submit to each House of the Congress and to the Comptroller General a report containing—

(i) a copy of the rule;

(ii) a concise general statement relating to the rule, including whether it is a major rule; and

(iii) the proposed effective date of the rule.

(B) On the date of the submission of the report under subparagraph (A), the Federal agency promulgating the rule shall submit to the Comptroller General and make available to each House of Congress—

(i) a complete copy of the cost-benefit analysis of the rule, if any;

(ii) the agency's actions relevant to sections 603, 604, 605, 607, and 609;

(iii) the agency's actions relevant to sections 202, 203, 204, and 205 of the Unfunded Mandates Reform Act of 1995; and

(iv) any other relevant information or requirements under any other Act and any relevant Executive orders.

(C) Upon receipt of a report submitted under subparagraph (A), each House shall provide copies of the report to the chairman and ranking member of each standing committee with jurisdiction under the rules of the House of Rep-

ADD-1

**(b) "Party in interest" defined**

For the purposes of this section the term "party in interest" means:

(1) any director, officer, partner, or employee responsible for management or administration of a health maintenance organization, any person who is directly or indirectly the beneficial owner of more than 5 per centum of the equity of the organization, any person who is the beneficial owner of a mortgage, deed of trust, note, or other interest secured by, and valuing more than 5 per centum of the health maintenance organization, and, in the case of a health maintenance organization organized as a nonprofit corporation, an incorporator or member of such corporation under applicable State corporation law;

(2) any entity in which a person described in paragraph (1)—

(A) is an officer or director;

(B) is a partner (if such entity is organized as a partnership);

(C) has directly or indirectly a beneficial interest of more than 5 per centum of the equity; or

(D) has a mortgage, deed of trust, note, on other interest valuing more than 5 per centum of the assets of such entity;

(3) any person directly or indirectly controlling, controlled by, or under common control with a health maintenance organization; and

(4) any spouse, child, or parent of an individual described in paragraph (1).

**(c) Information availability**

Each health maintenance organization shall make the information reported pursuant to subsection (a) available to its enrollees upon reasonable request.

**(d) Evaluation of transactions**

The Secretary shall, as he deems necessary, conduct an evaluation of transactions reported to the Secretary under subsection (a)(3) for the purpose of determining their adverse impact, if any, on the fiscal soundness and reasonableness of charges to the health maintenance organization with respect to which they transpired. The Secretary shall evaluate the reported transactions of not less than five, or if there are more than twenty health maintenance organizations reporting such transactions, not less than one-fourth of the health maintenance organizations reporting any such transactions under subsection (a)(3).

**(e) Repealed. Pub. L. 99–660, title VIII, § 810, Nov. 14, 1986, 100 Stat. 3801**

**(f) Rates**

Nothing in this section shall be construed to confer upon the Secretary any authority to approve or disapprove the rates charged by any health maintenance organization.

**(g) Annual financial statement**

Any health maintenance organization failing to file with the Secretary the annual financial statement required in subsection (a) shall be ineligible for any Federal assistance under this subchapter until such time as such statement is received by the Secretary and shall not be a qualified health maintenance organization for purposes of section 300e–9 of this title.

**(h) Penalties**

Whoever knowingly and willfully makes or causes to be made any false statement or representation of a material fact in any statement filed pursuant to this section shall be guilty of a felony and upon conviction thereof shall be fined not more than $25,000 or imprisoned for not more than five years, or both.

(July 1, 1944, ch. 373, title XIII, § 1318, as added Pub. L. 95–559, § 9(a), Nov. 1, 1978, 92 Stat. 2135; amended Pub. L. 97–35, title IX, § 948, Aug. 13, 1981, 95 Stat. 577; Pub. L. 99–660, title VIII, § 810, Nov. 14, 1986, 100 Stat. 3801; Pub. L. 108–173, title IX, § 900(e)(2)(E), Dec. 8, 2003, 117 Stat. 2372.)

### Editorial Notes

#### AMENDMENTS

2003—Subsec. (a)(2). Pub. L. 108–173 substituted "Centers for Medicare & Medicaid Services" for "Health Care Financing Administration".

1986—Subsec. (e). Pub. L. 99–660 struck out subsec. (e) which read as follows: "The Secretary shall file an annual report with the Congress on the operation of this section. Such report shall include—

"(1) an enumeration of standards and norms utilized to make the evaluations required under subsection (d) of this section;

"(2) an assessment of the degree of conformity or nonconformity of each health maintenance organization evaluated by the Secretary under subsection (d) of this section with such standards and norms;

"(3) what action, if any, the Secretary considers necessary under section 300e–11 of this title with respect to health maintenance organizations evaluated under subsection (d) of this section."

1981—Subsec. (a). Pub. L. 97–35, § 948(a), (b), in par. (2) inserted reference to copy of the report, if any, filed with the Health Care Financing Administration, and in par. (3)(B) reorganized excluding provisions and, among revisions, inserted salaries paid to employees for services.

Subsec. (b)(1). Pub. L. 97–35, § 948(c), inserted "responsible for management or administration" after "employee".

Subsec. (b)(4). Pub. L. 97–35, § 948(d), substituted "spouse, child, or parent" for "member of the immediate family".

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE OF 1986 AMENDMENT

Amendment by Pub. L. 99–660 effective Oct. 1, 1985, see section 815(a) of Pub. L. 99–660, set out as an Effective and Termination Dates of 1986 Amendment note under section 300e–1 of this title.

## SUBCHAPTER XII—SAFETY OF PUBLIC WATER SYSTEMS

### PART A—DEFINITIONS

**§ 300f. Definitions**

For purposes of this subchapter:

(1) The term "primary drinking water regulation" means a regulation which—

(A) applies to public water systems;

(B) specifies contaminants which, in the judgment of the Administrator, may have any adverse effect on the health of persons;

(C) specifies for each such contaminant either—

(i) a maximum contaminant level, if, in the judgment of the Administrator, it is economically and technologically feasible to ascertain the level of such contaminant in water in public water systems, or

(ii) if, in the judgment of the Administrator, it is not economically or technologically feasible to so ascertain the level of such contaminant, each treatment technique known to the Administrator which leads to a reduction in the level of such contaminant sufficient to satisfy the requirements of section 300g–1 of this title; and

(D) contains criteria and procedures to assure a supply of drinking water which dependably complies with such maximum contaminant levels; including accepted methods for quality control and testing procedures to insure compliance with such levels and to insure proper operation and maintenance of the system, and requirements as to (i) the minimum quality of water which may be taken into the system and (ii) siting for new facilities for public water systems.

At any time after promulgation of a regulation referred to in this paragraph, the Administrator may add equally effective quality control and testing procedures by guidance published in the Federal Register. Such procedures shall be treated as an alternative for public water systems to the quality control and testing procedures listed in the regulation.

(2) The term ''secondary drinking water regulation'' means a regulation which applies to public water systems and which specifies the maximum contaminant levels which, in the judgment of the Administrator, are requisite to protect the public welfare. Such regulations may apply to any contaminant in drinking water (A) which may adversely affect the odor or appearance of such water and consequently may cause a substantial number of the persons served by the public water system providing such water to discontinue its use, or (B) which may otherwise adversely affect the public welfare. Such regulations may vary according to geographic and other circumstances.

(3) The term ''maximum contaminant level'' means the maximum permissible level of a contaminant in water which is delivered to any user of a public water system.

(4) PUBLIC WATER SYSTEM.—

(A) IN GENERAL.—The term ''public water system'' means a system for the provision to the public of water for human consumption through pipes or other constructed conveyances, if such system has at least fifteen service connections or regularly serves at least twenty-five individuals. Such term includes (i) any collection, treatment, storage, and distribution facilities under control of the operator of such system and used primarily in connection with such system, and (ii) any collection or pretreatment storage facilities not under such control which are used primarily in connection with such system.

(B) CONNECTIONS.—

(i) IN GENERAL.—For purposes of subparagraph (A), a connection to a system that delivers water by a constructed conveyance other than a pipe shall not be considered a connection, if—

(I) the water is used exclusively for purposes other than residential uses (consisting of drinking, bathing, and cooking, or other similar uses);

(II) the Administrator or the State (in the case of a State exercising primary enforcement responsibility for public water systems) determines that alternative water to achieve the equivalent level of public health protection provided by the applicable national primary drinking water regulation is provided for residential or similar uses for drinking and cooking; or

(III) the Administrator or the State (in the case of a State exercising primary enforcement responsibility for public water systems) determines that the water provided for residential or similar uses for drinking, cooking, and bathing is centrally treated or treated at the point of entry by the provider, a pass-through entity, or the user to achieve the equivalent level of protection provided by the applicable national primary drinking water regulations.

(ii) IRRIGATION DISTRICTS.—An irrigation district in existence prior to May 18, 1994, that provides primarily agricultural service through a piped water system with only incidental residential or similar use shall not be considered to be a public water system if the system or the residential or similar users of the system comply with subclause (II) or (III) of clause (i).

(C) TRANSITION PERIOD.—A water supplier that would be a public water system only as a result of modifications made to this paragraph by the Safe Drinking Water Act Amendments of 1996 shall not be considered a public water system for purposes of the Act until the date that is two years after August 6, 1996. If a water supplier does not serve 15 service connections (as defined in subparagraphs (A) and (B)) or 25 people at any time after the conclusion of the 2-year period, the water supplier shall not be considered a public water system.

(5) The term ''supplier of water'' means any person who owns or operates a public water system.

(6) The term ''contaminant'' means any physical, chemical, biological, or radiological substance or matter in water.

(7) The term ''Administrator'' means the Administrator of the Environmental Protection Agency.

(8) The term ''Agency'' means the Environmental Protection Agency.

(9) The term ''Council'' means the National Drinking Water Advisory Council established under section 300j–5 of this title.

(10) The term ''municipality'' means a city, town, or other public body created by or pursuant to State law, or an Indian Tribe.

(11) The term ''Federal agency'' means any department, agency, or instrumentality of the United States.

(12) The term ''person'' means an individual, corporation, company, association, partnership, State, municipality, or Federal agency (and includes officers, employees, and agents of any corporation, company, association, State, municipality, or Federal agency).

(13)(A) Except as provided in subparagraph (B), the term ''State'' includes, in addition to the several States, only the District of Columbia, Guam, the Commonwealth of Puerto Rico, the Northern Mariana Islands, the Virgin Islands, American Samoa, and the Trust Territory of the Pacific Islands.

(B) For purposes of section 300j–12 of this title, the term ''State'' means each of the 50 States, the District of Columbia, and the Commonwealth of Puerto Rico.

(14) The term ''Indian Tribe'' means any Indian tribe having a Federally recognized governing body carrying out substantial governmental duties and powers over any area. For purposes of sections 300j–12, 300j–19a, and 300j–19b of this title, the term includes any Native village (as defined in section 1602(c) of title 43).

(15) COMMUNITY WATER SYSTEM.—The term ''community water system'' means a public water system that—

  (A) serves at least 15 service connections used by year-round residents of the area served by the system; or

  (B) regularly serves at least 25 year-round residents.

(16) NONCOMMUNITY WATER SYSTEM.—The term ''noncommunity water system'' means a public water system that is not a community water system.

(July 1, 1944, ch. 373, title XIV, § 1401, as added Pub. L. 93–523, § 2(a), Dec. 16, 1974, 88 Stat. 1660; amended Pub. L. 94–317, title III, § 301(b)(2), June 23, 1976, 90 Stat. 707; Pub. L. 94–484, title IX, § 905(b)(1), Oct. 12, 1976, 90 Stat. 2325; Pub. L. 95–190, § 8(b), Nov. 16, 1977, 91 Stat. 1397; Pub. L. 99–339, title III, § 302(b), June 19, 1986, 100 Stat. 666; Pub. L. 104–182, title I, § 101(a), (b)(1), Aug. 6, 1996, 110 Stat. 1615, 1616; Pub. L. 114–322, title II, § 2111, Dec. 16, 2016, 130 Stat. 1729.)

### Editorial Notes

#### REFERENCES IN TEXT

The Safe Drinking Water Act Amendments of 1996, referred to in par. (4)(C), is Pub. L. 104–182, Aug. 6, 1996, 110 Stat. 1613. For complete classification of this Act to the Code, see Short Title of 1996 Amendment note set out under section 201 of this title and Tables.

#### AMENDMENTS

2016—Par. (14). Pub. L. 114–322 substituted ''sections 300j–12, 300j–19a, and 300j–19b of this title'' for ''section 300j–12 of this title''.

1996—Par. (1). Pub. L. 104–182, § 101(a)(1)(B), inserted at end ''At any time after promulgation of a regulation referred to in this paragraph, the Administrator may add equally effective quality control and testing procedures by guidance published in the Federal Register. Such procedures shall be treated as an alternative for public water systems to the quality control and testing procedures listed in the regulation.''

Par. (1)(D). Pub. L. 104–182, § 101(a)(1)(A), inserted ''accepted methods for'' before ''quality control''.

Par. (4). Pub. L. 104–182, § 101(b)(1), designated existing provisions as subpar. (A), inserted par. and subpar. headings, redesignated former subpars. (A) and (B) as cls. (i) and (ii), respectively, substituted ''water for human consumption through pipes or other constructed conveyances'' for ''piped water for human consumption'' in first sentence, and added subpars. (B) and (C).

Par. (13). Pub. L. 104–182, § 101(a)(2), designated existing provisions as subpar. (A), substituted ''Except as provided in subparagraph (B), the term'' for ''The term'', and added subpar. (B).

Par. (14). Pub. L. 104–182, § 101(a)(3), inserted at end ''For purposes of section 300j–12 of this title, the term includes any Native village (as defined in section 1602(c) of title 43).''

Pars. (15), (16). Pub. L. 104–182, § 101(a)(4), added pars. (15) and (16).

1986—Par. (10). Pub. L. 99–339, § 302(b)(2), substituted ''Indian Tribe'' for ''Indian tribal organization authorized by law''.

Par. (14). Pub. L. 99–339, § 302(b)(1), added par. (14).

1977—Par. (12). Pub. L. 95–190 expanded definition of ''person'' to include Federal agency, and officers, employees, and agents of any corporation, company, etc.

1976—Par. (13). Pub. L. 94–484 defined ''State'' to include Northern Mariana Islands.

Pub. L. 94–317 added par. (13).

### Statutory Notes and Related Subsidiaries

#### EFFECTIVE DATE OF 1996 AMENDMENT

Pub. L. 104–182, § 2(b), Aug. 6, 1996, 110 Stat. 1614, provided that: ''Except as otherwise specified in this Act [enacting sections 300g–7 to 300g–9, 300h–8, 300j–3c, and 300j–12 to 300j–18 of this title and section 1263a of Title 33, Navigation and Navigable Waters, amending this section, sections 300g–1 to 300g–6, 300h, 300h–5 to 300h–7, 300i, 300i–1, 300j to 300j–2, 300j–4 to 300j–8, 300j–11, and 300j–21 to 300j–25 of this title, sections 4701 and 4721 of Title 16, Conservation, and section 349 of Title 21, Food and Drugs, repealing section 13551 of this title, enacting provisions set out as notes under this section, sections 201, 300g–1, 300j–1, and 300j–12 of this title, section 1281 of Title 33, and section 45 of former Title 40, Public Buildings, Property, and Works, and amending provisions set out as a note under section 201 of this title] or in the amendments made by this Act, this Act and the amendments made by this Act shall take effect on the date of enactment of this Act [Aug. 6, 1996].''

#### SHORT TITLE

This subchapter is known as the ''Safe Drinking Water Act'', see note set out under section 201 of this title.

#### TERMINATION OF ADVISORY COMMITTEES

Pub. L. 93–641, § 6, Jan. 4, 1975, 88 Stat. 2275, set out as a note under section 217a of this title, provided that an advisory committee established pursuant to the Public Health Service Act shall terminate at such time as may be specifically prescribed by an Act of Congress enacted after Jan. 4, 1975.

#### EFFECT OF PUBLIC LAW 104–182 ON FEDERAL WATER POLLUTION CONTROL ACT

Pub. L. 104–182, § 2(c), Aug. 6, 1996, 110 Stat. 1614, provided that: ''Except for the provisions of section 302 [42 U.S.C. 300j–12 note] (relating to transfers of funds), nothing in this Act [see Effective Date of 1996 Amendment note above] or in any amendments made by this Act to title XIV of the Public Health Service Act [42 U.S.C. 300f et seq.] (commonly known as the 'Safe Drinking Water Act') or any other law shall be construed by the Administrator of the Environmental Protection Agency or the courts as affecting, modifying, expanding, changing, or altering—

''(1) the provisions of the Federal Water Pollution Control Act [33 U.S.C. 1251 et seq.];

''(2) the duties and responsibilities of the Administrator under that Act; or

''(3) the regulation or control of point or nonpoint sources of pollution discharged into waters covered by that Act.

The Administrator shall identify in the agency's annual budget all funding and full-time equivalents administering such title XIV separately from funding and staffing for the Federal Water Pollution Control Act.''

### CONGRESSIONAL FINDINGS

Pub. L. 104–182, §3, Aug. 6, 1996, 110 Stat. 1614, provided that: ''The Congress finds that—

''(1) safe drinking water is essential to the protection of public health;

''(2) because the requirements of the Safe Drinking Water Act (42 U.S.C. 300f et seq.) now exceed the financial and technical capacity of some public water systems, especially many small public water systems, the Federal Government needs to provide assistance to communities to help the communities meet Federal drinking water requirements;

''(3) the Federal Government commits to maintaining and improving its partnership with the States in the administration and implementation of the Safe Drinking Water Act;

''(4) States play a central role in the implementation of safe drinking water programs, and States need increased financial resources and appropriate flexibility to ensure the prompt and effective development and implementation of drinking water programs;

''(5) the existing process for the assessment and selection of additional drinking water contaminants needs to be revised and improved to ensure that there is a sound scientific basis for setting priorities in establishing drinking water regulations;

''(6) procedures for assessing the health effects of contaminants establishing drinking water standards should be revised to provide greater opportunity for public education and participation;

''(7) in considering the appropriate level of regulation for contaminants in drinking water, risk assessment, based on sound and objective science, and benefit-cost analysis are important analytical tools for improving the efficiency and effectiveness of drinking water regulations to protect human health;

''(8) more effective protection of public health requires—

''(A) a Federal commitment to set priorities that will allow scarce Federal, State, and local resources to be targeted toward the drinking water problems of greatest public health concern;

''(B) maximizing the value of the different and complementary strengths and responsibilities of the Federal and State governments in those States that have primary enforcement responsibility for the Safe Drinking Water Act; and

''(C) prevention of drinking water contamination through well-trained system operators, water systems with adequate managerial, technical, and financial capacity, and enhanced protection of source waters of public water systems;

''(9) compliance with the requirements of the Safe Drinking Water Act continues to be a concern at public water systems experiencing technical and financial limitations, and Federal, State, and local governments need more resources and more effective authority to attain the objectives of the Safe Drinking Water Act; and

''(10) consumers served by public water systems should be provided with information on the source of the water they are drinking and its quality and safety, as well as prompt notification of any violation of drinking water regulations.''

### GAO STUDY

Pub. L. 104–182, title I, §101(b)(2), Aug. 6, 1996, 110 Stat. 1617, required the Comptroller General to study the reliance for residential water on various nonpublic water systems and to submit a report on the results of the study to Congress within 3 years after Aug. 6, 1996.

### SAFE DRINKING WATER AMENDMENTS OF 1977 RESTRICTIONS ON APPROPRIATIONS FOR RESEARCH

Pub. L. 95–190, §2(e), Nov. 16, 1977, 91 Stat. 1393, provided that: ''Nothing in this Act [see Short Title of 1977 Amendment note set out under section 201 of this title] shall be construed to authorize the appropriation of any amount for research under title XIV of the Public Health Service Act [42 U.S.C. 300f et seq.] (relating to safe drinking water).''

### SAFE DRINKING WATER AMENDMENTS OF 1977 AS NOT AFFECTING AUTHORITY OF ADMINISTRATOR WITH RESPECT TO CONTAMINANTS

Pub. L. 95–190, §3(e)(2), Nov. 16, 1977, 91 Stat. 1394, provided that: ''Nothing in this Act [see Short Title of 1977 Amendment note set out under section 201 of this title] shall be construed to alter or affect the Administrator's authority or duty under title 14 of the Public Health Service Act [42 U.S.C. 300f et seq.] to promulgate regulations or take other action with respect to any contaminant.''

### RURAL WATER SURVEY; REPORT TO PRESIDENT AND CONGRESS; AUTHORIZATION OF APPROPRIATIONS

Pub. L. 93–523, §3, Dec. 16, 1974, 88 Stat. 1693, as amended by Pub. L. 95–190, §§2(d), 3(d), Nov. 16, 1977, 91 Stat. 1393, 1394, directed Administrator of Environmental Protection Agency, after consultation with Secretary of Agriculture and the several States, to enter into arrangements with public or private entities to conduct a survey of quantity, quality, and availability of rural drinking water supplies, which survey was to include, but not be limited to, consideration of number of residents in each rural area who presently are being inadequately served by a public or private drinking water supply system, or by an individual home drinking water supply system, or who presently have limited or otherwise inadequate access to drinking water, or who, due to absence or inadequacy of a drinking water supply system, are exposed to an increased health hazard, and who have experienced incidents of chronic or acute illness, which may be attributed to inadequacy of a drinking water supply system. Survey to be completed within eighteen months of Dec. 16, 1974, and a final report thereon submitted, not later than six months after completion of survey, to President and to Congress.

### Executive Documents

#### TERMINATION OF TRUST TERRITORY OF THE PACIFIC ISLANDS

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

#### FEDERAL COMPLIANCE WITH POLLUTION CONTROL STANDARDS

For provisions relating to the responsibility of the head of each Executive agency for compliance with applicable pollution control standards, see Ex. Ord. No. 12088, Oct. 13, 1978, 43 F.R. 47707, set out as a note under section 4321 of this title.

### PART B—PUBLIC WATER SYSTEMS

### § 300g. Coverage

Subject to sections 300g–4 and 300g–5 of this title, national primary drinking water regulations under this part shall apply to each public water system in each State; except that such regulations shall not apply to a public water system—

''(2) the duties and responsibilities of the Administrator under that Act; or

''(3) the regulation or control of point or nonpoint sources of pollution discharged into waters covered by that Act.

The Administrator shall identify in the agency's annual budget all funding and full-time equivalents administering such title XIV separately from funding and staffing for the Federal Water Pollution Control Act.''

### CONGRESSIONAL FINDINGS

Pub. L. 104–182, §3, Aug. 6, 1996, 110 Stat. 1614, provided that: ''The Congress finds that—

''(1) safe drinking water is essential to the protection of public health;

''(2) because the requirements of the Safe Drinking Water Act (42 U.S.C. 300f et seq.) now exceed the financial and technical capacity of some public water systems, especially many small public water systems, the Federal Government needs to provide assistance to communities to help the communities meet Federal drinking water requirements;

''(3) the Federal Government commits to maintaining and improving its partnership with the States in the administration and implementation of the Safe Drinking Water Act;

''(4) States play a central role in the implementation of safe drinking water programs, and States need increased financial resources and appropriate flexibility to ensure the prompt and effective development and implementation of drinking water programs;

''(5) the existing process for the assessment and selection of additional drinking water contaminants needs to be revised and improved to ensure that there is a sound scientific basis for setting priorities in establishing drinking water regulations;

''(6) procedures for assessing the health effects of contaminants establishing drinking water standards should be revised to provide greater opportunity for public education and participation;

''(7) in considering the appropriate level of regulation for contaminants in drinking water, risk assessment, based on sound and objective science, and benefit-cost analysis are important analytical tools for improving the efficiency and effectiveness of drinking water regulations to protect human health;

''(8) more effective protection of public health requires—

''(A) a Federal commitment to set priorities that will allow scarce Federal, State, and local resources to be targeted toward the drinking water problems of greatest public health concern;

''(B) maximizing the value of the different and complementary strengths and responsibilities of the Federal and State governments in those States that have primary enforcement responsibility for the Safe Drinking Water Act; and

''(C) prevention of drinking water contamination through well-trained system operators, water systems with adequate managerial, technical, and financial capacity, and enhanced protection of source waters of public water systems;

''(9) compliance with the requirements of the Safe Drinking Water Act continues to be a concern at public water systems experiencing technical and financial limitations, and Federal, State, and local governments need more resources and more effective authority to attain the objectives of the Safe Drinking Water Act; and

''(10) consumers served by public water systems should be provided with information on the source of the water they are drinking and its quality and safety, as well as prompt notification of any violation of drinking water regulations.''

### GAO STUDY

Pub. L. 104–182, title I, §101(b)(2), Aug. 6, 1996, 110 Stat. 1617, required the Comptroller General to study the reliance for residential water on various nonpublic water systems and to submit a report on the results of the study to Congress within 3 years after Aug. 6, 1996.

### SAFE DRINKING WATER AMENDMENTS OF 1977 RESTRICTIONS ON APPROPRIATIONS FOR RESEARCH

Pub. L. 95–190, §2(e), Nov. 16, 1977, 91 Stat. 1393, provided that: ''Nothing in this Act [see Short Title of 1977 Amendment note set out under section 201 of this title] shall be construed to authorize the appropriation of any amount for research under title XIV of the Public Health Service Act [42 U.S.C. 300f et seq.] (relating to safe drinking water).''

### SAFE DRINKING WATER AMENDMENTS OF 1977 AS NOT AFFECTING AUTHORITY OF ADMINISTRATOR WITH RESPECT TO CONTAMINANTS

Pub. L. 95–190, §3(e)(2), Nov. 16, 1977, 91 Stat. 1394, provided that: ''Nothing in this Act [see Short Title of 1977 Amendment note set out under section 201 of this title] shall be construed to alter or affect the Administrator's authority or duty under title 14 of the Public Health Service Act [42 U.S.C. 300f et seq.] to promulgate regulations or take other action with respect to any contaminant.''

### RURAL WATER SURVEY; REPORT TO PRESIDENT AND CONGRESS; AUTHORIZATION OF APPROPRIATIONS

Pub. L. 93–523, §3, Dec. 16, 1974, 88 Stat. 1693, as amended by Pub. L. 95–190, §§2(d), 3(d), Nov. 16, 1977, 91 Stat. 1393, 1394, directed Administrator of Environmental Protection Agency, after consultation with Secretary of Agriculture and the several States, to enter into arrangements with public or private entities to conduct a survey of quantity, quality, and availability of rural drinking water supplies, which survey was to include, but not be limited to, consideration of number of residents in each rural area who presently are being inadequately served by a public or private drinking water supply system, or by an individual home drinking water supply system, or who presently have limited or otherwise inadequate access to drinking water, or who, due to absence or inadequacy of a drinking water supply system, are exposed to an increased health hazard, and who have experienced incidents of chronic or acute illness, which may be attributed to inadequacy of a drinking water supply system. Survey to be completed within eighteen months of Dec. 16, 1974, and a final report thereon submitted, not later than six months after completion of survey, to President and to Congress.

### Executive Documents

#### TERMINATION OF TRUST TERRITORY OF THE PACIFIC ISLANDS

For termination of Trust Territory of the Pacific Islands, see note set out preceding section 1681 of Title 48, Territories and Insular Possessions.

#### FEDERAL COMPLIANCE WITH POLLUTION CONTROL STANDARDS

For provisions relating to the responsibility of the head of each Executive agency for compliance with applicable pollution control standards, see Ex. Ord. No. 12088, Oct. 13, 1978, 43 F.R. 47707, set out as a note under section 4321 of this title.

### PART B—PUBLIC WATER SYSTEMS

### § 300g. Coverage

Subject to sections 300g–4 and 300g–5 of this title, national primary drinking water regulations under this part shall apply to each public water system in each State; except that such regulations shall not apply to a public water system—

(1) which consists only of distribution and storage facilities (and does not have any collection and treatment facilities);

(2) which obtains all of its water from, but is not owned or operated by, a public water system to which such regulations apply;

(3) which does not sell water to any person; and

(4) which is not a carrier which conveys passengers in interstate commerce.

(July 1, 1944, ch. 373, title XIV, §1411, as added Pub. L. 93–523, §2(a), Dec. 16, 1974, 88 Stat. 1662.)

### § 300g–1. National drinking water regulations

#### (a) National primary drinking water regulations; maximum contaminant level goals; simultaneous publication of regulations and goals

(1) Effective on June 19, 1986, each national interim or revised primary drinking water regulation promulgated under this section before June 19, 1986, shall be deemed to be a national primary drinking water regulation under subsection (b). No such regulation shall be required to comply with the standards set forth in subsection (b)(4) unless such regulation is amended to establish a different maximum contaminant level after June 19, 1986.

(2) After June 19, 1986, each recommended maximum contaminant level published before June 19, 1986, shall be treated as a maximum contaminant level goal.

(3) Whenever a national primary drinking water regulation is proposed under subsection (b) for any contaminant, the maximum contaminant level goal for such contaminant shall be proposed simultaneously. Whenever a national primary drinking water regulation is promulgated under subsection (b) for any contaminant, the maximum contaminant level goal for such contaminant shall be published simultaneously.

(4) Paragraph (3) shall not apply to any recommended maximum contaminant level published before June 19, 1986.

#### (b) Standards

(1) IDENTIFICATION OF CONTAMINANTS FOR LISTING.—

(A) GENERAL AUTHORITY.—The Administrator shall, in accordance with the procedures established by this subsection, publish a maximum contaminant level goal and promulgate a national primary drinking water regulation for a contaminant (other than a contaminant referred to in paragraph (2) for which a national primary drinking water regulation has been promulgated as of August 6, 1996) if the Administrator determines that—

(i) the contaminant may have an adverse effect on the health of persons;

(ii) the contaminant is known to occur or there is a substantial likelihood that the contaminant will occur in public water systems with a frequency and at levels of public health concern; and

(iii) in the sole judgment of the Administrator, regulation of such contaminant presents a meaningful opportunity for health risk reduction for persons served by public water systems.

(B) REGULATION OF UNREGULATED CONTAMINANTS.—

(i) LISTING OF CONTAMINANTS FOR CONSIDERATION.—(I) Not later than 18 months after August 6, 1996, and every 5 years thereafter, the Administrator, after consultation with the scientific community, including the Science Advisory Board, after notice and opportunity for public comment, and after considering the occurrence data base established under section 300j–4(g) of this title, shall publish a list of contaminants which, at the time of publication, are not subject to any proposed or promulgated national primary drinking water regulation, which are known or anticipated to occur in public water systems, and which may require regulation under this subchapter.

(II) The unregulated contaminants considered under subclause (I) shall include, but not be limited to, substances referred to in section 9601(14) of this title, and substances registered as pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C. 136 et seq.].

(III) The Administrator's decision whether or not to select an unregulated contaminant for a list under this clause shall not be subject to judicial review.

(ii) DETERMINATION TO REGULATE.—(I) Not later than 5 years after August 6, 1996, and every 5 years thereafter, the Administrator shall, after notice of the preliminary determination and opportunity for public comment, for not fewer than 5 contaminants included on the list published under clause (i), make determinations of whether or not to regulate such contaminants.

(II) A determination to regulate a contaminant shall be based on findings that the criteria of clauses (i), (ii), and (iii) of subparagraph (A) are satisfied. Such findings shall be based on the best available public health information, including the occurrence data base established under section 300j–4(g) of this title.

(III) The Administrator may make a determination to regulate a contaminant that does not appear on a list under clause (i) if the determination to regulate is made pursuant to subclause (II).

(IV) A determination under this clause not to regulate a contaminant shall be considered final agency action and subject to judicial review.

(iii) REVIEW.—Each document setting forth the determination for a contaminant under clause (ii) shall be available for public comment at such time as the determination is published.

(C) PRIORITIES.—In selecting unregulated contaminants for consideration under subparagraph (B), the Administrator shall select contaminants that present the greatest public health concern. The Administrator, in making such selection, shall take into consideration, among other factors of public health concern, the effect of such contaminants upon subgroups that comprise a meaningful portion of the general population (such as infants, children, pregnant women, the elderly, individuals with a history of serious illness, or other subpopulations) that are identifiable as being at

ADD-7

(1) which consists only of distribution and storage facilities (and does not have any collection and treatment facilities);

(2) which obtains all of its water from, but is not owned or operated by, a public water system to which such regulations apply;

(3) which does not sell water to any person; and

(4) which is not a carrier which conveys passengers in interstate commerce.

(July 1, 1944, ch. 373, title XIV, § 1411, as added Pub. L. 93–523, § 2(a), Dec. 16, 1974, 88 Stat. 1662.)

## § 300g–1. National drinking water regulations

### (a) National primary drinking water regulations; maximum contaminant level goals; simultaneous publication of regulations and goals

(1) Effective on June 19, 1986, each national interim or revised primary drinking water regulation promulgated under this section before June 19, 1986, shall be deemed to be a national primary drinking water regulation under subsection (b). No such regulation shall be required to comply with the standards set forth in subsection (b)(4) unless such regulation is amended to establish a different maximum contaminant level after June 19, 1986.

(2) After June 19, 1986, each recommended maximum contaminant level published before June 19, 1986, shall be treated as a maximum contaminant level goal.

(3) Whenever a national primary drinking water regulation is proposed under subsection (b) for any contaminant, the maximum contaminant level goal for such contaminant shall be proposed simultaneously. Whenever a national primary drinking water regulation is promulgated under subsection (b) for any contaminant, the maximum contaminant level goal for such contaminant shall be published simultaneously.

(4) Paragraph (3) shall not apply to any recommended maximum contaminant level published before June 19, 1986.

### (b) Standards

(1) IDENTIFICATION OF CONTAMINANTS FOR LISTING.—

(A) GENERAL AUTHORITY.—The Administrator shall, in accordance with the procedures established by this subsection, publish a maximum contaminant level goal and promulgate a national primary drinking water regulation for a contaminant (other than a contaminant referred to in paragraph (2) for which a national primary drinking water regulation has been promulgated as of August 6, 1996) if the Administrator determines that—

(i) the contaminant may have an adverse effect on the health of persons;

(ii) the contaminant is known to occur or there is a substantial likelihood that the contaminant will occur in public water systems with a frequency and at levels of public health concern; and

(iii) in the sole judgment of the Administrator, regulation of such contaminant presents a meaningful opportunity for health risk reduction for persons served by public water systems.

(B) REGULATION OF UNREGULATED CONTAMINANTS.—

(i) LISTING OF CONTAMINANTS FOR CONSIDERATION.—(I) Not later than 18 months after August 6, 1996, and every 5 years thereafter, the Administrator, after consultation with the scientific community, including the Science Advisory Board, after notice and opportunity for public comment, and after considering the occurrence data base established under section 300j–4(g) of this title, shall publish a list of contaminants which, at the time of publication, are not subject to any proposed or promulgated national primary drinking water regulation, which are known or anticipated to occur in public water systems, and which may require regulation under this subchapter.

(II) The unregulated contaminants considered under subclause (I) shall include, but not be limited to, substances referred to in section 9601(14) of this title, and substances registered as pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C. 136 et seq.].

(III) The Administrator's decision whether or not to select an unregulated contaminant for a list under this clause shall not be subject to judicial review.

(ii) DETERMINATION TO REGULATE.—(I) Not later than 5 years after August 6, 1996, and every 5 years thereafter, the Administrator shall, after notice of the preliminary determination and opportunity for public comment, for not fewer than 5 contaminants included on the list published under clause (i), make determinations of whether or not to regulate such contaminants.

(II) A determination to regulate a contaminant shall be based on findings that the criteria of clauses (i), (ii), and (iii) of subparagraph (A) are satisfied. Such findings shall be based on the best available public health information, including the occurrence data base established under section 300j–4(g) of this title.

(III) The Administrator may make a determination to regulate a contaminant that does not appear on a list under clause (i) if the determination to regulate is made pursuant to subclause (II).

(IV) A determination under this clause not to regulate a contaminant shall be considered final agency action and subject to judicial review.

(iii) REVIEW.—Each document setting forth the determination for a contaminant under clause (ii) shall be available for public comment at such time as the determination is published.

(C) PRIORITIES.—In selecting unregulated contaminants for consideration under subparagraph (B), the Administrator shall select contaminants that present the greatest public health concern. The Administrator, in making such selection, shall take into consideration, among other factors of public health concern, the effect of such contaminants upon subgroups that comprise a meaningful portion of the general population (such as infants, children, pregnant women, the elderly, individuals with a history of serious illness, or other subpopulations) that are identifiable as being at

ADD-8

greater risk of adverse health effects due to exposure to contaminants in drinking water than the general population.

(D) URGENT THREATS TO PUBLIC HEALTH.—The Administrator may promulgate an interim national primary drinking water regulation for a contaminant without making a determination for the contaminant under paragraph (4)(C), or completing the analysis under paragraph (3)(C), to address an urgent threat to public health as determined by the Administrator after consultation with and written response to any comments provided by the Secretary of Health and Human Services, acting through the director of the Centers for Disease Control and Prevention or the director of the National Institutes of Health. A determination for any contaminant in accordance with paragraph (4)(C) subject to an interim regulation under this subparagraph shall be issued, and a completed analysis meeting the requirements of paragraph (3)(C) shall be published, not later than 3 years after the date on which the regulation is promulgated and the regulation shall be repromulgated, or revised if appropriate, not later than 5 years after that date.

(E) REGULATION.—For each contaminant that the Administrator determines to regulate under subparagraph (B), the Administrator shall publish maximum contaminant level goals and promulgate, by rule, national primary drinking water regulations under this subsection. The Administrator shall propose the maximum contaminant level goal and national primary drinking water regulation for a contaminant not later than 24 months after the determination to regulate under subparagraph (B), and may publish such proposed regulation concurrent with the determination to regulate. The Administrator shall publish a maximum contaminant level goal and promulgate a national primary drinking water regulation within 18 months after the proposal thereof. The Administrator, by notice in the Federal Register, may extend the deadline for such promulgation for up to 9 months.

(F) HEALTH ADVISORIES AND OTHER ACTIONS.—The Administrator may publish health advisories (which are not regulations) or take other appropriate actions for contaminants not subject to any national primary drinking water regulation.

(2) SCHEDULES AND DEADLINES.—

(A) IN GENERAL.—In the case of the contaminants listed in the Advance Notice of Proposed Rulemaking published in volume 47, Federal Register, page 9352, and in volume 48, Federal Register, page 45502, the Administrator shall publish maximum contaminant level goals and promulgate national primary drinking water regulations—

(i) not later than 1 year after June 19, 1986, for not fewer than 9 of the listed contaminants;

(ii) not later than 2 years after June 19, 1986, for not fewer than 40 of the listed contaminants; and

(iii) not later than 3 years after June 19, 1986, for the remainder of the listed contaminants.

(B) SUBSTITUTION OF CONTAMINANTS.—If the Administrator identifies a drinking water contaminant the regulation of which, in the judgment of the Administrator, is more likely to be protective of public health (taking into account the schedule for regulation under subparagraph (A)) than a contaminant referred to in subparagraph (A), the Administrator may publish a maximum contaminant level goal and promulgate a national primary drinking water regulation for the identified contaminant in lieu of regulating the contaminant referred to in subparagraph (A). Substitutions may be made for not more than 7 contaminants referred to in subparagraph (A). Regulation of a contaminant identified under this subparagraph shall be in accordance with the schedule applicable to the contaminant for which the substitution is made.

(C) DISINFECTANTS AND DISINFECTION BYPRODUCTS.—The Administrator shall promulgate an Interim Enhanced Surface Water Treatment Rule, a Final Enhanced Surface Water Treatment Rule, a Stage I Disinfectants and Disinfection Byproducts Rule, and a Stage II Disinfectants and Disinfection Byproducts Rule in accordance with the schedule published in volume 59, Federal Register, page 6361 (February 10, 1994), in table III.13 of the proposed Information Collection Rule. If a delay occurs with respect to the promulgation of any rule in the schedule referred to in this subparagraph, all subsequent rules shall be completed as expeditiously as practicable but no later than a revised date that reflects the interval or intervals for the rules in the schedule.

(3) RISK ASSESSMENT, MANAGEMENT, AND COMMUNICATION.—

(A) USE OF SCIENCE IN DECISIONMAKING.—In carrying out this section, and, to the degree that an Agency action is based on science, the Administrator shall use—

(i) the best available, peer-reviewed science and supporting studies conducted in accordance with sound and objective scientific practices; and

(ii) data collected by accepted methods or best available methods (if the reliability of the method and the nature of the decision justifies use of the data).

(B) PUBLIC INFORMATION.—In carrying out this section, the Administrator shall ensure that the presentation of information on public health effects is comprehensive, informative, and understandable. The Administrator shall, in a document made available to the public in support of a regulation promulgated under this section, specify, to the extent practicable—

(i) each population addressed by any estimate of public health effects;

(ii) the expected risk or central estimate of risk for the specific populations;

(iii) each appropriate upper-bound or lower-bound estimate of risk;

(iv) each significant uncertainty identified in the process of the assessment of public health effects and studies that would assist in resolving the uncertainty; and

(v) peer-reviewed studies known to the Administrator that support, are directly rel-

evant to, or fail to support any estimate of public health effects and the methodology used to reconcile inconsistencies in the scientific data.

(C) HEALTH RISK REDUCTION AND COST ANALYSIS.—

(i) MAXIMUM CONTAMINANT LEVELS.—When proposing any national primary drinking water regulation that includes a maximum contaminant level, the Administrator shall, with respect to a maximum contaminant level that is being considered in accordance with paragraph (4) and each alternative maximum contaminant level that is being considered pursuant to paragraph (5) or (6)(A), publish, seek public comment on, and use for the purposes of paragraphs (4), (5), and (6) an analysis of each of the following:

(I) Quantifiable and nonquantifiable health risk reduction benefits for which there is a factual basis in the rulemaking record to conclude that such benefits are likely to occur as the result of treatment to comply with each level.

(II) Quantifiable and nonquantifiable health risk reduction benefits for which there is a factual basis in the rulemaking record to conclude that such benefits are likely to occur from reductions in co-occurring contaminants that may be attributed solely to compliance with the maximum contaminant level, excluding benefits resulting from compliance with other proposed or promulgated regulations.

(III) Quantifiable and nonquantifiable costs for which there is a factual basis in the rulemaking record to conclude that such costs are likely to occur solely as a result of compliance with the maximum contaminant level, including monitoring, treatment, and other costs and excluding costs resulting from compliance with other proposed or promulgated regulations.

(IV) The incremental costs and benefits associated with each alternative maximum contaminant level considered.

(V) The effects of the contaminant on the general population and on groups within the general population such as infants, children, pregnant women, the elderly, individuals with a history of serious illness, or other subpopulations that are identified as likely to be at greater risk of adverse health effects due to exposure to contaminants in drinking water than the general population.

(VI) Any increased health risk that may occur as the result of compliance, including risks associated with co-occurring contaminants.

(VII) Other relevant factors, including the quality and extent of the information, the uncertainties in the analysis supporting subclauses (I) through (VI), and factors with respect to the degree and nature of the risk.

(ii) TREATMENT TECHNIQUES.—When proposing a national primary drinking water regulation that includes a treatment technique in accordance with paragraph (7)(A), the Administrator shall publish and seek public comment on an analysis of the health risk reduction benefits and costs likely to be experienced as the result of compliance with the treatment technique and alternative treatment techniques that are being considered, taking into account, as appropriate, the factors described in clause (i).

(iii) APPROACHES TO MEASURE AND VALUE BENEFITS.—The Administrator may identify valid approaches for the measurement and valuation of benefits under this subparagraph, including approaches to identify consumer willingness to pay for reductions in health risks from drinking water contaminants.

(iv) AUTHORIZATION.—There are authorized to be appropriated to the Administrator, acting through the Office of Ground Water and Drinking Water, to conduct studies, assessments, and analyses in support of regulations or the development of methods, $35,000,000 for each of fiscal years 1996 through 2003.

(4) GOALS AND STANDARDS.—

(A) MAXIMUM CONTAMINANT LEVEL GOALS.—Each maximum contaminant level goal established under this subsection shall be set at the level at which no known or anticipated adverse effects on the health of persons occur and which allows an adequate margin of safety.

(B) MAXIMUM CONTAMINANT LEVELS.—Except as provided in paragraphs (5) and (6), each national primary drinking water regulation for a contaminant for which a maximum contaminant level goal is established under this subsection shall specify a maximum contaminant level for such contaminant which is as close to the maximum contaminant level goal as is feasible.

(C) DETERMINATION.—At the time the Administrator proposes a national primary drinking water regulation under this paragraph, the Administrator shall publish a determination as to whether the benefits of the maximum contaminant level justify, or do not justify, the costs based on the analysis conducted under paragraph (3)(C).

(D) DEFINITION OF FEASIBLE.—For the purposes of this subsection, the term ''feasible'' means feasible with the use of the best technology, treatment techniques and other means which the Administrator finds, after examination for efficacy under field conditions and not solely under laboratory conditions, are available (taking cost into consideration). For the purpose of this paragraph, granular activated carbon is feasible for the control of synthetic organic chemicals, and any technology, treatment technique, or other means found to be the best available for the control of synthetic organic chemicals must be at least as effective in controlling synthetic organic chemicals as granular activated carbon.

(E) FEASIBLE TECHNOLOGIES.—

(i) IN GENERAL.—Each national primary drinking water regulation which establishes a maximum contaminant level shall list the technology, treatment techniques, and other

means which the Administrator finds to be feasible for purposes of meeting such maximum contaminant level, but a regulation under this subsection shall not require that any specified technology, treatment technique, or other means be used for purposes of meeting such maximum contaminant level.

(ii) LIST OF TECHNOLOGIES FOR SMALL SYSTEMS.—The Administrator shall include in the list any technology, treatment technique, or other means that is affordable, as determined by the Administrator in consultation with the States, for small public water systems serving—

(I) a population of 10,000 or fewer but more than 3,300;

(II) a population of 3,300 or fewer but more than 500; and

(III) a population of 500 or fewer but more than 25;

and that achieves compliance with the maximum contaminant level or treatment technique, including packaged or modular systems and point-of-entry or point-of-use treatment units. Point-of-entry and point-of-use treatment units shall be owned, controlled and maintained by the public water system or by a person under contract with the public water system to ensure proper operation and maintenance and compliance with the maximum contaminant level or treatment technique and equipped with mechanical warnings to ensure that customers are automatically notified of operational problems. The Administrator shall not include in the list any point-of-use treatment technology, treatment technique, or other means to achieve compliance with a maximum contaminant level or treatment technique requirement for a microbial contaminant (or an indicator of a microbial contaminant). If the American National Standards Institute has issued product standards applicable to a specific type of point-of-entry or point-of-use treatment unit, individual units of that type shall not be accepted for compliance with a maximum contaminant level or treatment technique requirement unless they are independently certified in accordance with such standards. In listing any technology, treatment technique, or other means pursuant to this clause, the Administrator shall consider the quality of the source water to be treated.

(iii) LIST OF TECHNOLOGIES THAT ACHIEVE COMPLIANCE.—Except as provided in clause (v), not later than 2 years after August 6, 1996, and after consultation with the States, the Administrator shall issue a list of technologies that achieve compliance with the maximum contaminant level or treatment technique for each category of public water systems described in subclauses (I), (II), and (III) of clause (ii) for each national primary drinking water regulation promulgated prior to June 19, 1986.

(iv) ADDITIONAL TECHNOLOGIES.—The Administrator may, at any time after a national primary drinking water regulation has been promulgated, supplement the list of technologies describing additional or new or innovative treatment technologies that meet the requirements of this paragraph for categories of small public water systems described in subclauses (I), (II), and (III) of clause (ii) that are subject to the regulation.

(v) TECHNOLOGIES THAT MEET SURFACE WATER TREATMENT RULE.—Within one year after August 6, 1996, the Administrator shall list technologies that meet the Surface Water Treatment Rule for each category of public water systems described in subclauses (I), (II), and (III) of clause (ii).

(5) ADDITIONAL HEALTH RISK CONSIDERATIONS.—

(A) IN GENERAL.—Notwithstanding paragraph (4), the Administrator may establish a maximum contaminant level for a contaminant at a level other than the feasible level, if the technology, treatment techniques, and other means used to determine the feasible level would result in an increase in the health risk from drinking water by—

(i) increasing the concentration of other contaminants in drinking water; or

(ii) interfering with the efficacy of drinking water treatment techniques or processes that are used to comply with other national primary drinking water regulations.

(B) ESTABLISHMENT OF LEVEL.—If the Administrator establishes a maximum contaminant level or levels or requires the use of treatment techniques for any contaminant or contaminants pursuant to the authority of this paragraph—

(i) the level or levels or treatment techniques shall minimize the overall risk of adverse health effects by balancing the risk from the contaminant and the risk from other contaminants the concentrations of which may be affected by the use of a treatment technique or process that would be employed to attain the maximum contaminant level or levels; and

(ii) the combination of technology, treatment techniques, or other means required to meet the level or levels shall not be more stringent than is feasible (as defined in paragraph (4)(D)).

(6) ADDITIONAL HEALTH RISK REDUCTION AND COST CONSIDERATIONS.—

(A) IN GENERAL.—Notwithstanding paragraph (4), if the Administrator determines based on an analysis conducted under paragraph (3)(C) that the benefits of a maximum contaminant level promulgated in accordance with paragraph (4) would not justify the costs of complying with the level, the Administrator may, after notice and opportunity for public comment, promulgate a maximum contaminant level for the contaminant that maximizes health risk reduction benefits at a cost that is justified by the benefits.

(B) EXCEPTION.—The Administrator shall not use the authority of this paragraph to promulgate a maximum contaminant level for a contaminant, if the benefits of compliance with a national primary drinking water regulation for the contaminant that would be promulgated in accordance with paragraph (4) experienced by—

(i) persons served by large public water systems; and

(ii) persons served by such other systems as are unlikely, based on information provided by the States, to receive a variance under section 300g–4(e) of this title (relating to small system variances);

would justify the costs to the systems of complying with the regulation. This subparagraph shall not apply if the contaminant is found almost exclusively in small systems eligible under section 300g–4(e) of this title for a small system variance.

(C) DISINFECTANTS AND DISINFECTION BYPRODUCTS.—The Administrator may not use the authority of this paragraph to establish a maximum contaminant level in a Stage I or Stage II national primary drinking water regulation (as described in paragraph (2)(C)) for contaminants that are disinfectants or disinfection byproducts, or to establish a maximum contaminant level or treatment technique requirement for the control of cryptosporidium. The authority of this paragraph may be used to establish regulations for the use of disinfection by systems relying on ground water sources as required by paragraph (8).

(D) JUDICIAL REVIEW.—A determination by the Administrator that the benefits of a maximum contaminant level or treatment requirement justify or do not justify the costs of complying with the level shall be reviewed by the court pursuant to section 300j–7 of this title only as part of a review of a final national primary drinking water regulation that has been promulgated based on the determination and shall not be set aside by the court under that section unless the court finds that the determination is arbitrary and capricious.

(7)(A) The Administrator is authorized to promulgate a national primary drinking water regulation that requires the use of a treatment technique in lieu of establishing a maximum contaminant level, if the Administrator makes a finding that it is not economically or technologically feasible to ascertain the level of the contaminant. In such case, the Administrator shall identify those treatment techniques which, in the Administrator's judgment, would prevent known or anticipated adverse effects on the health of persons to the extent feasible. Such regulations shall specify each treatment technique known to the Administrator which meets the requirements of this paragraph, but the Administrator may grant a variance from any specified treatment technique in accordance with section 300g–4(a)(3) of this title.

(B) Any schedule referred to in this subsection for the promulgation of a national primary drinking water regulation for any contaminant shall apply in the same manner if the regulation requires a treatment technique in lieu of establishing a maximum contaminant level.

(C)(i) Not later than 18 months after June 19, 1986, the Administrator shall propose and promulgate national primary drinking water regulations specifying criteria under which filtration (including coagulation and sedimentation, as appropriate) is required as a treatment technique for public water systems supplied by surface water sources. In promulgating such rules, the Administrator shall consider the quality of source waters, protection afforded by watershed management, treatment practices (such as disinfection and length of water storage) and other factors relevant to protection of health.

(ii) In lieu of the provisions of section 300g–4 of this title the Administrator shall specify procedures by which the State determines which public water systems within its jurisdiction shall adopt filtration under the criteria of clause (i). The State may require the public water system to provide studies or other information to assist in this determination. The procedures shall provide notice and opportunity for public hearing on this determination. If the State determines that filtration is required, the State shall prescribe a schedule for compliance by the public water system with the filtration requirement. A schedule shall require compliance within 18 months of a determination made under clause (iii).

(iii) Within 18 months from the time that the Administrator establishes the criteria and procedures under this subparagraph, a State with primary enforcement responsibility shall adopt any necessary regulations to implement this subparagraph. Within 12 months of adoption of such regulations the State shall make determinations regarding filtration for all the public water systems within its jurisdiction supplied by surface waters.

(iv) If a State does not have primary enforcement responsibility for public water systems, the Administrator shall have the same authority to make the determination in clause (ii) in such State as the State would have under that clause. Any filtration requirement or schedule under this subparagraph shall be treated as if it were a requirement of a national primary drinking water regulation.

(v) As an additional alternative to the regulations promulgated pursuant to clauses (i) and (iii), including the criteria for avoiding filtration contained in 40 CFR 141.71, a State exercising primary enforcement responsibility for public water systems may, on a case-by-case basis, and after notice and opportunity for public comment, establish treatment requirements as an alternative to filtration in the case of systems having uninhabited, undeveloped watersheds in consolidated ownership, and having control over access to, and activities in, those watersheds, if the State determines (and the Administrator concurs) that the quality of the source water and the alternative treatment requirements established by the State ensure greater removal or inactivation efficiencies of pathogenic organisms for which national primary drinking water regulations have been promulgated or that are of public health concern than would be achieved by the combination of filtration and chlorine disinfection (in compliance with this section).

(8) DISINFECTION.—At any time after the end of the 3-year period that begins on August 6, 1996, but not later than the date on which the Administrator promulgates a Stage II rulemaking for disinfectants and disinfection byproducts (as described in paragraph (2)(C)), the Administrator shall also promulgate national primary drinking water regulations requiring disinfection as a treatment technique for all public water sys-

tems, including surface water systems and, as necessary, ground water systems. After consultation with the States, the Administrator shall (as part of the regulations) promulgate criteria that the Administrator, or a State that has primary enforcement responsibility under section 300g–2 of this title, shall apply to determine whether disinfection shall be required as a treatment technique for any public water system served by ground water. The Administrator shall simultaneously promulgate a rule specifying criteria that will be used by the Administrator (or delegated State authorities) to grant variances from this requirement according to the provisions of sections 300g–4(a)(1)(B) and 300g–4(a)(3) of this title. In implementing section 300j–1(e) of this title the Administrator or the delegated State authority shall, where appropriate, give special consideration to providing technical assistance to small public water systems in complying with the regulations promulgated under this paragraph.

(9) REVIEW AND REVISION.—The Administrator shall, not less often than every 6 years, review and revise, as appropriate, each national primary drinking water regulation promulgated under this subchapter. Any revision of a national primary drinking water regulation shall be promulgated in accordance with this section, except that each revision shall maintain, or provide for greater, protection of the health of persons.

(10) EFFECTIVE DATE.—A national primary drinking water regulation promulgated under this section (and any amendment thereto) shall take effect on the date that is 3 years after the date on which the regulation is promulgated unless the Administrator determines that an earlier date is practicable, except that the Administrator, or a State (in the case of an individual system), may allow up to 2 additional years to comply with a maximum contaminant level or treatment technique if the Administrator or State (in the case of an individual system) determines that additional time is necessary for capital improvements.

(11) No national primary drinking water regulation may require the addition of any substance for preventive health care purposes unrelated to contamination of drinking water.

(12) CERTAIN CONTAMINANTS.—

(A) ARSENIC.—

(i) SCHEDULE AND STANDARD.—Notwithstanding the deadlines set forth in paragraph (1), the Administrator shall promulgate a national primary drinking water regulation for arsenic pursuant to this subsection, in accordance with the schedule established by this paragraph.

(ii) STUDY PLAN.—Not later than 180 days after August 6, 1996, the Administrator shall develop a comprehensive plan for study in support of drinking water rulemaking to reduce the uncertainty in assessing health risks associated with exposure to low levels of arsenic. In conducting such study, the Administrator shall consult with the National Academy of Sciences, other Federal agencies, and interested public and private entities.

(iii) COOPERATIVE AGREEMENTS.—In carrying out the study plan, the Administrator

may enter into cooperative agreements with other Federal agencies, State and local governments, and other interested public and private entities.

(iv) PROPOSED REGULATIONS.—The Administrator shall propose a national primary drinking water regulation for arsenic not later than January 1, 2000.

(v) FINAL REGULATIONS.—Not later than January 1, 2001, after notice and opportunity for public comment, the Administrator shall promulgate a national primary drinking water regulation for arsenic.

(vi) AUTHORIZATION.—There are authorized to be appropriated $2,500,000 for each of fiscal years 1997 through 2000 for the studies required by this paragraph.

(B) SULFATE.—

(i) ADDITIONAL STUDY.—Prior to promulgating a national primary drinking water regulation for sulfate, the Administrator and the Director of the Centers for Disease Control and Prevention shall jointly conduct an additional study to establish a reliable dose-response relationship for the adverse human health effects that may result from exposure to sulfate in drinking water, including the health effects that may be experienced by groups within the general population (including infants and travelers) that are potentially at greater risk of adverse health effects as the result of such exposure. The study shall be conducted in consultation with interested States, shall be based on the best available, peer-reviewed science and supporting studies conducted in accordance with sound and objective scientific practices, and shall be completed not later than 30 months after August 6, 1996.

(ii) DETERMINATION.—The Administrator shall include sulfate among the 5 or more contaminants for which a determination is made pursuant to paragraph (3)(B) not later than 5 years after August 6, 1996.

(iii) PROPOSED AND FINAL RULE.—Notwithstanding the deadlines set forth in paragraph (2), the Administrator may, pursuant to the authorities of this subsection and after notice and opportunity for public comment, promulgate a final national primary drinking water regulation for sulfate. Any such regulation shall include requirements for public notification and options for the provision of alternative water supplies to populations at risk as a means of complying with the regulation in lieu of a best available treatment technology or other means.

(13) RADON IN DRINKING WATER.—

(A) NATIONAL PRIMARY DRINKING WATER REGULATION.—Notwithstanding paragraph (2), the Administrator shall withdraw any national primary drinking water regulation for radon proposed prior to August 6, 1996, and shall propose and promulgate a regulation for radon under this section, as amended by the Safe Drinking Water Act Amendments of 1996.

(B) RISK ASSESSMENT AND STUDIES.—

(i) ASSESSMENT BY NAS.—Prior to proposing a national primary drinking water regulation for radon, the Administrator

shall arrange for the National Academy of Sciences to prepare a risk assessment for radon in drinking water using the best available science in accordance with the requirements of paragraph (3). The risk assessment shall consider each of the risks associated with exposure to radon from drinking water and consider studies on the health effects of radon at levels and under conditions likely to be experienced through residential exposure. The risk assessment shall be peer-reviewed.

(ii) STUDY OF OTHER MEASURES.—The Administrator shall arrange for the National Academy of Sciences to prepare an assessment of the health risk reduction benefits associated with various mitigation measures to reduce radon levels in indoor air. The assessment may be conducted as part of the risk assessment authorized by clause (i) and shall be used by the Administrator to prepare the guidance and approve State programs under subparagraph (G).

(iii) OTHER ORGANIZATION.—If the National Academy of Sciences declines to prepare the risk assessment or studies required by this subparagraph, the Administrator shall enter into a contract or cooperative agreement with another independent, scientific organization to prepare such assessments or studies.

(C) HEALTH RISK REDUCTION AND COST ANALYSIS.—Not later than 30 months after August 6, 1996, the Administrator shall publish, and seek public comment on, a health risk reduction and cost analysis meeting the requirements of paragraph (3)(C) for potential maximum contaminant levels that are being considered for radon in drinking water. The Administrator shall include a response to all significant public comments received on the analysis with the preamble for the proposed rule published under subparagraph (D).

(D) PROPOSED REGULATION.—Not later than 36 months after August 6, 1996, the Administrator shall propose a maximum contaminant level goal and a national primary drinking water regulation for radon pursuant to this section.

(E) FINAL REGULATION.—Not later than 12 months after the date of the proposal under subparagraph (D), the Administrator shall publish a maximum contaminant level goal and promulgate a national primary drinking water regulation for radon pursuant to this section based on the risk assessment prepared pursuant to subparagraph (B) and the health risk reduction and cost analysis published pursuant to subparagraph (C). In considering the risk assessment and the health risk reduction and cost analysis in connection with the promulgation of such a standard, the Administrator shall take into account the costs and benefits of control programs for radon from other sources.

(F) ALTERNATIVE MAXIMUM CONTAMINANT LEVEL.—If the maximum contaminant level for radon in drinking water promulgated pursuant to subparagraph (E) is more stringent than necessary to reduce the contribution to radon in indoor air from drinking water to a concentration that is equivalent to the national average concentration of radon in outdoor air, the Administrator shall, simultaneously with the promulgation of such level, promulgate an alternative maximum contaminant level for radon that would result in a contribution of radon from drinking water to radon levels in indoor air equivalent to the national average concentration of radon in outdoor air. If the Administrator promulgates an alternative maximum contaminant level under this subparagraph, the Administrator shall, after notice and opportunity for public comment and in consultation with the States, publish guidelines for State programs, including criteria for multimedia measures to mitigate radon levels in indoor air, to be used by the States in preparing programs under subparagraph (G). The guidelines shall take into account data from existing radon mitigation programs and the assessment of mitigation measures prepared under subparagraph (B).

(G) MULTIMEDIA RADON MITIGATION PROGRAMS.—

(i) IN GENERAL.—A State may develop and submit a multimedia program to mitigate radon levels in indoor air for approval by the Administrator under this subparagraph. If, after notice and the opportunity for public comment, such program is approved by the Administrator, public water systems in the State may comply with the alternative maximum contaminant level promulgated under subparagraph (F) in lieu of the maximum contaminant level in the national primary drinking water regulation promulgated under subparagraph (E).

(ii) ELEMENTS OF PROGRAMS.—State programs may rely on a variety of mitigation measures including public education, testing, training, technical assistance, remediation grant and loan or incentive programs, or other regulatory or nonregulatory measures. The effectiveness of elements in State programs shall be evaluated by the Administrator based on the assessment prepared by the National Academy of Sciences under subparagraph (B) and the guidelines published by the Administrator under subparagraph (F).

(iii) APPROVAL.—The Administrator shall approve a State program submitted under this paragraph if the health risk reduction benefits expected to be achieved by the program are equal to or greater than the health risk reduction benefits that would be achieved if each public water system in the State complied with the maximum contaminant level promulgated under subparagraph (E). The Administrator shall approve or disapprove a program submitted under this paragraph within 180 days of receipt. A program that is not disapproved during such period shall be deemed approved. A program that is disapproved may be modified to address the objections of the Administrator and be resubmitted for approval.

(iv) REVIEW.—The Administrator shall periodically, but not less often than every 5 years, review each multimedia mitigation program approved under this subparagraph

to determine whether it continues to meet the requirements of clause (iii) and shall, after written notice to the State and an opportunity for the State to correct any deficiency in the program, withdraw approval of programs that no longer comply with such requirements.

(v) EXTENSION.—If, within 90 days after the promulgation of an alternative maximum contaminant level under subparagraph (F), the Governor of a State submits a letter to the Administrator committing to develop a multimedia mitigation program under this subparagraph, the effective date of the national primary drinking water regulation for radon in the State that would be applicable under paragraph (10) shall be extended for a period of 18 months.

(vi) LOCAL PROGRAMS.—In the event that a State chooses not to submit a multimedia mitigation program for approval under this subparagraph or has submitted a program that has been disapproved, any public water system in the State may submit a program for approval by the Administrator according to the same criteria, conditions, and approval process that would apply to a State program. The Administrator shall approve a multimedia mitigation program if the health risk reduction benefits expected to be achieved by the program are equal to or greater than the health risk reduction benefits that would result from compliance by the public water system with the maximum contaminant level for radon promulgated under subparagraph (E).

(14) RECYCLING OF FILTER BACKWASH.—The Administrator shall promulgate a regulation to govern the recycling of filter backwash water within the treatment process of a public water system. The Administrator shall promulgate such regulation not later than 4 years after August 6, 1996, unless such recycling has been addressed by the Administrator's Enhanced Surface Water Treatment Rule prior to such date.

(15) VARIANCE TECHNOLOGIES.—

(A) IN GENERAL.—At the same time as the Administrator promulgates a national primary drinking water regulation for a contaminant pursuant to this section, the Administrator shall issue guidance or regulations describing the best treatment technologies, treatment techniques, or other means (referred to in this paragraph as ''variance technology'') for the contaminant that the Administrator finds, after examination for efficacy under field conditions and not solely under laboratory conditions, are available and affordable, as determined by the Administrator in consultation with the States, for public water systems of varying size, considering the quality of the source water to be treated. The Administrator shall identify such variance technologies for public water systems serving—

(i) a population of 10,000 or fewer but more than 3,300;

(ii) a population of 3,300 or fewer but more than 500; and

(iii) a population of 500 or fewer but more than 25,

if, considering the quality of the source water to be treated, no treatment technology is listed for public water systems of that size under paragraph (4)(E). Variance technologies identified by the Administrator pursuant to this paragraph may not achieve compliance with the maximum contaminant level or treatment technique requirement of such regulation, but shall achieve the maximum reduction or inactivation efficiency that is affordable considering the size of the system and the quality of the source water. The guidance or regulations shall not require the use of a technology from a specific manufacturer or brand.

(B) LIMITATION.—The Administrator shall not identify any variance technology under this paragraph, unless the Administrator has determined, considering the quality of the source water to be treated and the expected useful life of the technology, that the variance technology is protective of public health.

(C) ADDITIONAL INFORMATION.—The Administrator shall include in the guidance or regulations identifying variance technologies under this paragraph any assumptions supporting the public health determination referred to in subparagraph (B), where such assumptions concern the public water system to which the technology may be applied, or its source waters. The Administrator shall provide any assumptions used in determining affordability, taking into consideration the number of persons served by such systems. The Administrator shall provide as much reliable information as practicable on performance, effectiveness, limitations, costs, and other relevant factors including the applicability of variance technology to waters from surface and underground sources.

(D) REGULATIONS AND GUIDANCE.—Not later than 2 years after August 6, 1996, and after consultation with the States, the Administrator shall issue guidance or regulations under subparagraph (A) for each national primary drinking water regulation promulgated prior to August 6, 1996, for which a variance may be granted under section 300g–4(e) of this title. The Administrator may, at any time after a national primary drinking water regulation has been promulgated, issue guidance or regulations describing additional variance technologies. The Administrator shall, not less often than every 7 years, or upon receipt of a petition supported by substantial information, review variance technologies identified under this paragraph. The Administrator shall issue revised guidance or regulations if new or innovative variance technologies become available that meet the requirements of this paragraph and achieve an equal or greater reduction or inactivation efficiency than the variance technologies previously identified under this subparagraph. No public water system shall be required to replace a variance technology during the useful life of the technology for the sole reason that a more efficient variance technology has been listed under this subparagraph.

**(c) Secondary regulations; publication of proposed regulations; promulgation; amendments**

The Administrator shall publish proposed national secondary drinking water regulations within 270 days after December 16, 1974. Within 90 days after publication of any such regulation, he shall promulgate such regulation with such modifications as he deems appropriate. Regulations under this subsection may be amended from time to time.

**(d) Regulations; public hearings; administrative consultations**

Regulations under this section shall be prescribed in accordance with section 553 of title 5 (relating to rulemaking), except that the Administrator shall provide opportunity for public hearing prior to promulgation of such regulations. In proposing and promulgating regulations under this section, the Administrator shall consult with the Secretary and the National Drinking Water Advisory Council.

**(e) Science Advisory Board comments**

The Administrator shall request comments from the Science Advisory Board (established under the Environmental Research, Development, and Demonstration Act of 1978) prior to proposal of a maximum contaminant level goal and national primary drinking water regulation. The Board shall respond, as it deems appropriate, within the time period applicable for promulgation of the national primary drinking water standard concerned. This subsection shall, under no circumstances, be used to delay final promulgation of any national primary drinking water standard.

(July 1, 1944, ch. 373, title XIV, §1412, as added Pub. L. 93–523, §2(a), Dec. 16, 1974, 88 Stat. 1662; amended Pub. L. 95–190, §§3(c), 12(a), Nov. 16, 1977, 91 Stat. 1394, 1398; Pub. L. 99–339, title I, §101(a)–(c)(1), (d), (e), June 19, 1986, 100 Stat. 642–646; Pub. L. 104–182, title I, §§102(a), (c)(2), 103, 104(a), (c), 105–111(a), title V, §501(a)(1), (2), Aug. 6, 1996, 110 Stat. 1617, 1621–1623, 1625–1631, 1691.)

### Editorial Notes

#### References in Text

The Federal Insecticide, Fungicide, and Rodenticide Act, referred to in subsec. (b)(1)(B)(i)(II), is act June 25, 1947, ch. 125, as amended generally by Pub. L. 92–516, Oct. 21, 1972, 86 Stat. 973, which is classified generally to subchapter II (§136 et seq.) of chapter 6 of Title 7, Agriculture. For complete classification of this Act to the Code, see Short Title note set out under section 136 of Title 7 and Tables.

The Safe Drinking Water Act Amendments of 1996, referred to in subsec. (b)(13)(A), is Pub. L. 104–182, Aug. 6, 1996, 110 Stat. 1613. For complete classification of this Act to the Code, see Short Title of 1996 Amendment note set out under section 201 of this title and Tables.

The Environmental Research, Development, and Demonstration Act of 1978, referred to in subsec. (e), probably means the Environmental Research, Development, and Demonstration Authorization Act of 1978 which is Pub. L. 95–155, Nov. 8, 1977, 91 Stat. 1257. Provisions of the Act establishing the Science Advisory Board are classified to section 4365 of this title. For complete classification of this Act to the Code, see Tables.

#### Amendments

1996—Subsec. (a)(3). Pub. L. 104–182, §102(c)(2), struck out ''paragraph (1), (2), or (3) of'' before ''subsection (b)'' in two places.

Subsec. (b). Pub. L. 104–182, §102(a), inserted heading.

Subsec. (b)(1), (2). Pub. L. 104–182, §102(a), added pars. (1) and (2) and struck out former pars. (1) and (2) which related to publication of maximum contaminant level goals and promulgation of national primary drinking water regulations for certain listed contaminants or substituted contaminants.

Subsec. (b)(3). Pub. L. 104–182, §103, added par. (3).

Pub. L. 104–182, §102(a), struck out par. (3) which related to publication of maximum contaminant level goals and promulgation of national primary drinking water regulations for contaminants, other than those referred to in pars. (1) or (2), which may have an adverse effect on human health and are known to occur in public water systems.

Subsec. (b)(4). Pub. L. 104–182, §104(a)(1), designated first sentence as subpar. (A), inserted par. and subpar. (A) headings, designated second sentence as subpar. (B), inserted subpar. (B) heading, substituted ''Except as provided in paragraphs (5) and (6), each national'' for ''Each national'' and ''specify a maximum contaminant level'' for ''specify a maximum level'', and added subpar. (C).

Subsec. (b)(4)(D). Pub. L. 104–182, §104(a)(2), (3), redesignated par. (5) as subpar. (D) of par. (4), inserted subpar. heading, and substituted ''this paragraph'' for ''paragraph (4)''.

Subsec. (b)(4)(E). Pub. L. 104–182, §§104(a)(4), (5), 105, redesignated par. (6) as subpar. (E)(i) of par. (4), inserted subpar. and cl. headings, substituted ''this subsection'' for ''this paragraph'', and added cls. (ii) to (v).

Subsec. (b)(5), (6). Pub. L. 104–182, §104(a)(6), added pars. (5) and (6). Former pars. (5) and (6) redesignated subpars. (D) and (E)(i), respectively, of par. (4).

Subsec. (b)(7)(C)(v). Pub. L. 104–182, §106, added cl. (v).

Subsec. (b)(8). Pub. L. 104–182, §501(a)(2), substituted ''section 300j–1(e)'' for ''section 300j–1(g)''.

Pub. L. 104–182, §107, inserted heading, realigned margins, and substituted ''At any time after the end of the 3-year period that begins on August 6, 1996, but not later than the date on which the Administrator promulgates a Stage II rulemaking for disinfectants and disinfection byproducts (as described in paragraph (2)(C)), the Administrator shall also promulgate national primary drinking water regulations requiring disinfection as a treatment technique for all public water systems, including surface water systems and, as necessary, ground water systems. After consultation with the States, the Administrator shall (as part of the regulations) promulgate criteria that the Administrator, or a State that has primary enforcement responsibility under section 300g–2 of this title, shall apply to determine whether disinfection shall be required as a treatment technique for any public water system served by ground water.'' for ''Not later than 36 months after June 19, 1986, the Administrator shall propose and promulgate national primary drinking water regulations requiring disinfection as a treatment technique for all public water systems.''

Subsec. (b)(9). Pub. L. 104–182, §104(c), amended par. (9) generally. Prior to amendment, par. (9) read as follows: ''National primary drinking water regulations shall be amended whenever changes in technology, treatment techniques, and other means permit greater protection of the health of persons, but in any event such regulations shall be reviewed at least once every 3 years. Such review shall include an analysis of innovations or changes in technology, treatment techniques or other activities that have occurred over the previous 3-year period and that may provide for greater protection of the health of persons. The findings of such review shall be published in the Federal Register. If, after opportunity for public comment, the Administrator concludes that the technology, treatment techniques, or other means resulting from such innovations or

ADD-16

changes are not feasible within the meaning of paragraph (5), an explanation of such conclusion shall be published in the Federal Register.''

Subsec. (b)(10). Pub. L. 104–182, §108, amended par. (10) generally. Prior to amendment, par. (10) read as follows: ''National primary drinking water regulations promulgated under this subsection (and amendments thereto) shall take effect eighteen months after the date of their promulgation. Regulations under subsection (a) of this section shall be superseded by regulations under this subsection to the extent provided by the regulations under this subsection.''

Subsec. (b)(11). Pub. L. 104–182, §501(a)(1), realigned margins.

Subsec. (b)(12). Pub. L. 104–182, §109(a), added par. (12).
Subsec. (b)(13). Pub. L. 104–182, §109(b), added par. (13).
Subsec. (b)(14). Pub. L. 104–182, §110, added par. (14).
Subsec. (b)(15). Pub. L. 104–182, §111(a), added par. (15).
1986—Subsec. (a). Pub. L. 99–339, §101(a), amended subsec. (a) generally. Prior to amendment, subsec. (a) read as follows:

''(1) The Administrator shall publish proposed national interim primary drinking water regulations within 90 days after December 16, 1974. Within 180 days after December 16, 1974, he shall promulgate such regulations with such modifications as he deems appropriate. Regulations under this paragraph may be amended from time to time.

''(2) National interim primary drinking water regulations promulgated under paragraph (1) shall protect health to the extent feasible, using technology, treatment techniques, and other means, which the Administrator determines are generally available (taking costs into consideration) on December 16, 1974.

''(3) The interim primary regulations first promulgated under paragraph (1) shall take effect eighteen months after the date of their promulgation.''

Subsec. (b)(1). Pub. L. 99–339, §101(b), substituted provisions establishing standard setting schedules and deadlines for provisions relating to establishment of maximum contaminant levels and a list of contaminants with adverse effect but of undetermined levels.

Subsec. (b)(2). Pub. L. 99–339, §101(b), substituted provisions authorizing the Administrator to substitute contaminants for those referred to in par. (1) and to supply a list of the contaminants proposed for substitution, with the decision of the Administrator to regulate such contaminant not subject to judicial review, for provisions which authorized the Administrator to publish in the Federal Register proposed revised national interim primary drinking water regulations and 180 days after the date of such proposed regulations to promulgate such revised regulations with modification as deemed appropriate.

Subsec. (b)(3). Pub. L. 99–339, §101(b), substituted provisions directing the Administrator to publish maximum contaminant level goals and promulgate national primary drinking water regulations for contaminants, other than specified in par. (1) or (2), which may have an adverse effect on health and are known or anticipated to occur in public water systems, to establish an advisory working group to aid in establishing a list of such contaminants, and to publish, within a specified time, both proposed and final goals and regulations for provisions which required that revised national primary drinking water regulations specify a maximum contaminant level or require the use of treatment techniques for each contaminant, which level or technique was to be as close to the recommended level or technique as feasible, and defined the term ''feasible''.

Subsec. (b)(4) to (11). Pub. L. 99–339, §101(b), (c)(1), (d), added pars. (4) to (8), redesignated former pars. (4) to (6) as pars. (9) to (11), respectively, in par. (9) substituted ''National'' for ''Revised National'' and inserted provision that review include analysis, and publication in Federal Register, of innovations in technology, treatment techniques or other activities occurring during previous three years and their feasibility, and in par. (10) substituted ''National'' for ''Revised National''.

Subsec. (e). Pub. L. 99–339, §101(e), amended subsec. (e) generally, substituting provisions which relate to the request by the Administrator of comments by the Science Advisory Board prior to proposal of a maximum contaminant level goal and national primary drinking water regulation for provisions which related to study by the National Academy of Sciences to determine the maximum contaminant levels, report to Congress, and funding therefor.

1977—Subsec. (e)(2). Pub. L. 95–190 inserted provisions relating to revisions of the required report and cl. (G).

## Statutory Notes and Related Subsidiaries

### NATIONAL PRIMARY DRINKING WATER REGULATION FOR ARSENIC

Pub. L. 106–377, §1(a)(1) [title III], Oct. 27, 2000, 114 Stat. 1441, 1441A–41, provided in part: ''That notwithstanding section 1412(b)(12)(A)(v) of the Safe Drinking Water Act, as amended [42 U.S.C. 300g–1(b)(12)(A)(v)], the Administrator shall promulgate a national primary drinking water regulation for arsenic not later than June 22, 2001.''

### APPLICABILITY OF PRIOR REQUIREMENTS

Pub. L. 104–182, title I, §102(b), Aug. 6, 1996, 110 Stat. 1620, provided that: ''The requirements of subparagraphs (C) and (D) of section 1412(b)(3) of the Safe Drinking Water Act [42 U.S.C. 300g–1(b)(3)(C), (D)] as in effect before the date of enactment of this Act [Aug. 6, 1996], and any obligation to promulgate regulations pursuant to such subparagraphs not promulgated as of the date of enactment of this Act, are superseded by the amendments made by subsection (a) [amending this section].''

### DISINFECTANTS AND DISINFECTION BYPRODUCTS

Pub. L. 104–182, title I, §104(b), Aug. 6, 1996, 110 Stat. 1625, provided that: ''The Administrator of the Environmental Protection Agency may use the authority of section 1412(b)(5) of the Safe Drinking Water Act [42 U.S.C. 300g–1(b)(5)] (as amended by this Act) to promulgate the Stage I and Stage II Disinfectants and Disinfection Byproducts Rules as proposed in volume 59, Federal Register, page 38668 (July 29, 1994). The considerations used in the development of the July 29, 1994, proposed national primary drinking water regulation on disinfectants and disinfection byproducts shall be treated as consistent with such section 1412(b)(5) for purposes of such Stage I and Stage II rules.''

## § 300g–2. State primary enforcement responsibility

### (a) In general

For purposes of this subchapter, a State has primary enforcement responsibility for public water systems during any period for which the Administrator determines (pursuant to regulations prescribed under subsection (b)) that such State—

(1) has adopted drinking water regulations that are no less stringent than the national primary drinking water regulations promulgated by the Administrator under subsections (a) and (b) of section 300g–1 of this title not later than 2 years after the date on which the regulations are promulgated by the Administrator, except that the Administrator may provide for an extension of not more than 2 years if, after submission and review of appropriate, adequate documentation from the State, the Administrator determines that the extension is necessary and justified;

(2) has adopted and is implementing adequate procedures for the enforcement of such State regulations, including conducting such monitoring and making such inspections as the Administrator may require by regulation;

tection Agency, after consultation with the Secretary of Agriculture and the several States, to enter into arrangements with public or private entities to conduct a survey of the quantity, quality, and availability of rural drinking water supplies, which survey was to include, but not be limited to, the consideration of the number of residents in each rural area who presently are being inadequately served by a public or private drinking water supply system, or by an individual home drinking water supply system, or who presently have limited or otherwise inadequate access to drinking water, or who, due to the absence or inadequacy of a drinking water supply system, are exposed to an increased health hazard, and who have experienced incidents of chronic or acute illness, which may be attributed to the inadequacy of a drinking water supply system. The survey was to be completed within eighteen months of Dec. 16, 1974 and a final report thereon submitted, not later than six months after the completion of the survey, to the President and to the Congress.

#### FEDERAL COMPLIANCE WITH POLLUTION CONTROL STANDARDS

For provisions relating to the responsibility of the head of each Executive agency for compliance with applicable pollution control standards, see Ex. Ord. No. 12088, Oct. 13, 1978, 43 F.R. 47707, set out as a note under section 4321 of this title.

#### TERMINATION OF ADVISORY COMMITTEES

Pub. L. 93–641, § 6, Jan. 4, 1975, 88 Stat. 2275, set out as a note under section 217a of this title, provided that an advisory committee established pursuant to the Public Health Service Act shall terminate at such time as may be specifically prescribed by an Act of Congress enacted after Jan. 4, 1975.

#### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 201, 300g–4, 300g–5 of this title.

### PART B—PUBLIC WATER SYSTEMS

### § 300g. Coverage

Subject to sections 300g–4 and 300g–5 of this title, national primary drinking water regulations under this part shall apply to each public water system in each State; except that such regulations shall not apply to a public water system—

(1) which consists only of distribution and storage facilities (and does not have any collection and treatment facilities);

(2) which obtains all of its water from, but is not owned or operated by, a public water system to which such regulations apply;

(3) which does not sell water to any person; and

(4) which is not a carrier which conveys passengers in interstate commerce.

(July 1, 1944, ch. 373, title XIV, § 1411, as added Dec. 16, 1974, Pub. L. 93–523, § 2(a), 88 Stat. 1662.)

### § 300g–1. National drinking water regulations

(a) National primary drinking water regulations; maximum contaminant level goals; simultaneous publication of regulations and goals

(1) Effective on June 19, 1986, each national interim or revised primary drinking water regulation promulgated under this section before June 19, 1986, shall be deemed to be a national primary drinking water regulation under sub-

section (b) of this section. No such regulation shall be required to comply with the standards set forth in subsection (b)(4) of this section unless such regulation is amended to establish a different maximum contaminant level after June 19, 1986.

(2) After June 19, 1986, each recommended maximum contaminant level published before June 19, 1986, shall be treated as a maximum contaminant level goal.

(3) Whenever a national primary drinking water regulation is proposed under paragraph (1), (2), or (3) of subsection (b) of this section for any contaminant, the maximum contaminant level goal for such contaminant shall be proposed simultaneously. Whenever a national primary drinking water regulation is promulgated under paragraph (1), (2), or (3) of subsection (b) of this section for any contaminant, the maximum contaminant level goal for such contaminant shall be published simultaneously.

(4) Paragraph (3) shall not apply to any recommended maximum contaminant level published before June 19, 1986.

(b) Standard setting schedules and deadlines; substitution of contaminants; additional contaminants; adequate safety margin in levels; "feasible" defined; techuology, techniques, or other means to meet contaminant level; alternative treatment techniques; filtration and disinfection as required treatment techniques; amendment, review, effective date, and supersedure of regulations; addition of substances unrelated to contamination

(1) In the case of those contaminants listed in the Advance Notice of Proposed Rulemaking published in volume 47, Federal Register, page 9352, and in volume 48, Federal Register, page 45502, the Administrator shall publish maximum contaminant level goals and promulgate national primary drinking water regulations—

(A) not later than 12 months after June 19, 1986, for not less than 9 of those listed contaminants;

(B) not later than 24 months after June 19, 1986, for not less than 40 of those listed contaminants; and

(C) not later than 36 months after June 19, 1986, for the remainder of such listed contaminants.

(2)(A) If the Administrator identifies a drinking water contaminant the regulation of which, in the judgment of the Administrator, is more likely to be protective of public health (taking into account the schedule for regulation under paragraph (1)) than a contaminant referred to in paragraph (1), the Administrator may publish a maximum contaminant level goal and promulgate a national primary drinking water regulation for such identified contaminant in lieu of regulating the contaminant referred to in such paragraph. There may be no more than 7 contaminants in paragraph (1) for which substitutions may be made. Regulation of a contaminant identified under this paragraph shall be in accordance with the schedule applicable to the contaminant for which the substitution is made.

(B) If the Administrator identifies one or more contaminants for substitution under this

ADD-18

paragraph, the Administrator shall publish in the Federal Register not later than one year after June 19, 1986, a list of contaminants proposed for substitution, the contaminants referred to in paragraph (1) for which substitutions are to be made, and the basis for the judgment that regulation of such proposed substitute contaminants is more likely to be protective of public health (taking into account the schedule for regulation under such paragraph). Following a period of 60 days for public comment, the Administrator shall publish in the Federal Register a final list of contaminants to be substituted and contaminants referred to in paragraph (1) for which substitutions are to be made, together with responses to significant comments.

(C) Any contaminant referred to in paragraph (1) for which a substitution is made, pursuant to subparagraph (A) of this paragraph, shall be included on the priority list to be published by the Administrator not later than January 1, 1988, pursuant to paragraph (3)(A).

(D) The Administrator's decision to regulate a contaminant identified pursuant to this paragraph in lieu of a contaminant referred to in paragraph (1) shall not be subject to judicial review.

(3)(A) The Administrator shall publish maximum contaminant level goals and promulgate national primary drinking water regulations for each contaminant (other than a contaminant referred to in paragraph (1) or (2) for which a national primary drinking water regulation was promulgated) which, in the judgment of the Administrator, may have any adverse effect on the health of persons and which is known or anticipated to occur in public water systems. Not later than January 1, 1988, and at 3 year intervals thereafter, the Administrator shall publish a list of contaminants which are known or anticipated to occur in public water systems and which may require regulation under this chapter.

(B) For the purpose of establishing the list under subparagraph (A), the Administrator shall form an advisory working group including members from the National Toxicology Program and the Environmental Protection Agency's Offices of Drinking Water, Pesticides, Toxic Substances, Ground Water, Solid Waste and Emergency Response and any others the Administrator deems appropriate. The Administrator's consideration of priorities shall include, but not be limited to, substances referred to in section 9601(14) of this title, and substances registered as pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act [7 U.S.C. 136 et seq.].

(C) Not later than 24 months after the listing of contaminants under subparagraph (A), the Administrator shall publish proposed maximum contaminant level goals and national primary drinking water regulations for not less than 25 contaminants from the list established under subparagraph (A).

(D) Not later than 36 months after the listing of contaminants under subparagraph (A), the Administrator shall publish a maximum contaminant goal and promulgate a national primary drinking water regulation for those contaminants for which proposed maximum contaminant level goals and proposed national primary drinking water regulations were published under subparagraph (C).

(4) Each maximum contaminant level goal established under this subsection shall be set at the level at which no known or anticipated adverse effects on the health of persons occur and which allows an adequate margin of safety. Each national primary drinking water regulation for a contaminant for which a maximum contaminant level goal is established under this subsection shall specify a maximum level for such contaminant which is as close to the maximum contaminant level goal as is feasible.

(5) For the purposes of this subsection, the term "feasible" means feasible with the use of the best technology, treatment techniques and other means which the Administrator finds, after examination for efficacy under field conditions and not solely under laboratory conditions, are available (taking cost into consideration). For the purpose of paragraph (4), granular activated carbon is feasible for the control of synthetic organic chemicals, and any technology, treatment technique, or other means found to be the best available for the control of synthetic organic chemicals must be at least as effective in controlling synthetic organic chemicals as granular activated carbon.

(6) Each national primary drinking water regulation which establishes a maximum contaminant level shall list the technology, treatment techniques, and other means which the Administrator finds to be feasible for purposes of meeting such maximum contaminant level, but a regulation under this paragraph shall not require that any specified technology, treatment technique, or other means be used for purposes of meeting such maximum contaminant level.

(7)(A) The Administrator is authorized to promulgate a national primary drinking water regulation that requires the use of a treatment technique in lieu of establishing a maximum contaminant level, if the Administrator makes a finding that it is not economically or technologically feasible to ascertain the level of the contaminant. In such case, the Administrator shall identify those treatment techniques which, in the Administrator's judgment, would prevent known or anticipated adverse effects on the health of persons to the extent feasible. Such regulations shall specify each treatment technique known to the Administrator which meets the requirements of this paragraph, but the Administrator may grant a variance from any specified treatment technique in accordance with section 300g-4(a)(3) of this title.

(B) Any schedule referred to in this subsection for the promulgation of a national primary drinking water regulation for any contaminant shall apply in the same manner if the regulation requires a treatment technique in lieu of establishing a maximum contaminant level.

(C)(i) Not later than 18 months after June 19, 1986, the Administrator shall propose and promulgate national primary drinking water regulations specifying criteria under which filtration (including coagulation and sedimentation, as appropriate) is required as a treatment tech-

USCA Case #24-1188    Document #2162527    Filed: 03/06/2026    Page 23 of 84

nique for public water systems supplied by surface water sources. In promulgating such rules, the Administrator shall consider the quality of source waters, protection afforded by watershed management, treatment practices (such as disinfection and length of water storage) and other factors relevant to protection of health.

(ii) In lieu of the provisions of section 300g–4 of this title the Administrator shall specify procedures by which the State determines which public water systems within its jurisdiction shall adopt filtration under the criteria of clause (i). The State may require the public water system to provide studies or other information to assist in this determination. The procedures shall provide notice and opportunity for public hearing on this determination. If the State determines that filtration is required, the State shall prescribe a schedule for compliance by the public water system with the filtration requirement. A schedule shall require compliance within 18 months of a determination made under clause (iii).

(iii) Within 18 months from the time that the Administrator establishes the criteria and procedures under this subparagraph, a State with primary enforcement responsibility shall adopt any necessary regulations to implement this subparagraph. Within 12 months of adoption of such regulations the State shall make determinations regarding filtration for all the public water systems within its jurisdiction supplied by surface waters.

(iv) If a State does not have primary enforcement responsibility for public water systems, the Administrator shall have the same authority to make the determination in clause (ii) in such State as the State would have under that clause. Any filtration requirement or schedule under this subparagraph shall be treated as if it were a requirement of a national primary drinking water regulation.

(8) Not later than 36 months after June 19, 1986, the Administrator shall propose and promulgate national primary drinking water regulations requiring disinfection as a treatment technique for all public water systems. The Administrator shall simultaneously promulgate a rule specifying criteria that will be used by the Administrator (or delegated State authorities) to grant variances from this requirement according to the provisions of sections 300g–4(a)(1)(B) and 300g–4(a)(3) of this title. In implementing section 300j–1(g) of this title the Administrator or the delegated State authority shall, where appropriate, give special consideration to providing technical assistance to small public water systems in complying with the regulations promulgated under this paragraph.

(9) National primary drinking water regulations shall be amended whenever changes in technology, treatment techniques, and other means permit greater protection of the health of persons, but in any event such regulations shall be reviewed at least once every 3 years. Such review shall include an analysis of innovations or changes in technology, treatment techniques or other activities that have occurred over the previous 3-year period and that may provide for greater protection of the health of persons. The findings of such review shall be published in the Federal Register. If, after opportunity for public comment, the Administrator concludes that the technology, treatment techniques, or other means resulting from such innovations or changes are not feasible within the meaning of paragraph (5), an explanation of such conclusion shall be published in the Federal Register.

(10) National primary drinking water regulations promulgated under this subsection (and amendments thereto) shall take effect eighteen months after the date of their promulgation. Regulations under subsection (a) of this section shall be superseded by regulations under this subsection to the extent provided by the regulations under this subsection.

(11) No national primary drinking water regulation may require the addition of any substance for preventive health care purposes unrelated to contamination of drinking water.

**(c) Secondary regulations; publication of proposed regulations; promulgation; amendments**

The Administrator shall publish proposed national secondary drinking water regulations within 270 days after December 16, 1974. Within 90 days after publication of any such regulation, he shall promulgate such regulation with such modifications as he deems appropriate. Regulations under this subsection may be amended from time to time.

**(d) Regulations; public hearings; administrative consultations**

Regulations under this section shall be prescribed in accordance with section 553 of title 5 (relating to rulemaking), except that the Administrator shall provide opportunity for public hearing prior to promulgation of such regulations. In proposing and promulgating regulations under this section, the Administrator shall consult with the Secretary and the National Drinking Water Advisory Council.

**(e) Science Advisory Board comments**

The Administrator shall request comments from the Science Advisory Board (established under the Environmental Research, Development, and Demonstration Act of 1978) prior to proposal of a maximum contaminant level goal and national primary drinking water regulation. The Board shall respond, as it deems appropriate, within the time period applicable for promulgation of the national primary drinking water standard concerned. This subsection shall, under no circumstances, be used to delay final promulgation of any national primary drinking water standard.

(July 1, 1944, ch. 373, title XIV, § 1412, as added Dec. 16, 1974, Pub. L. 93–523, § 2(a), 88 Stat. 1662, and amended Nov. 16, 1977, Pub. L. 95–190, §§ 3(c), 12(a), 91 Stat. 1394, 1398; June 19, 1986, Pub. L. 99–339, title I, § 101(a)–(c)(1), (d), (e), 100 Stat. 642–646.)

### REFERENCES IN TEXT

The Federal Insecticide, Fungicide, and Rodenticide Act, referred to in subsec. (b)(3)(B), is act June 25, 1947, ch. 125, as amended generally by Pub. L. 92–516, Oct. 21, 1972, 86 Stat. 973, which is classified generally to subchapter II (§ 136 et seq.) of chapter 6 of Title 7,

Agriculture. For complete classification of this Act to the Code, see Short Title note set out under section 136 of Title 7 and Tables.

The Environmental Research, Development, and Demonstration Act of 1978, referred to in subsec. (e), probably means the Environmental Research, Development, and Demonstration Authorization Act of 1978 which is Pub. L. 95-155, Nov. 8, 1977, 91 Stat. 1257, as amended. Provisions of the Act establishing the Science Advisory Board are classified to section 4365 of this title. For complete classification of this Act to the Code, see Tables.

#### AMENDMENTS

1986—Subsec. (a). Pub. L. 99-339, § 101(a), amended subsec. (a) generally. Prior to amendment, subsec. (a) read as follows:

"(1) The Administrator shall publish proposed national interim primary drinking water regulations within 90 days after December 16, 1974. Within 180 days after December 16, 1974, he shall promulgate such regulations with such modifications as he deems appropriate. Regulations under this paragraph may be amended from time to time.

"(2) National interim primary drinking water regulations promulgated under paragraph (1) shall protect health to the extent feasible, using technology, treatment techniques, and other means, which the Administrator determines are generally available (taking costs into consideration) on December 16, 1974.

"(3) The interim primary regulations first promulgated under paragraph (1) shall take effect eighteen months after the date of their promulgation."

Subsec. (b)(1). Pub. L. 99-339, § 101(b), substituted provisions establishing standard setting schedules and deadlines for provisions relating to establishment of maximum contaminant levels and a list of contaminants with adverse effect but of undetermined levels.

Subsec. (b)(2). Pub. L. 99-339, § 101(b), substituted provisions authorizing the Administrator to substitute contaminants for those referred to in par. (1) and to supply a list of the contaminants proposed for substitution, with the decision of the Administrator to regulate such contaminant not subject to judicial review, for provisions which authorized the Administrator to publish in the Federal Register proposed revised national interim primary drinking water regulations and 180 days after the date of such proposed regulations to promulgate such revised regulations with modification as deemed appropriate.

Subsec. (b)(3). Pub. L. 99-339, § 101(b), substituted provisions directing the Administrator to publish maximum contaminant level goals and promulgate national primary drinking water regulations for contaminants, other than specified in par. (1) or (2), which may have an adverse effect on health and are known or anticipated to occur in public water systems, to establish an advisory working group to aid in establishing a list of such contaminants, and to publish, within a specified time, both proposed and final goals and regulations for provisions which required that revised national primary drinking water regulations specify a maximum contaminant level or require the use of treatment techniques for each contaminant, which level or technique was to be as close to the recommended level or technique as feasible, and defined the term "feasible".

Subsec. (b)(4) to (11). Pub. L. 99-339, § 101(b), (c)(1), (d), added pars. (4) to (8), redesignated former pars. (4) to (6) as pars. (9) to (11), respectively, in par. (9) substituted "National" for "Revised National" and inserted provision that review include analysis, and publication in Federal Register, of innovations in technology, treatment techniques or other activities occurring during previous three years and their feasibility, and in par. (10) substituted "National" for "Revised National".

Subsec. (e). Pub. L. 99-339, § 101(e), amended subsec. (e) generally, substituting provisions which relate to the request by the Administrator of comments by the Science Advisory Board prior to proposal of a maximum contaminant level goal and national primary drinking water regulation for provisions which related to study by the National Academy of Sciences to determine the maximum contaminant levels, report to Congress, and funding therefor.

1977—Subsec. (e)(2). Pub. L. 95-190 inserted provisions relating to revisions of the required report and cl. (G).

##### SECTION REFERRED TO IN OTHER SECTIONS

This section is referred to in sections 300f, 300g-2, 300g-3, 300g-4, 300g-5, 300j-1, 300j-2, 300j-3, 300j-3b, 300j-4 of this title; title 21 section 349.

### § 300g-2. State primary enforcement responsibility; regulations; notice and hearing; publication in Federal Register; applications

(a) For purposes of this subchapter, a State has primary enforcement responsibility for public water systems during any period for which the Administrator determines (pursuant to regulations prescribed under subsection (b) of this section) that such State—

(1) has adopted drinking water regulations which are no less stringent than the national primary drinking water regulations in effect under sections 300g-1(a) and 300g-1(b) of this title;

(2) has adopted and is implementing adequate procedures for the enforcement of such State regulations, including conducting such monitoring and making such inspections as the Administrator may require by regulation;

(3) will keep such records and make such reports with respect to its activities under paragraphs (1) and (2) as the Administrator may require by regulation;

(4) if it permits variances or exemptions, or both, from the requirements of its drinking water regulations which meet the requirements of paragraph (1), permits such variances and exemptions under conditions and in a manner which is not less stringent than the conditions under, and the manner in which variances and exemptions may be granted under sections 300g-4 and 300g-5 of this title;

(5) has adopted and can implement an adequate plan for the provision of safe drinking water under emergency circumstances.

(b)(1) The Administrator shall, by regulation (proposed within 180 days of December 16, 1974), prescribe the manner in which a State may apply to the Administrator for a determination that the requirements of paragraphs (1), (2), (3), and (4) of subsection (a) of this section are satisfied with respect to the State, the manner in which the determination is made, the period for which the determination will be effective, and the manner in which the Administrator may determine that such requirements are no longer met. Such regulations shall require that before a determination of the Administrator that such requirements are met or are no longer met with respect to a State may become effective, the Administrator shall notify such State of the determination and the reasons therefor and shall provide an opportunity for public hearing on the determination. Such regulations shall be promulgated (with

## § 300j–4. Records and inspections

### (a) Provision of information to Administrator; monitoring program for unregulated contaminants

(1)(A) Every person who is subject to any requirement of this subchapter or who is a grantee, shall establish and maintain such records, make such reports, conduct such monitoring, and provide such information as the Administrator may reasonably require by regulation to assist the Administrator in establishing regulations under this subchapter, in determining whether such person has acted or is acting in compliance with this subchapter, in administering any program of financial assistance under this subchapter, in evaluating the health risks of unregulated contaminants, or in advising the public of such risks. In requiring a public water system to monitor under this subsection, the Administrator may take into consideration the system size and the contaminants likely to be found in the system's drinking water.

(B) Every person who is subject to a national primary drinking water regulation under section 300g–1 of this title shall provide such information as the Administrator may reasonably require, after consultation with the State in which such person is located if such State has primary enforcement responsibility for public water systems, on a case-by-case basis, to determine whether such person has acted or is acting in compliance with this subchapter.

(C) Every person who is subject to a national primary drinking water regulation under section 300g–1 of this title shall provide such information as the Administrator may reasonably require to assist the Administrator in establishing regulations under section 300g–1 of this title, after consultation with States and suppliers of water. The Administrator may not require under this subparagraph the installation of treatment equipment or process changes, the testing of treatment technology, or the analysis or processing of monitoring samples, except where the Administrator provides the funding for such activities. Before exercising this authority, the Administrator shall first seek to obtain the information by voluntary submission.

(D) The Administrator shall not later than 2 years after August 6, 1996, after consultation with public health experts, representatives of the general public, and officials of State and local governments, review the monitoring requirements for not fewer than 12 contaminants identified by the Administrator, and promulgate any necessary modifications.

(2) MONITORING PROGRAM FOR UNREGULATED CONTAMINANTS.—

(A) ESTABLISHMENT.—The Administrator shall promulgate regulations establishing the criteria for a monitoring program for unregulated contaminants. The regulations shall require monitoring of drinking water supplied by public water systems and shall vary the frequency and schedule for monitoring requirements for systems based on the number of persons served by the system, the source of supply, and the contaminants likely to be found, ensuring that only a representative sample of systems serving 10,000 persons or fewer are required to monitor.

(B) MONITORING PROGRAM FOR CERTAIN UNREGULATED CONTAMINANTS.—

(i) INITIAL LIST.—Not later than 3 years after August 6, 1996, and every 5 years thereafter, the Administrator shall issue a list pursuant to subparagraph (A) of not more than 30 unregulated contaminants to be monitored by public water systems and to be included in the national drinking water occurrence data base maintained pursuant to subsection (g).

(ii) GOVERNORS' PETITION.—The Administrator shall include among the list of contaminants for which monitoring is required under this paragraph each contaminant recommended in a petition signed by the Governor of each of 7 or more States, unless the Administrator determines that the action would prevent the listing of other contaminants of a higher public health concern.

(C) MONITORING PLAN FOR SMALL AND MEDIUM SYSTEMS.—

(i) IN GENERAL.—Based on the regulations promulgated by the Administrator, each State may develop a representative monitoring plan to assess the occurrence of unregulated contaminants in public water systems that serve a population of 10,000 or fewer in that State. The plan shall require monitoring for systems representative of different sizes, types, and geographic locations in the State.

(ii) GRANTS FOR SMALL SYSTEM COSTS.—From funds reserved under section 300j–12(*o*) of this title or appropriated under subparagraph (H), the Administrator shall pay the reasonable cost of such testing and laboratory analysis as are necessary to carry out monitoring under the plan.

(D) MONITORING RESULTS.—Each public water system that conducts monitoring of unregulated contaminants pursuant to this paragraph shall provide the results of the monitoring to the primary enforcement authority for the system.

(E) NOTIFICATION.—Notification of the availability of the results of monitoring programs required under paragraph (2)(A) shall be given to the persons served by the system.

(F) WAIVER OF MONITORING REQUIREMENT.—The Administrator shall waive the requirement for monitoring for a contaminant under this paragraph in a State, if the State demonstrates that the criteria for listing the contaminant do not apply in that State.

(G) ANALYTICAL METHODS.—The State may use screening methods approved by the Administrator under subsection (i) in lieu of monitoring for particular contaminants under this paragraph.

(H) AUTHORIZATION OF APPROPRIATIONS.—There are authorized to be appropriated to carry out this paragraph $10,000,000 for each of the fiscal years 2019 through 2021.

ADD-22

**(b) Entry of establishments, facilities, or other property; inspections; conduct of certain tests; audit and examination of records; entry restrictions; prohibition against informing of a proposed entry**

(1) Except as provided in paragraph (2), the Administrator, or representatives of the Administrator duly designated by him, upon presenting appropriate credentials and a written notice to any supplier of water or other person subject to (A) a national primary drinking water regulation prescribed under section 300g–1 of this title, (B) an applicable underground injection control program, or (C) any requirement to monitor an unregulated contaminant pursuant to subsection (a), or person in charge of any of the property of such supplier or other person referred to in clause (A), (B), or (C), is authorized to enter any establishment, facility, or other property of such supplier or other person in order to determine whether such supplier or other person has acted or is acting in compliance with this subchapter, including for this purpose, inspection, at reasonable times, of records, files, papers, processes, controls, and facilities, or in order to test any feature of a public water system, including its raw water source. The Administrator or the Comptroller General (or any representative designated by either) shall have access for the purpose of audit and examination to any records, reports, or information of a grantee which are required to be maintained under subsection (a) or which are pertinent to any financial assistance under this subchapter.

(2) No entry may be made under the first sentence of paragraph (1) in an establishment, facility, or other property of a supplier of water or other person subject to a national primary drinking water regulation if the establishment, facility, or other property is located in a State which has primary enforcement responsibility for public water systems unless, before written notice of such entry is made, the Administrator (or his representative) notifies the State agency charged with responsibility for safe drinking water of the reasons for such entry. The Administrator shall, upon a showing by the State agency that such an entry will be detrimental to the administration of the State's program of primary enforcement responsibility, take such showing into consideration in determining whether to make such entry. No State agency which receives notice under this paragraph of an entry proposed to be made under paragraph (1) may use the information contained in the notice to inform the person whose property is proposed to be entered of the proposed entry; and if a State agency so uses such information, notice to the agency under this paragraph is not required until such time as the Administrator determines the agency has provided him satisfactory assurances that it will no longer so use information contained in a notice under this paragraph.

**(c) Penalty**

Whoever fails or refuses to comply with any requirement of subsection (a) or to allow the Administrator, the Comptroller General, or representatives of either, to enter and conduct any audit or inspection authorized by subsection (b) shall be subject to a civil penalty of not to exceed $25,000.

**(d) Confidential information; trade secrets and secret processes; information disclosure; "information required under this section" defined**

(1) Subject to paragraph (2), upon a showing satisfactory to the Administrator by any person that any information required under this section from such person, if made public, would divulge trade secrets or secret processes of such person, the Administrator shall consider such information confidential in accordance with the purposes of section 1905 of title 18. If the applicant fails to make a showing satisfactory to the Administrator, the Administrator shall give such applicant thirty days' notice before releasing the information to which the application relates (unless the public health or safety requires an earlier release of such information).

(2) Any information required under this section (A) may be disclosed to other officers, employees, or authorized representatives of the United States concerned with carrying out this subchapter or to committees of the Congress, or when relevant in any proceeding under this subchapter, and (B) shall be disclosed to the extent it deals with the level of contaminants in drinking water. For purposes of this subsection the term "information required under this section" means any papers, books, documents, or information, or any particular part thereof, reported to or otherwise obtained by the Administrator under this section.

**(e) "Grantee" and "person" defined**

For purposes of this section, (1) the term "grantee" means any person who applies for or receives financial assistance, by grant, contract, or loan guarantee under this subchapter, and (2) the term "person" includes a Federal agency.

**(f) Information regarding drinking water coolers**

The Administrator may utilize the authorities of this section for purposes of part F. Any person who manufactures, imports, sells, or distributes drinking water coolers in interstate commerce shall be treated as a supplier of water for purposes of applying the provisions of this section in the case of persons subject to part F.

**(g) Occurrence data base**

**(1) In general**

Not later than 3 years after August 6, 1996, the Administrator shall assemble and maintain a national drinking water contaminant occurrence data base, using information on the occurrence of both regulated and unregulated contaminants in public water systems obtained under subsection (a)(1)(A) or subsection (a)(2) and reliable information from other public and private sources.

**(2) Public input**

In establishing the occurrence data base, the Administrator shall solicit recommendations from the Science Advisory Board, the States, and other interested parties concerning the development and maintenance of a national drinking water contaminant occurrence data base, including such issues as the structure

and design of the data base, data input parameters and requirements, and the use and interpretation of data.

**(3) Use**

The data shall be used by the Administrator in making determinations under section 300g–1(b)(1) of this title with respect to the occurrence of a contaminant in drinking water at a level of public health concern.

**(4) Public recommendations**

The Administrator shall periodically solicit recommendations from the appropriate officials of the National Academy of Sciences and the States, and any person may submit recommendations to the Administrator, with respect to contaminants that should be included in the national drinking water contaminant occurrence data base, including recommendations with respect to additional unregulated contaminants that should be listed under subsection (a)(2). Any recommendation submitted under this clause shall be accompanied by reasonable documentation that—

(A) the contaminant occurs or is likely to occur in drinking water; and

(B) the contaminant poses a risk to public health.

**(5) Public availability**

The information from the data base shall be available to the public in readily accessible form.

**(6) Regulated contaminants**

With respect to each contaminant for which a national primary drinking water regulation has been established, the data base shall include information on the detection of the contaminant at a quantifiable level in public water systems (including detection of the contaminant at levels not constituting a violation of the maximum contaminant level for the contaminant).

**(7) Unregulated contaminants**

With respect to contaminants for which a national primary drinking water regulation has not been established, the data base shall include—

(A) monitoring information collected by public water systems that serve a population of more than 10,000, as required by the Administrator under subsection (a);

(B) monitoring information collected from a representative sampling of public water systems that serve a population of 10,000 or fewer;

(C) if applicable, monitoring information collected by public water systems pursuant to subsection (j) that is not duplicative of monitoring information included in the data base under subparagraph (B) or (D); and

(D) other reliable and appropriate monitoring information on the occurrence of the contaminants in public water systems that is available to the Administrator.

**(h) Availability of information on small system technologies**

For purposes of sections 300g–1(b)(4)(E) and 300g–4(e) of this title (relating to small system

variance program), the Administrator may request information on the characteristics of commercially available treatment systems and technologies, including the effectiveness and performance of the systems and technologies under various operating conditions. The Administrator may specify the form, content, and submission date of information to be submitted by manufacturers, States, and other interested persons for the purpose of considering the systems and technologies in the development of regulations or guidance under sections 300g–1(b)(4)(E) and 300g–4(e) of this title.

**(i) Screening methods**

The Administrator shall review new analytical methods to screen for regulated contaminants and may approve such methods as are more accurate or cost-effective than established reference methods for use in compliance monitoring.

**(j) Monitoring by certain systems**

**(1) In general**

Notwithstanding subsection (a)(2)(A), the Administrator shall, subject to the availability of appropriations for such purpose—

(A) require public water systems serving between 3,300 and 10,000 persons to monitor for unregulated contaminants in accordance with this section; and

(B) ensure that only a representative sample of public water systems serving fewer than 3,300 persons are required to monitor.

**(2) Effective date**

Paragraph (1) shall take effect 3 years after October 23, 2018.

**(3) Limitation**

Paragraph (1) shall take effect unless the Administrator determines that there is not sufficient laboratory capacity to accommodate the analysis necessary to carry out monitoring required under such paragraph.

**(4) Limitation on enforcement**

The Administrator may not enforce a requirement to monitor pursuant to paragraph (1) with respect to any public water system serving fewer than 3,300 persons, including by subjecting such a public water system to any civil penalty.

**(5) Authorization of appropriations**

There are authorized to be appropriated $15,000,000 in each fiscal year for which monitoring is required to be carried out under this subsection for the Administrator to pay the reasonable cost of such testing and laboratory analysis as are necessary to carry out monitoring required under this subsection.

(July 1, 1944, ch. 373, title XIV, § 1445, as added Pub. L. 93–523, § 2(a), Dec. 16, 1974, 88 Stat. 1686; amended Pub. L. 95–190, § 12(c), (d), Nov. 16, 1977, 91 Stat. 1398; Pub. L. 99–339, title I, § 106, title III, § 301(h), June 19, 1986, 100 Stat. 650, 665; Pub. L. 100–572, § 5, Oct. 31, 1988, 102 Stat. 2889; Pub. L. 104–182, title I, §§ 111(b), 125(a), (c), (d), 126, Aug. 6, 1996, 110 Stat. 1633, 1653, 1656–1658; Pub. L. 115–270, title II, § 2021, Oct. 23, 2018, 132 Stat. 3861.)

**Editorial Notes**

AMENDMENTS

2018—Subsec. (a)(2)(H). Pub. L. 115–270, §2021(b), substituted ''2019 through 2021'' for ''1997 through 2003''.

Subsec. (g)(7)(C), (D). Pub. L. 115–270, §2021(c), added subpar. (C) and redesignated former subpar. (C) as (D).

Subsec. (j). Pub. L. 115–270, §2021(a), added subsec. (j).

1996—Subsec. (a)(1). Pub. L. 104–182, §125(a), amended par. (1) generally. Prior to amendment, par. (1) read as follows: ''Every person who is a supplier of water, who is or may be otherwise subject to a primary drinking water regulation prescribed under section 300g–1 of this title or to an applicable underground injection control program (as defined in section 300h–1(c) of this title), who is or may be subject to the permit requirement of section 300h–3 of this title, or to an order issued under section 300j of this title, or who is a grantee, shall establish and maintain such records, make such reports, conduct such monitoring, and provide such information as the Administrator may reasonably require by regulation to assist him in establishing regulations under this subchapter, in determining whether such person has acted or is acting in compliance with this subchapter in administering any program of financial assistance under this subchapter, in evaluating the health risks of unregulated contaminants, or in advising the public of such risks. In requiring a public water system to monitor under this subsection, the Administrator may take into consideration the system size and the contaminants likely to be found in the system's drinking water.''

Subsec. (a)(2) to (8). Pub. L. 104–182, §125(c), added heading and text of par. (2) and struck out former pars. (2) to (8) which directed Administrator, not later than 18 months after June 19, 1986, to promulgate regulations requiring every public water system to conduct a monitoring program for unregulated contaminants, specified contents of regulations, provided for reporting and notification of availability of results of monitoring, waiver of monitoring requirements, and compliance by small systems, and authorized appropriations for fiscal year ending Sept. 30, 1987.

Subsec. (g). Pub. L. 104–182, §126, added subsec. (g).

Subsec. (h). Pub. L. 104–182, §111(b), added subsec. (h).

Subsec. (i). Pub. L. 104–182, §125(d), added subsec. (i).

1988—Subsec. (f). Pub. L. 100–572 added subsec. (f).

1986—Subsec. (a)(1). Pub. L. 99–339, §106(a), (b), designated existing provisions as par. (1) and inserted provisions permitting Administrator to consider size of system and contaminants likely to be found.

Subsec. (a)(2) to (7). Pub. L. 99–339, §106(b), added pars. (2) to (7).

Subsec. (a)(8). Pub. L. 99–339, §301(h), added par. (8).

Subsec. (c). Pub. L. 99–339, §106(c), substituted ''shall be subject to a civil penalty of not to exceed $25,000'' for ''may be fined not more than $5,000''.

1977—Subsec. (a). Pub. L. 95–190, §12(c), inserted provisions relating to evaluating and advising of health risks of unregulated contaminants.

Subsec. (b)(1). Pub. L. 95–190, §12(d), designated existing provisions as cls. (A) and (B) and added cl. (C) and reference to such cls. (A) to (C).

## § 300j–5. National Drinking Water Advisory Council

### (a) Establishment; membership; representation of interests; term of office, vacancies; reappointment

There is established a National Drinking Water Advisory Council which shall consist of fifteen members appointed by the Administrator after consultation with the Secretary. Five members shall be appointed from the general public; five members shall be appointed from appropriate State and local agencies concerned with water hygiene and public water supply; and five members shall be appointed from representatives of private organizations or groups demonstrating an active interest in the field of water hygiene and public water supply, of which two such members shall be associated with small, rural public water systems. Each member of the Council shall hold office for a term of three years, except that—

(1) any member appointed to fill a vacancy occurring prior to the expiration of the term for which his predecessor was appointed shall be appointed for the remainder of such term; and

(2) the terms of the members first taking office shall expire as follows: Five shall expire three years after December 16, 1974, five shall expire two years after such date, and five shall expire one year after such date, as designated by the Administrator at the time of appointment.

The members of the Council shall be eligible for reappointment.

### (b) Functions

The Council shall advise, consult with, and make recommendations to, the Administrator on matters relating to activities, functions, and policies of the Agency under this subchapter.

### (c) Compensation and allowances; travel expenses

Members of the Council appointed under this section shall, while attending meetings or conferences of the Council or otherwise engaged in business of the Council, receive compensation and allowances at a rate to be fixed by the Administrator, but not exceeding the daily equivalent of the annual rate of basic pay in effect for grade GS–18 of the General Schedule for each day (including traveltime) during which they are engaged in the actual performance of duties vested in the Council. While away from their homes or regular places of business in the performance of services for the Council, members of the Council shall be allowed travel expenses, including per diem in lieu of subsistence, in the same manner as persons employed intermittently in the Government service are allowed expenses under section 5703(b)[1] of title 5.

### (d) Advisory committee termination provision inapplicable

Section 1013(a) of title 5 (relating to termination),[2] shall not apply to the Council.

(July 1, 1944, ch. 373, title XIV, §1446, as added Pub. L. 93–523, §2(a), Dec. 16, 1974, 88 Stat. 1688; amended Pub. L. 104–182, title I, §127, Aug. 6, 1996, 110 Stat. 1659; Pub. L. 117–286, §4(a)(245), Dec. 27, 2022, 136 Stat. 4332.)

**Editorial Notes**

REFERENCES IN TEXT

Section 5703 of title 5, referred to in subsec. (c), was amended generally by Pub. L. 94–22, §4, May 19, 1975, 89 Stat. 85, and, as so amended, does not contain a subsec. (b).

AMENDMENTS

2022—Subsec. (d). Pub. L. 117–286 substituted ''Section 1013(a) of title 5 (relating to termination),'' for ''Sec-

_____

[1] See References in Text note below.

[2] So in original. The comma probably should not appear.

portunity to confer with the Administrator and shall provide the agency notice and an opportunity for a hearing on the record in accordance with chapters 5 and 7 of title 5.

#### (4) Public review

##### (A) In general

Any interested person may obtain review of an administrative penalty order issued under this subsection. The review may be obtained in the United States District Court for the District of Columbia or in the United States District Court for the district in which the violation is alleged to have occurred by the filing of a complaint with the court within the 30-day period beginning on the date the penalty order becomes final. The person filing the complaint shall simultaneously send a copy of the complaint by certified mail to the Administrator and the Attorney General.

##### (B) Record

The Administrator shall promptly file in the court a certified copy of the record on which the order was issued.

##### (C) Standard of review

The court shall not set aside or remand the order unless the court finds that there is not substantial evidence in the record, taken as a whole, to support the finding of a violation or that the assessment of the penalty by the Administrator constitutes an abuse of discretion.

##### (D) Prohibition on additional penalties

The court may not impose an additional civil penalty for a violation that is subject to the order unless the court finds that the assessment constitutes an abuse of discretion by the Administrator.

#### (c) Limitation on State use of funds collected from Federal Government

Unless a State law in effect on August 6, 1996, or a State constitution requires the funds to be used in a different manner, all funds collected by a State from the Federal Government from penalties and fines imposed for violation of any substantive or procedural requirement referred to in subsection (a) shall be used by the State only for projects designed to improve or protect the environment or to defray the costs of environmental protection or enforcement.

#### (d) Indian rights and sovereignty as unaffected; "Federal agency" defined

(1) Nothing in the Safe Drinking Water Amendments of 1977 shall be construed to alter or affect the status of American Indian lands or water rights nor to waive any sovereignty over Indian lands guaranteed by treaty or statute.

(2) For the purposes of this chapter, the term "Federal agency" shall not be construed to refer to or include any American Indian tribe, nor to the Secretary of the Interior in his capacity as trustee of Indian lands.

#### (e) Washington Aqueduct

The Secretary of the Army shall not pass the cost of any penalty assessed under this subchapter on to any customer, user, or other purchaser of drinking water from the Washington Aqueduct system, including finished water from the Dalecarlia or McMillan treatment plant.

(July 1, 1944, ch. 373, title XIV, §1447, as added Pub. L. 93–523, §2(a), Dec. 16, 1974, 88 Stat. 1688; amended Pub. L. 95–190, §8(a), (d), Nov. 16, 1977, 91 Stat. 1396, 1397; Pub. L. 104–182, title I, §129(a), (c), Aug. 6, 1996, 110 Stat. 1660, 1662.)

#### Editorial Notes

##### REFERENCES IN TEXT

The Safe Drinking Water Amendments of 1977, referred to in subsec. (d)(1), is Pub. L. 95–190, Nov. 16, 1977, 91 Stat. 1393. For complete classification of this Act to the Code, see Short Title of 1977 Amendment note set out under section 201 of this title and Tables.

##### AMENDMENTS

1996—Subsecs. (a) to (d). Pub. L. 104–182, §129(a), added subsecs. (a) to (c), redesignated former subsec. (c) as (d), and struck out former subsecs. (a) and (b) which related to compliance by Federal agencies with Federal, State, and local requirements respecting provision of safe drinking water and respecting underground injection programs, liability for civil penalties, and waiver of compliance requirements when necessary in interest of national security.

Subsec. (e). Pub. L. 104–182, §129(c), added subsec. (e).

1977—Subsec. (a). Pub. L. 95–190, §8(a), substituted provisions relating to compliance by Federal agencies having jurisdiction over federally owned or maintained public water systems, or engaged in underground injection activities with Federal, State, and local requirements, etc., for provisions relating to compliance by Federal agencies having jurisdiction over federally owned or maintained public water systems with national primary drinking water regulations.

Subsec. (c). Pub. L. 95–190, §8(d), added subsec. (c).

### §300j–7. Judicial review

#### (a) Courts of appeals; petition for review: actions respecting regulations; filing period; grounds arising after expiration of filing period; exclusiveness of remedy

A petition for review of—

(1) actions pertaining to the establishment of national primary drinking water regulations (including maximum contaminant level goals) may be filed only in the United States Court of Appeals for the District of Columbia circuit; and

(2) any other final action of the Administrator under this chapter may be filed in the circuit in which the petitioner resides or transacts business which is directly affected by the action.

Any such petition shall be filed within the 45-day period beginning on the date of the promulgation of the regulation or any other final Agency action with respect to which review is sought or on the date of the determination with respect to which review is sought, and may be filed after the expiration of such 45-day period if the petition is based solely on grounds arising after the expiration of such period. Action of the Administrator with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or in any civil action to enjoin enforcement. In any petition concerning the assessment of a civil penalty

pursuant to section 300g–3(g)(3)(B) of this title, the petitioner shall simultaneously send a copy of the complaint by certified mail to the Administrator and the Attorney General. The court shall set aside and remand the penalty order if the court finds that there is not substantial evidence in the record to support the finding of a violation or that the assessment of the penalty by the Administrator constitutes an abuse of discretion.

**(b) District courts; petition for review: actions respecting variances or exemptions; filing period; grounds arising after expiration of filing period; exclusiveness of remedy**

The United States district courts shall have jurisdiction of actions brought to review (1) the granting of, or the refusing to grant, a variance or exemption under section 300g–4 or 300g–5 of this title or (2) the requirements of any schedule prescribed for a variance or exemption under such section or the failure to prescribe such a schedule. Such an action may only be brought upon a petition for review filed with the court within the 45-day period beginning on the date the action sought to be reviewed is taken or, in the case of a petition to review the refusal to grant a variance or exemption or the failure to prescribe a schedule, within the 45-day period beginning on the date action is required to be taken on the variance, exemption, or schedule, as the case may be. A petition for such review may be filed after the expiration of such period if the petition is based solely on grounds arising after the expiration of such period. Action with respect to which review could have been obtained under this subsection shall not be subject to judicial review in any civil or criminal proceeding for enforcement or in any civil action to enjoin enforcement.

**(c) Judicial order for additional evidence before Administrator; modified or new findings; recommendation for modification or setting aside of original determination**

In any judicial proceeding in which review is sought of a determination under this subchapter required to be made on the record after notice and opportunity for hearing, if any party applies to the court for leave to adduce additional evidence and shows to the satisfaction of the court that such additional evidence is material and that there were reasonable grounds for the failure to adduce such evidence in the proceeding before the Administrator, the court may order such additional evidence (and evidence in rebuttal thereof) to be taken before the Administrator, in such manner and upon such term and conditions as the court may deem proper. The Administrator may modify his findings as to the facts, or make new findings, by reason of the additional evidence so taken, and he shall file such modified or new findings, and his recommendation, if any, for the modification or setting aside of his original determination, with the return of such additional evidence.

(July 1, 1944, ch. 373, title XIV, §1448, as added Pub. L. 93–523, §2(a), Dec. 16, 1974, 88 Stat. 1689; amended Pub. L. 99–339, title III, §303, June 19, 1986, 100 Stat. 667; Pub. L. 104–182, title I, §113(c), Aug. 6, 1996, 110 Stat. 1636.)

### Editorial Notes

#### AMENDMENTS

1996—Subsec. (a). Pub. L. 104–182, §113(c)(2), (3), in concluding provisions, substituted ''or any other final Agency action'' for ''or issuance of the order'' and inserted at end ''In any petition concerning the assessment of a civil penalty pursuant to section 300g–3(g)(3)(B) of this title, the petitioner shall simultaneously send a copy of the complaint by certified mail to the Administrator and the Attorney General. The court shall set aside and remand the penalty order if the court finds that there is not substantial evidence in the record to support the finding of a violation or that the assessment of the penalty by the Administrator constitutes an abuse of discretion.''

Subsec. (a)(2). Pub. L. 104–182, §113(c)(1), substituted ''any other final action'' for ''any other action''.

1986—Subsec. (a)(1). Pub. L. 99–339, §303(1), amended par. (1) generally. Prior to amendment, par. (1) read as follows: ''action of the Administrator in promulgating any national primary drinking water regulation under section 300g–1 of this title, any regulation under section 300g–2(b)(1) of this title, any regulation under section 300g–3(c) of this title, any regulation for State underground injection control programs under section 300h of this title, or any general regulation for the administration of this subchapter may be filed only in the United States Court of Appeals for the District of Columbia Circuit; and''.

Subsec. (a)(2). Pub. L. 99–339, §303(2), amended par. (2) generally. Prior to amendment, par. (2) read as follows: ''action of the Administrator in promulgating any other regulation under this subchapter, issuing any order under this subchapter, or making any determination under this subchapter may be filed only in the United States court of appeals for the appropriate circuit.''

### § 300j–8. Citizen's civil action

**(a) Persons subject to civil action; jurisdiction of enforcement proceedings**

Except as provided in subsection (b) of this section, any person may commence a civil action on his own behalf—

(1) against any person (including (A) the United States, and (B) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of any requirement prescribed by or under this subchapter;

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this subchapter which is not discretionary with the Administrator; or

(3) for the collection of a penalty by the United States Government (and associated costs and interest) against any Federal agency that fails, by the date that is 18 months after the effective date of a final order to pay a penalty assessed by the Administrator under section 300h–8(b)[1] of this title, to pay the penalty.

No action may be brought under paragraph (1) against a public water system for a violation of a requirement prescribed by or under this subchapter which occurred within the 27-month period beginning on the first day of the month in which this subchapter is enacted. The United States district courts shall have jurisdiction, without regard to the amount in controversy or

---

[1] So in original. Probably should be section ''300j–6(b)''.

40 CFR 141.61 (up to date as of 10/03/2024)
Maximum contaminant levels for organic contaminants.

40 CFR 141.61 (Oct. 3, 2024)

USCA Case #24-1188    Document #2162527    Filed: 03/06/2026    Page 31 of 64

This content is from the eCFR and is authoritative but unofficial.

## Title 40 —Protection of Environment
## Chapter I —Environmental Protection Agency
## Subchapter D —Water Programs
## Part 141 —National Primary Drinking Water Regulations
## Subpart G —National Primary Drinking Water Regulations: Maximum Contaminant Levels and Maximum Residual Disinfectant Levels

**Authority:** 42 U.S.C. 300f, 300g-1, 300g-2, 300g-3, 300g-4, 300g-5, 300g-6, 300j-4, 300j-9, and 300j-11.

**Source:** 40 FR 59570, Dec. 24, 1975, unless otherwise noted.

**Editorial Note:** Nomenclature changes to part 141 appear at 69 FR 18803, Apr. 9, 2004.

## § 141.61 Maximum contaminant levels for organic contaminants.

(a) The following maximum contaminant levels for volatile organic contaminants apply to community and non-transient, non-community water systems.

## Table 1 to Paragraph (a)—Maximum Contaminant Levels for Volatile Organic Contaminants

| CAS No. | Contaminant | MCL (mg/l) |
|---|---|---|
| (1) 75-01-4 | Vinyl chloride | 0.002 |
| (2) 71-43-2 | Benzene | 0.005 |
| (3) 56-23-5 | Carbon tetrachloride | 0.005 |
| (4) 107-06-2 | 1,2-Dichloroethane | 0.005 |
| (5) 79-01-6 | Trichloroethylene | 0.005 |
| (6) 106-46-7 | para-Dichlorobenzene | 0.075 |
| (7) 75-35-4 | 1,1-Dichloroethylene | 0.007 |
| (8) 71-55-6 | 1,1,1-Trichloroethane | 0.2 |
| (9) 156-59-2 | cis-1,2-Dichloroethylene | 0.07 |
| (10) 78-87-5 | 1,2-Dichloropropane | 0.005 |
| (11) 100-41-4 | Ethylbenzene | 0.7 |
| (12) 108-90-7 | Monochlorobenzene | 0.1 |
| (13) 95-50-1 | o-Dichlorobenzene | 0.6 |
| (14) 100-42-5 | Styrene | 0.1 |
| (15) 127-18-4 | Tetrachloroethylene | 0.005 |
| (16) 108-88-3 | Toluene | 1 |
| (17) 156-60-5 | trans-1,2-Dichloroethylene | 0.1 |
| (18) 1330-20-7 | Xylenes (total) | 10 |

ADD-28

40 CFR 141.61 (up to date as of 10/03/2024)
Maximum contaminant levels for organic contaminants.
40 CFR 141.61(b)

USCA Case #24-1188     Document #2162527          Filed: 03/06/2026       Page 32 of 84

| CAS No. | Contaminant | MCL (mg/l) |
|---|---|---|
| (19) 75-09-2 | Dichloromethane | 0.005 |
| (20) 120-82-1 | 1,2,4-Trichloro- benzene | .07 |
| (21) 79-00-5 | 1,1,2-Trichloro- ethane | .005 |

(b)   The Administrator, pursuant to section 1412 of the Act, hereby identifies as indicated in table 2 to this paragraph (b) granular activated carbon (GAC), packed tower aeration (PTA), or oxidation (OX) as the best technology, treatment technique, or other means available for achieving compliance with the maximum contaminant level for organic contaminants identified in paragraphs (a) and (c) of this section, except for per- and polyfluoroalkyl substances (PFAS).

## Table 2 to Paragraph (b)—BAT for Organic Contaminants in Paragraphs (a) and (c) of This Section, Except for PFAS

### BAT FOR ORGANIC CONTAMINANTS LISTED IN § 141.61 (a) AND (c)

| CAS No. | Contaminant | GAC | PTA | OX |
|---|---|---|---|---|
| 15972-60-8 | Alachlor | X | | |
| 116-06-3 | Aldicarb | X | | |
| 1646-88-4 | Aldicarb sulfone | X | | |
| 1646-87-3 | Aldicarb sulfoxide | X | | |
| 1912-24-9 | Atrazine | X | | |
| 71-43-2 | Benzene | X | X | |
| 50-32-8 | Benzo[a]pyrene | X | | |
| 1563-66-2 | Carbofuran | X | | |
| 56-23-5 | Carbon tetrachloride | X | X | |
| 57-74-9 | Chlordane | X | | |
| 75-99-0 | Dalapon | X | | |
| 94-75-7 | 2,4-D | X | | |
| 103-23-1 | Di (2-ethylhexyl) adipate | X | X | |
| 117-81-7 | Di (2-ethylhexyl) phthalate | X | | |
| 96-12-8 | Dibromochloropropane (DBCP) | X | X | |
| 95-50-1 | o-Dichlorobenzene | X | X | |
| 106-46-7 | para-Dichlorobenzene | X | X | |
| 107-06-2 | 1,2-Dichloroethane | X | X | |
| 75-35-4 | 1,1-Dichloroethylene | X | X | |
| 156-59-2 | cis-1,2-Dichloroethylene | X | X | |

ADD-29

**40 CFR 141.61 (up to date as of 10/03/2024)**
Maximum contaminant levels for organic contaminants.

40 CFR 141.61(c)

USCA Case #24-1188      Document #2162527      Filed: 03/06/2026      Page 33 of 84

| CAS No. | Contaminant | GAC | PTA | OX |
|---|---|:---:|:---:|:---:|
| 156-60-5 | trans-1,2-Dichloroethylene | X | X | |
| 75-09-2 | Dichloromethane | | X | |
| 78-87-5 | 1,2-Dichloropropane | X | X | |
| 88-85-7 | Dinoseb | X | | |
| 85-00-7 | Diquat | X | | |
| 145-73-3 | Endothall | X | | |
| 72-20-8 | Endrin | X | | |
| 100-41-4 | Ethylbenzene | X | X | |
| 106-93-4 | Ethylene Dibromide (EDB) | X | X | |
| 1071-83-6 | Gylphosate | | | X |
| 76-44-8 | Heptachlor | X | | |
| 1024-57-3 | Heptachlor epoxide | X | | |
| 118-74-1 | Hexachlorobenzene | X | | |
| 77-47-3 | Hexachlorocyclopentadiene | X | X | |
| 58-89-9 | Lindane | X | | |
| 72-43-5 | Methoxychlor | X | | |
| 108-90-7 | Monochlorobenzene | X | X | |
| 23135-22-0 | Oxamyl (Vydate) | X | | |
| 87-86-5 | Pentachlorophenol | X | | |
| 1918-02-1 | Picloram | X | | |
| 1336-36-3 | Polychlorinated biphenyls (PCB) | X | | |
| 122-34-9 | Simazine | X | | |
| 100-42-5 | Styrene | X | X | |
| 1746-01-6 | 2,3,7,8-TCDD (Dioxin) | X | | |
| 127-18-4 | Tetrachloroethylene | X | X | |
| 108-88-3 | Toluene | X | X | |
| 8001-35-2 | Toxaphene | X | | |
| 93-72-1 | 2,4,5-TP (Silvex) | X | | |
| 120-82-1 | 1,2,4-Trichlorobenzene | X | X | |
| 71-55-6 | 1,1,1-Trichloroethane | X | X | |
| 79-00-5 | 1,1,2-Trichloroethane | X | X | |
| 79-01-6 | Trichloroethylene | X | X | |
| 75-01-4 | Vinyl chloride | | X | |
| 1330-20-7 | Xylene | X | X | |

(c)  The following maximum contaminant levels (MCLs) in paragraphs (c)(1) and (2) of this section for synthetic organic contaminants apply to community water systems and non-transient, non-community water systems; paragraph (c)(2) of this section also contains health-based water concentrations (HBWCs) for selected per- and poly-fluoroalkyl substances (PFAS) used in calculating the Hazard Index.

ADD-30

**40 CFR 141.61 (up to date as of 10/03/2024)**
Maximum contaminant levels for organic contaminants.

40 CFR 141.61(c)(1)

USCA Case #24-1188    Document #2162527    Filed: 03/06/2026    Page 34 of 84

(1)  *MCLs for Synthetic Organic Contaminants, Except for PFAS.*

| CAS No. | Contaminant | MCL (mg/l) |
|---|---|---|
| (i) 15972-60-8 | Alachlor | 0.002 |
| (ii) 116-06-3 | Aldicarb | 0.003 |
| (iii) 1646-87-3 | Aldicarb sulfoxide | 0.004 |
| (iv) 1646-87-4 | Aldicarb sulfone | 0.002 |
| (v) 1912-24-9 | Atrazine | 0.003 |
| (vi) 1563-66-2 | Carbofuran | 0.04 |
| (vii) 57-74-9 | Chlordane | 0.002 |
| (viii) 96-12-8 | Dibromochloropropane | 0.0002 |
| (ix) 94-75-7 | 2,4-D | 0.07 |
| (x) 106-93-4 | Ethylene dibromide | 0.00005 |
| (xi) 76-44-8 | Heptachlor | 0.0004 |
| (xii) 1024-57-3 | Heptachlor epoxide | 0.0002 |
| (xiii) 58-89-9 | Lindane | 0.0002 |
| (xiv) 72-43-5 | Methoxychlor | 0.04 |
| (xv) 1336-36-3 | Polychlorinated biphenyls | 0.0005 |
| (xvi) 87-86-5 | Pentachlorophenol | 0.001 |
| (xvii) 8001-35-2 | Toxaphene | 0.003 |
| (xviii) 93-72-1 | 2,4,5-TP | 0.05 |
| (xix) 50-32-8 | Benzo[a]pyrene | 0.0002 |
| (xx) 75-99-0 | Dalapon | 0.2 |
| (xxi) 103-23-1 | Di(2-ethylhexyl) adipate | 0.4 |
| (xxii) 117-81-7 | Di(2-ethylhexyl) phthalate | 0.006 |
| (xxiii) 88-85-7 | Dinoseb | 0.007 |
| (xxiv) 85-00-7 | Diquat | 0.02 |
| (xxv) 145-73-3 | Endothall | 0.1 |
| (xxvi) 72-20-8 | Endrin | 0.002 |
| (xvii) 1071-53-6 | Glyphosate | 0.7 |
| (xxviii) 118-74-1 | Hexacholorbenzene | 0.001 |
| (xxix) 77-47-4 | Hexachlorocyclopentadiene | 0.05 |
| (xxx) 23135-22-0 | Oxamyl (Vydate) | 0.2 |
| (xxxi) 1918-02-1 | Picloram | 0.5 |
| (xxxii) 122-34-9 | Simazine | 0.004 |

USCA Case #24-1188      Document #2162527      Filed: 03/06/2026      Page 35 of 84

| CAS No. | Contaminant | MCL (mg/l) |
|---|---|---|
| (xxxiii) 1746-01-6 | 2,3,7,8-TCDD (Dioxin) | $3 \times 10^{-8}$ |

(2)  *MCLs and HBWCs for PFAS.*

| CAS. No. | Contaminant | MCL (mg/l) (unless otherwise noted) | HBWC (mg/l) for Hazard Index calculation |
|---|---|---|---|
| (i) Not applicable | Hazard Index PFAS (HFPO-DA, PFBS, PFHxS, and PFNA) | 1 (unitless)[1] | Not applicable. |
| (ii) 122499-17-6 | HFPO-DA | 0.00001 | 0.00001. |
| (iii) 45187-15-3 | PFBS | No individual MCL | 0.002. |
| (iv) 108427-53-8 | PFHxS | 0.00001 | 0.00001. |
| (v) 72007-68-2 | PFNA | 0.00001 | 0.00001. |
| (vi) 45285-51-6 | PFOA | 0.0000040 | Not applicable. |
| (vii) 45298-90-6 | PFOS | 0.0000040 | Not applicable. |

[1] *The PFAS Mixture Hazard Index (HI) is the sum of component hazard quotients (HQs), which are calculated by dividing the measured component PFAS concentration in water by the relevant health-based water concentration when expressed in the same units (shown in ng/l for simplification). The HBWC for PFHxS is 10 ng/l; the HBWC for HFPO-DA is 10 ng/l; the HBWC for PFNA is 10 ng/l; and the HBWC for PFBS is 2000 ng/l.*

Hazard Index = ($[HFPO\text{-}DA_{water}$ ng/l]/[10 ng/l]) + ($[PFBS_{water}$ ng/l]/[2000 ng/l]) + ($[PFNA_{water}$ ng/l]/[10 ng/l]) + ($[PFHxS_{water}$ ng/l]/[10 ng/l])

HBWC = health-based water concentration

HQ = hazard quotient

ng/l = nanograms per liter

$PFAS_{water}$ = the concentration of a specific PFAS in water

ADD-32

**40 CFR 141.61 (up to date as of 10/03/2024)**
Maximum contaminant levels for organic contaminants.

**40 CFR 141.61(d)**

USCA Case #24-1188     Document #2162527     Filed: 03/06/2026     Page 36 of 84

(d) The Administrator, pursuant to section 1412 of the Act, hereby identifies in table 3 to this paragraph (d) the best technology, treatment technique, or other means available for achieving compliance with the maximum contaminant levels for all regulated PFAS identified in paragraph (c) of this section:

### TABLE 3 TO PARAGRAPH (d)—BEST AVAILABLE TECHNOLOGIES FOR PFAS LISTED IN PARAGRAPH (c) OF THIS SECTION

| Contaminant | BAT |
| --- | --- |
| Hazard Index PFAS (HFPO-DA, PFBS, PFHxS, and PFNA) | Anion exchange, GAC, reverse osmosis, nanofiltration. |
| HFPO-DA | Anion exchange, GAC, reverse osmosis, nanofiltration. |
| PFHxS | Anion exchange, GAC, reverse osmosis, nanofiltration. |
| PFNA | Anion exchange, GAC, reverse osmosis, nanofiltration. |
| PFOA | Anion exchange, GAC, reverse osmosis, nanofiltration. |
| PFOS | Anion exchange, GAC, reverse osmosis, |

ADD-33

**40 CFR 141.61 (up to date as of 10/03/2024)**
**Maximum contaminant levels for organic contaminants.**
40 CFR 141.61(e)

USCA Case #24-1188      Document #2162527      Filed: 03/06/2026      Page 37 of 84

| Contaminant | BAT |
|---|---|
|  | nanofiltration. |

(e) The Administrator, pursuant to section 1412 of the Act, hereby identifies in table 4 to this paragraph (e) the affordable technology, treatment technique, or other means available to systems serving 10,000 persons or fewer for achieving compliance with the maximum contaminant levels for all regulated PFAS identified in paragraph (c) of this section:

### TABLE 4 TO PARAGRAPH (e)—SMALL SYSTEM COMPLIANCE TECHNOLOGIES (SSCTS) FOR PFAS

| Small system compliance technology[1] | Affordable for listed small system categories[2] |
|---|---|
| Granular Activated Carbon | All size categories. |
| Anion Exchange | All size categories. |
| Reverse Osmosis, Nanofiltration[3] | 3,301-10,000. |

[1] *Section 1412(b)(4)(E)(ii) of SDWA specifies that SSCTs must be affordable and technically feasible for small systems.*

[2] *The Act (ibid.) specifies three categories of small systems: (i) those serving 25 or more, but fewer than 501, (ii) those serving more than 500, but fewer than 3,301, and (iii) those serving more than 3,300, but fewer than 10,001.*

[3] *"Technologies reject a large volume of water and may not be appropriate for areas where water quantity may be an issue.*

*[56 FR 3593, Jan. 30, 1991, as amended at 56 FR 30280, July 1, 1991; 57 FR 31846, July 17, 1992; 59 FR 34324, July 1, 1994; 89 FR 32744, Apr. 26, 2024; 89 FR 49102, June 11, 2024]*

ADD-34

40 CFR 141.66 (up to date as of 10/03/2024)
Maximum contaminant levels for radionuclides.
40 CFR 141.66 (Oct. 3, 2024)

USCA Case #24-1188      Document #2162527      Filed: 03/06/2026      Page 38 of 84

This content is from the eCFR and is authoritative but unofficial.

# Title 40 —Protection of Environment

# Chapter I —Environmental Protection Agency

# Subchapter D —Water Programs

# Part 141 —National Primary Drinking Water Regulations

# Subpart G —National Primary Drinking Water Regulations: Maximum Contaminant Levels and Maximum Residual Disinfectant Levels

**Authority:** 42 U.S.C. 300f, 300g-1, 300g-2, 300g-3, 300g-4, 300g-5, 300g-6, 300j-4, 300j-9, and 300j-11.

**Source:** 40 FR 59570, Dec. 24, 1975, unless otherwise noted.

**Editorial Note:** Nomenclature changes to part 141 appear at 69 FR 18803, Apr. 9, 2004.

## § 141.66 Maximum contaminant levels for radionuclides.

(a) [Reserved]

(b) *MCL for combined radium-226 and -228.* The maximum contaminant level for combined radium-226 and radium-228 is 5 pCi/L. The combined radium-226 and radium-228 value is determined by the addition of the results of the analysis for radium-226 and the analysis for radium-228.

(c) *MCL for gross alpha particle activity (excluding radon and uranium).* The maximum contaminant level for gross alpha particle activity (including radium-226 but excluding radon and uranium) is 15 pCi/L.

(d) *MCL for beta particle and photon radioactivity.*

(1) The average annual concentration of beta particle and photon radioactivity from man-made radionuclides in drinking water must not produce an annual dose equivalent to the total body or any internal organ greater than 4 millirem/year (mrem/year).

(2) Except for the radionuclides listed in table A, the concentration of man-made radionuclides causing 4 mrem total body or organ dose equivalents must be calculated on the basis of 2 liter per day drinking water intake using the 168 hour data list in "Maximum Permissible Body Burdens and Maximum Permissible Concentrations of Radionuclides in Air and in Water for Occupational Exposure," NBS (National Bureau of Standards) Handbook 69 as amended August 1963, U.S. Department of Commerce. This incorporation by reference was approved by the Director of the Federal Register in accordance with 5 U.S.C. 552(a) and 1 CFR part 51. Copies of this document are available from the National Technical Information Service, NTIS ADA 280 282, U.S. Department of Commerce, 5285 Port Royal Road, Springfield, Virginia 22161. The toll-free number is 800-553-6847. Copies may be inspected at EPA's Drinking Water Docket, 401 M Street, SW., Washington, DC 20460; or at the National Archives and Records Administration (NARA). For information on the availability of this

USCA Case #24-1188     Document #2162527     Filed: 03/06/2026     Page 39 of 84

material at NARA, call 202-741-6030, or go to: *http://www.archives.gov/federal_register/ code_of_federal_regulations/ibr_locations.html.* If two or more radionuclides are present, the sum of their annual dose equivalent to the total body or to any organ shall not exceed 4 mrem/year.

### TABLE A—AVERAGE ANNUAL CONCENTRATIONS ASSUMED TO PRODUCE: A TOTAL BODY OR ORGAN DOSE OF 4 MREM/YR

| 1. Radionuclide | Critical organ | pCi per liter |
|---|---|---|
| 2. Tritium | Total body | 20,000 |
| 3. Strontium-90 | Bone Marrow | 8 |

(e)  *MCL for uranium.* The maximum contaminant level for uranium is 30 µg/L.

(f)  *Compliance dates.*

(1)  Compliance dates for combined radium-226 and -228, gross alpha particle activity, gross beta particle and photon radioactivity, and uranium: Community water systems must comply with the MCLs listed in paragraphs (b), (c), (d), and (e) of this section beginning December 8, 2003 and compliance shall be determined in accordance with the requirements of §§ 141.25 and 141.26. Compliance with reporting requirements for the radionuclides under appendix A to subpart O and appendices A and B to subpart Q is required on December 8, 2003.

(2)  [Reserved]

(g)  *Best available technologies (BATs) for radionuclides.* The Administrator, pursuant to section 1412 of the Act, hereby identifies as indicated in the following table the best technology available for achieving compliance with the maximum contaminant levels for combined radium-226 and -228, uranium, gross alpha particle activity, and beta particle and photon radioactivity.

### TABLE B—BAT FOR COMBINED RADIUM-226 AND RADIUM-228, URANIUM, GROSS ALPHA PARTICLE ACTIVITY, AND BETA PARTICLE AND PHOTON RADIOACTIVITY

| Contaminant | BAT |
|---|---|
| 1. Combined radium-226 and radium-228 | Ion exchange, reverse osmosis, lime softening. |
| 2. Uranium | Ion exchange, reverse osmosis, lime softening, coagulation/filtration. |
| 3. Gross alpha particle activity (excluding Radon and Uranium) | Reverse osmosis. |

ADD-36

**40 CFR 141.66 (up to date as of 10/03/2024)**
Maximum contaminant levels for radionuclides.
40 CFR 141.66(h)

USCA Case #24-1188      Document #2162527           Filed: 03/06/2026      Page 40 of 84

| Contaminant | BAT |
|---|---|
| 4. Beta particle and photon radioactivity | Ion exchange, reverse osmosis. |

(h)  *Small systems compliance technologies list for radionuclides.*

### TABLE C—LIST OF SMALL SYSTEMS COMPLIANCE TECHNOLOGIES FOR RADIONUCLIDES AND LIMITATIONS TO USE

| Unit technologies | Limitations (see footnotes) | Operator skill level required[1] | Raw water quality range and considerations.[1] |
|---|---|---|---|
| 1. Ion exchange (IE) | [a] | Intermediate | All ground waters. |
| 2. Point of use (POU[2]) IE | [b] | Basic | All ground waters. |
| 3. Reverse osmosis (RO) | [c] | Advanced | Surface waters usually require pre-filtration. |
| 4. POU[2] RO | [b] | Basic | Surface waters usually require pre- |

[1] *National Research Council (NRC). Safe Water from Every Tap: Improving Water Service to Small Communities. National Academy Press. Washington, D.C. 1997.*

[2] *A POU, or "point-of-use" technology is a treatment device installed at a single tap used for the purpose of reducing contaminants in drinking water at that one tap. POU devices are typically installed at the kitchen tap. See the April 21, 2000 NODA for more details.*

*Limitations Footnotes: Technologies for Radionuclides:*

[a] *The regeneration solution contains high concentrations of the contaminant ions. Disposal options should be carefully considered before choosing this technology.*

[b] *When POU devices are used for compliance, programs for long-term operation, maintenance, and monitoring must be provided by water utility to ensure proper performance.*

[c] *Reject water disposal options should be carefully considered before choosing this technology. See other RO limitations described in the SWTR Compliance Technologies Table.*

[d] *The combination of variable source water quality and the complexity of the water chemistry involved may make this technology too complex for small surface water systems.*

[e] *Removal efficiencies can vary depending on water quality.*

[f] *This technology may be very limited in application to small systems. Since the process requires static mixing, detention basins, and filtration, it is most applicable to systems with sufficiently high sulfate levels that already have a suitable filtration treatment train in place.*

[g] *This technology is most applicable to small systems that already have filtration in place.*

[h] *Handling of chemicals required during regeneration and pH adjustment may be too difficult for small systems without an adequately trained operator.*

[i] *Assumes modification to a coagulation/filtration process already in place.*

ADD-37

USCA Case #24-1188      Document #2162527           Filed: 03/06/2026      Page 41 of 84

| Unit technologies | Limitations (see footnotes) | Operator skill level required[1] | Raw water quality range and considerations.[1] |
|---|---|---|---|
| | | | filtration. |
| 5. Lime softening | ([d]) | Advanced | All waters. |
| 6. Green sand filtration | ([e]) | Basic. | |
| 7. Co-precipitation with Barium sulfate | ([f]) | Intermediate to Advanced | Ground waters with suitable water quality. |
| 8. Electrodialysis/ electrodialysis reversal | | Basic to Intermediate | All ground waters. |
| 9. Pre-formed hydrous Manganese oxide filtration | ([g]) | Intermediate | All ground waters. |
| 10. Activated alumina | ([a]), ([h]) | Advanced | All ground waters; competing anion concentrations may affect regeneration frequency. |
| 11. Enhanced | ([i]) | Advanced | Can treat a wide range of water qualities. |

[1] *National Research Council (NRC). Safe Water from Every Tap: Improving Water Service to Small Communities. National Academy Press. Washington, D.C. 1997.*

[2] *A POU, or "point-of-use" technology is a treatment device installed at a single tap used for the purpose of reducing contaminants in drinking water at that one tap. POU devices are typically installed at the kitchen tap. See the April 21, 2000 NODA for more details.*

*Limitations Footnotes: Technologies for Radionuclides:*

[a] *The regeneration solution contains high concentrations of the contaminant ions. Disposal options should be carefully considered before choosing this technology.*

[b] *When POU devices are used for compliance, programs for long-term operation, maintenance, and monitoring must be provided by water utility to ensure proper performance.*

[c] *Reject water disposal options should be carefully considered before choosing this technology. See other RO limitations described in the SWTR Compliance Technologies Table.*

[d] *The combination of variable source water quality and the complexity of the water chemistry involved may make this technology too complex for small surface water systems.*

[e] *Removal efficiencies can vary depending on water quality.*

[f] *This technology may be very limited in application to small systems. Since the process requires static mixing, detention basins, and filtration, it is most applicable to systems with sufficiently high sulfate levels that already have a suitable filtration treatment train in place.*

[g] *This technology is most applicable to small systems that already have filtration in place.*

[h] *Handling of chemicals required during regeneration and pH adjustment may be too difficult for small systems without an adequately trained operator.*

[i] *Assumes modification to a coagulation/filtration process already in place.*

ADD-38

40 CFR 141.66 (up to date as of 10/03/2024)
Maximum contaminant levels for radionuclides.
40 CFR 141.66(h)

USCA Case #24-1188     Document #2162527          Filed: 03/06/2026     Page 42 of 84

| Unit technologies | Limitations (see footnotes) | Operator skill level required[1] | Raw water quality range and considerations.[1] |
|---|---|---|---|
| coagulation/filtration | | | |

[1] National Research Council (NRC). Safe Water from Every Tap: Improving Water Service to Small Communities. National Academy Press. Washington, D.C. 1997.

[2] A POU, or "point-of-use" technology is a treatment device installed at a single tap used for the purpose of reducing contaminants in drinking water at that one tap. POU devices are typically installed at the kitchen tap. See the April 21, 2000 NODA for more details.

Limitations Footnotes: Technologies for Radionuclides:

[a] The regeneration solution contains high concentrations of the contaminant ions. Disposal options should be carefully considered before choosing this technology.

[b] When POU devices are used for compliance, programs for long-term operation, maintenance, and monitoring must be provided by water utility to ensure proper performance.

[c] Reject water disposal options should be carefully considered before choosing this technology. See other RO limitations described in the SWTR Compliance Technologies Table.

[d] The combination of variable source water quality and the complexity of the water chemistry involved may make this technology too complex for small surface water systems.

[e] Removal efficiencies can vary depending on water quality.

[f] This technology may be very limited in application to small systems. Since the process requires static mixing, detention basins, and filtration, it is most applicable to systems with sufficiently high sulfate levels that already have a suitable filtration treatment train in place.

[g] This technology is most applicable to small systems that already have filtration in place.

[h] Handling of chemicals required during regeneration and pH adjustment may be too difficult for small systems without an adequately trained operator.

[i] Assumes modification to a coagulation/filtration process already in place.

## TABLE D—COMPLIANCE TECHNOLOGIES BY SYSTEM SIZE CATEGORY FOR RADIONUCLIDE NPDWR'S

| Contaminant | Compliance technologies[1] for system size categories (population served) | | 3,300-10,000 |
|---|---|---|---|
| | 25-500 | 501-3,300 | |
| 1. Combined radium-226 and radium-228 | 1, 2, 3, 4, 5, 6, 7, 8, 9 | 1, 2, 3, 4, 5, 6, 7, 8, 9 | 1, 2, 3, 4, 5, 6, 7. 8, 9. |
| 2. Gross alpha particle activity | 3, 4 | 3, 4 | 3, 4. |
| 3. Beta particle activity and | 1, 2, 3, 4 | 1, 2, 3, 4 | 1, 2, 3, 4. |

Note:[1] Numbers correspond to those technologies found listed in the table C of 141.66(h).

ADD-39

**40 CFR 141.66 (up to date as of 10/03/2024)**
**Maximum contaminant levels for radionuclides.**
**40 CFR 141.66(h)**

USCA Case #24-1188      Document #2162527      Filed: 03/06/2026      Page 45 of 84

| Contaminant | Compliance technologies[1] for system size categories (population served) | | 3,300-10,000 |
| --- | --- | --- | --- |
| | **25-500** | **501-3,300** | |
| photon activity<br>4. Uranium | 1, 2, 4, 10, 11 | 1, 2, 3, 4, 5, 10, 11 | 1, 2, 3, 4, 5, 10, 11. |

**Note:**[1] *Numbers correspond to those technologies found listed in the table C of 141.66(h).*

*[65 FR 76748, Dec. 7, 2000]*

ADD-40

(b)  The chlorine dioxide MRDL specified in (c), below, shall apply to each public water system at which chlorine dioxide is used as a disinfectant or oxidant.

(c)  The MRDLs and maximum residual disinfection level goals (MRDLGs) for disinfectant residuals shall be as specified in Table 705-5 below:

Table 705-5:  MRDLs and MRDLGs

| Contaminant | MRDL (mg/L) | MRDLG (mg/L) |
|---|---|---|
| Chlorine, as $Cl_2$ | 4.0 | 4 |
| Chloramines, as $Cl_2$ | 4.0 | 4 |
| Chlorine Dioxide, as $ClO_2$ | 0.8 | 0.8 |

(d)  Monitoring and compliance for residual disinfectants shall be as specified in Env-Dw 715.

Source.  (See Revision Note #1 at chapter heading for Env-Dw 700) #9699, eff 5-1-10; ss by #12665, eff 1-1-19

Env-Dw 705.05  Special Treatment Chemicals.

(a)  The MCLs and MCLGs for the treatment chemicals specified in (b), below, shall apply to community water systems and non-transient non-community water systems.

(b)  The MCLs and MCLGs for treatment chemicals shall be as specified in Table 705-6, below:

Table 705-6:  MCLs and MCLGs for Certain Treatment Chemicals

| Contaminant | MCL | MCLG |
|---|---|---|
| Acrylamide | 0.05% dose at 1 mg/L | Zero |
| Epichlorohydrin | 0.01% dose at 20 mg/L | Zero |

(c)  Compliance with the MCLs and MCLGs in Table 705-6, above, shall be determined in accordance with Env-Dw 712.19.

Source.  (See Revision Note #1 at chapter heading for Env-Dw 700) #9699, eff 5-1-10; ss by #12665, eff 1-1-19

Env-Dw 705.06  MCLs and MCLGs for Per- and Polyfluoroalkyl Substances (PFAS) Contaminants.

(a)  The MCLs and MCLGs for the per- and polyfluoroalkyl substances contaminants specified in (b), below, shall apply to community water systems and non-transient non-community water systems.

(b)  The MCLs and MCLGs for PFAS contaminants shall be as specified in Table 705-7, below:

Table 705-7:  PFAS Contaminant MCLs and MCLGs

| PFAS Contaminant | MCL (mg/L) | MCLG (mg/L) |
|---|---|---|
| Perfluorohexane sulfonic acid (PFHxS) | 0.000018 | 0 |
| Perfluorononanoic acid (PFNA) | 0.000011 | 0 |
| Perfluorooctane sulfonic acid (PFOS) | 0.000015 | 0 |
| Perfluorooctanoic acid (PFOA) | 0.000012 | 0 |

(c)  Monitoring and compliance for PFAS contaminants shall be as specified in Env-Dw 707, Env-Dw 708, and Env-Dw 712.

Source.  #12838, eff 9-30-19

ADD-41

# N.J.A.C. 7:10-5.2

## Copy Citation

This file includes all Regulations adopted and published through the New Jersey Register, Vol. 56 No. 19, October 7, 2024

- **NJ - New Jersey Administrative Code PAW ET Table of Contents**
- **TITLE 7. ENVIRONMENTAL PROTECTION**
- **CHAPTER 10. SAFE DRINKING WATER ACT**
- **SUBCHAPTER 5. STATE PRIMARY DRINKING WATER REGULATIONS**

## § 7:10-5.2 Discretionary changes to National Regulations

(a) In accordance with the discretionary authority permitted by the National Regulations, for compliance with the State primary drinking water regulations, the following shall apply:

1. Surface water treatment requirements shall be those established under the National Regulations except as provided in N.J.A.C. 7:10-9.

2. Subject to N.J.A.C. 7:10-5.8, the analytical, monitoring, treatment, and other requirements for total coliform shall be those established under the National Regulations.

3. MCLs for inorganic chemicals (IOCs) shall be those established under the National Regulations, except for the State-regulated contaminant arsenic, for which an MCL of five [micro]g/l shall apply. Monitoring requirements for IOCs shall be those established under the National Regulations and at (a)7 below.

4. MCLs for volatile organic compounds (VOCs) shall be those established under the National Regulations except for the State-regulated VOCs for which the MCLs are listed in Table 1, below. Monitoring requirements for VOCs, including the VOCs, 1,3-dichlorobenzene; 1,1-dichloroethane; 1,1,2,2-tetrachloroethane; naphthalene; and methyl tertiary butyl ether, shall be those established under the National Regulations and at (a)7 below.

TABLE 1

MCLs FOR STATE-REGULATED VOCS*

| State-regulated VOC | MCL (in [micro]g/l or ppb) |
| --- | --- |
| Benzene | 1 |

| | |
|---|---|
| Carbon tetrachloride | 2 |
| Chlorobenzene | 50 |
| 1,3 Dichlorobenzene | 600 |
| 1,2 Dichloroethane | 2 |
| 1,1 Dichloroethylene | 2 |
| Methylene chloride | 3 |
| Tetrachloroethylene | 1 |
| Trichlorobenzene(s) | 9 |
| 1,1,1 Trichloroethane | 30 |
| Trichloroethylene | 1 |
| Xylene(s) | 1,000 |
| 1,1 Dichloroethane | 50 |
| 1,1,2 Trichloroethane | 3 |
| 1,1,2,2 Tetrachloroethane | 1 |
| Naphthalene | 300 |
| Methyl tertiary butyl ether (MTBE) | 70 |

ADD-43

\* The MCLs in this table are more stringent than those in the National Regulations, with the exception of the following chemicals, which do not have Federal MCLs: 1,3-dichlorobenzene; 1,1-dichloroethane; 1,1,2,2-tetrachloroethane; naphthalene; and methyl tertiary butyl ether.

**5.** MCLs for the State-regulated per- and polyfluoroalkyl substances perfluorononanoic acid (PFNA), perfluorooctanoic acid (PFOA), and perfluorooctanesulfonic acid (PFOS) shall be those established at (a)5i, ii, and iii below. Monitoring requirements for PFNA, PFOA, and PFOS shall be those established under the National Regulations at 40 CFR 141.24(f) and at (a)7 below. For PFNA, the conditions at (a)5i apply. For PFOA, the conditions at (a)5ii apply. For PFOS, the conditions at (a)5iii apply.

**i.** For PFNA, the MCL shall be 0.013 [micro]g/l. Monitoring requirements shall begin as set forth at (a)5i(1) below and are subject to the condition at (a)5i(2) below.

**(1)** All public community water systems using a groundwater source(s) serving a population of 10,000 or less and public nontransient noncommunity water systems shall begin monitoring within the first quarter of 2019. All public community water systems using a surface water source(s) and all public community water systems serving a population greater than 10,000 shall begin monitoring within the first quarter of 2020.

**(2)** Notwithstanding the threshold set forth at 40 CFR 141.24(f)(11), the requirement for quarterly monitoring at 40 CFR 141.24(f)(11)(i) shall apply if PFNA is detected at a level exceeding 0.002 [micro]g/l.

**ii.** For PFOA, the MCL shall be 0.014 [micro]g/l. Monitoring requirements shall begin as set forth at (a)5ii(1) below and are subject to the conditions at (a)5ii(2) and (3) below.

**(1)** All public community and public nontransient noncommunity water systems shall begin monitoring within the first quarter of 2021.

**(2)** Nothwithstanding the threshold set forth at 40 CFR 141.24(f)(11), the requirement for quarterly monitoring at 40 CFR 141.24(f)(11)(i) shall apply if PFOA is detected at a level exceeding 0.002 [micro]g/l.

**(3)** A public community water system or a public nontransient noncommunity water system may submit monitoring data for PFOA to the Department for a determination of whether the system may reduce monitoring frequency to an annual basis provided:

**(A)** The monitoring data are collected in accordance with (a)7 below after January 1, 2019; and

**(B)** The monitoring data are reported to the Department in accordance with N.J.A.C. 7:10-5.4 on or before June 1, 2020.

**iii.** For PFOS, the MCL shall be 0.013 [micro]g/l. Monitoring requirements shall begin as set forth at (a)5iii(1) below and are subject to the conditions at (a)5iii(2) and (3) below.

**(1)** All public community and public nontransient noncommunity water systems shall begin monitoring within the first quarter of 2021.

**(2)** Nothwithstanding the threshold set forth at 40 CFR 141.24(f)(11), the requirement for quarterly monitoring at 40 CFR 141.24(f)(11)(i) shall apply if PFOS is detected at a level exceeding 0.002 [micro]g/l.

**(3)** A public community water system or a public nontransient noncommunity water system may submit monitoring data for PFOS to the Department for a determination whether the system may reduce monitoring frequency to an annual basis provided:

**(A)** The monitoring data are collected in accordance with (a)7 below after January 1, 2019; and

**(B)** The monitoring data are reported to the Department in accordance with N.J.A.C. 7:10-5.4 on or before June 1, 2020.

**6.** MCLs for synthetic organic compounds (SOCs) and pesticides shall be those established under the National Regulations except for the State-regulated SOCs at (a)6i and ii below. Monitoring requirements for SOCs shall be those established under the National Regulations and at (a)7 below. For 1,2,3-trichloropropane, the conditions at (a)6ii below apply.

**i.** Chlordane, for which an MCL of 0.5 [micro]g/l shall apply; and

**ii.** 1,2,3-Trichloropropane, for which an MCL of 0.030 [micro]g/l shall apply. Monitoring requirements shall be those established for SOCs under the National Regulations, beginning as set forth at (a)6ii(1) below and subject to the condition at (a)6ii(2) below.

**(1)** All public community water systems using a groundwater source(s) serving a population 10,000 or less and public nontransient noncommunity water systems shall begin monitoring within the first quarter of 2019. All public community water systems using a surface water source(s) and all public community water systems serving a population greater than 10,000 shall begin monitoring within the first quarter of 2020.

**(2)** Notwithstanding the threshold set forth at 40 CFR 141.24(h)(7), the requirement for quarterly monitoring at 40 CFR 141.24(h)(7)(i) shall apply if 1,2,3-trichloropropane is detected at a level equal to or exceeding 0.010 [micro]g/l.

**7.** Water systems that, as provided at 40 CFR 141.23 and 141.24, are monitoring for inorganics (except asbestos, nitrate, and nitrite), volatile organic compounds, and synthetic organic compounds or for PFNA, PFOA, and PFOS at a frequency less than annually shall monitor once in each Federal three-year compliance period in accordance with the schedule in the table below.

| Monitoring Schedule | Water System Type |
| --- | --- |
| Year one of the applicable three-year Federal compliance period (for example, 2017, 2020, 2023, 2026) | Any public community water system using a surface water source(s) and any public community water system serving a population greater than 10,000. |
| Year two of the applicable | Any public community water system |

ADD-45

| three-year Federal compliance period | using a groundwater source(s) serving a |
| (for example, 2018, 2021, 2024, 2027) | population equal to or less than 10,000. |
| Year three of the applicable | Any public nontransient noncommunity |
| three-year Federal compliance period | water system. |
| (for example, 2019, 2022, 2025, 2028) | |

**8.** MCLs and monitoring requirements for disinfectants and disinfection by-products shall be those established under the National Regulations.

**9.** Action levels and monitoring requirements for lead and copper shall be those established under the National Regulations.

**10.** For public community and public nontransient noncommunity water systems, MCLs and monitoring requirements for radionuclides shall be those established under the National Regulations. Public nontransient noncommunity water systems shall begin monitoring within the first quarter of 2019.

**11.** The Department may allow monitoring waivers for public water systems pursuant to 40 CFR 141.23(c) and 141.24(f) and (h) of the National Regulations.

**12.** Suppliers of water from a bulk purchase system are subject only to the microbiological monitoring, disinfectant by-product monitoring, and lead and copper monitoring requirements of this section.

**13.** If a supplier of water installs a treatment device or process to bring the water into compliance with any applicable MCL, the supplier of water shall monitor for that contaminant each calendar quarter (notwithstanding compliance with the applicable MCL for the contaminant).

**(b)** The National Regulations, at 40 CFR 141.151, require each community water system to annually develop and deliver to its customers a Consumer Confidence Report (CCR), which provides information on the quality of the water delivered by the system and characterizes the risks (if any) from exposure to contaminants detected in the drinking water in an accurate and understandable manner. In addition to the standards and requirements in the National Regulations for the development and distribution of the CCR, the following requirements shall apply:

**1.** Notwithstanding the provisions of the Federal Safe Drinking Water Act amendments of 1996, 42 U.S.C. §§ 300f et seq. and the National Regulations, at 40 C.F.R 141.155, every public community water system, regardless of the number of persons served, shall mail a copy of its Consumer Confidence Report to each of its customers.

ADD-46

**2.** The statement required pursuant to 40 C.F.R. 141.154(a) (Vulnerable Populations Statement) shall be included in bold print within the header of any chart displaying levels of detection and maximum contaminant levels for contaminants included in the Consumer Confidence Report.

**i.** If the Consumer Confidence Report does not contain at least one chart displaying levels of detection and maximum contaminant levels, the Vulnerable Populations Statement shall be placed at the beginning of the report.

**3.** In addition to the reporting requirements set forth at N.J.A.C. 7:10-7.4, if, at any time during any monitoring period within the reporting year, a sample collected and analyzed pursuant to N.J.A.C. 7:10-7.3 exceeds the recommended upper limit for iron, manganese or sodium as provided at N.J.A.C. 7:10-7.2, the following language shall be included in the Consumer Confidence Report:

**i.** "FOR IRON: The recommended upper limit for iron is based on unpleasant taste of the water and staining of laundry. Iron is an essential nutrient, but some people who drink water with iron levels well above the recommended upper limit could develop deposits of iron in a number of organs of the body."

**ii.** "FOR MANGANESE: The recommended upper limit for manganese is based on staining of laundry. Manganese is an essential nutrient, and toxicity is not expected from levels which would be encountered in drinking water."

**iii.** "FOR SODIUM: For healthy individuals, the sodium intake from water is not important, because a much greater intake of sodium takes place from salt in the diet. However, sodium levels above the recommended upper limit may be of concern to individuals on a sodium restricted diet."

**4.** For the nine State-regulated contaminants for which there is no Federal MCL, the Consumer Confidence Report shall include the information set forth below:

| Contaminant | New Jersey MCL | MCL in units for CCR ($\mu g/l$) | Major Sources in Drinking Water | Health Effects Language |
|---|---|---|---|---|
| 1,3-Dichlorobenzene<*> | 600 | 600 ppb | Discharge from | Some people who drink water containing |

ADD-47

| | | | | |
|---|---|---|---|---|
| | | | industrial | 1,3-Dichlorobenzene in |
| | | | chemical | excess of the MCL over many |
| | | | factories | years could experience |
| | | | | problems with their liver, |
| | | | | kidneys, or circulatory |
| | | | | system. |
| 1,1-Dichloroethane | 50 | 50 ppb | Discharge | Some people who drink |
| | | | from metal | water containing |
| | | | degreasing | 1,1-Dichloroethane in |
| | | | sites and | excess of the MCL over many |
| | | | other | years could experience |
| | | | factories | problems with their |

ADD-48

| | | | | | kidneys. |
|---|---|---|---|---|---|
| Methyl butyl ether (MTBE) | *tertiary* | 70 | 70 ppb | Leaking underground gasoline and fuel oil tanks, gasoline and fuel oil spills | Some people who drink water containing MTBE in excess of the MCL over many years could experience problems with their kidneys. |
| Naphthalene | 300 | 300 ppb | Discharge from industrial chemical | | Some people who drink water containing Naphthalene in excess of the MCL over many years |

ADD-49

| | | | factories, | could experience problems |
| | | | exposure to | with cataracts and |
| | | | mothballs | hemolytic anemia. |
| 1,1,2,2-Tetrachloroethane | 1 | 1 ppb | Discharge | Some people who drink |
| | | | from | water containing |
| | | | industrial | 1,1,2,2-Tetrachloroethane |
| | | | chemical | in excess of the MCL over |
| | | | factories | many years could experience |
| | | | | problems with their liver, |
| | | | | kidneys, and central |
| | | | | nervous system. |
| Perfluorononanoic | 0.013 | 13 ppt | Discharge | Some people who drink |

| acid (PFNA) | from | water containing PFNA in |
| | industrial | excess of the MCL over many |
| | chemical | years could experience |
| | factories | problems with their liver, |
| | | kidney, immune system, or, |
| | | in males, reproductive |
| | | system. For females, |
| | | drinking water containing |
| | | PFNA in excess of the MCL |
| | | over many years may cause |
| | | developmental delays in a |
| | | fetus and/or an infant. |

| Perfluorooctanoic Acid (PFOA) | 0.014 | 14 ppt | Discharge from industrial, chemical, and manufacturing factories, release of aqueous film forming foam. | Some people who drink water containing PFOA in excess of the MCL over many years could experience problems with their blood serum cholesterol levels, liver, kidney, immune system, or, in males, reproductive system. Drinking water containing PFOA in excess of the MCL over many years may also |
|---|---|---|---|---|

ADD-52

| | | | | increase the risk of |
|---|---|---|---|---|
| | | | | testicular and kidney |
| | | | | cancer. For females, |
| | | | | drinking water containing |
| | | | | PFOA in excess of the MCL |
| | | | | over many years may cause |
| | | | | developmental delays in a |
| | | | | fetus and/or an infant. |
| Perfluorooctane-sulfonic | 0.013 | 13 ppt | Discharge | Some people who drink |
| Acid (PFOS) | | | from | water containing PFOS in |
| | | | industrial, | excess of the MCL over many |
| | | | chemical | years could experience |

ADD-53

| factories, | problems with their immune |
| release of | system, kidney, liver, or |
| aqueous film | endocrine system. For |
| forming foam. | females, drinking water |
| | containing PFOS in excess |
| | of the MCL over many years |
| | may cause developmental |
| | effects and problems with |
| | the immune system, liver, |
| | or endocrine system in a |
| | fetus and/or an infant. |
| | Some of these developmental |

ADD-54

| | | | | effects can persist through |
| --- | --- | --- | --- | --- |
| | | | | childhood. |
| 1,2,3-Trichloropropane | 0.030 | 30 ppt | Application of pesticides to agricultural land; discharge from metal degreasing sites, chemical manufacturing | Some people who drink water containing 1,2,3-trichloropropane in excess of the MCL over many years may have an increased risk of getting cancer. |

ADD-55

plants, and

other

industrial

sites

## History

**HISTORY:**

Amended by R.2000 d.354, effective August 21, 2000. See: 31 N.J.R. 2717(b), 32 N.J.R. 3106(a). In (a), rewrote 10 and 12. Amended by R.2003 d.193, effective May 5, 2003. See: 34 N.J.R. 4281(a), 35 N.J.R. 1925(b). Added (b). Amended by R.2004 d.442, effective December 6, 2004. See: 36 N.J.R. 295(a), 36 N.J.R. 5383(b). In (a), rewrote 3, 4 and 7, added 13. Amended by R.2017 d.197, effective November 6, 2017. See: 49 N.J.R. 504(a), 49 N.J.R. 3505(b). Rewrote (a)2. Amended by R.2018 d.165, effective September 4, 2018. See: 49 N.J.R. 2361(a), 50 N.J.R. 1939(a). Rewrote the section. Administrative correction. See: 52 N.J.R. 518(a). Amended by R.2020 d.059, effective June 1, 2020. See: 51 N.J.R. 437(a), 52 N.J.R. 1165(b). Rewrote (a)5; in (a)7, inserted ", PFOA, and PFOS"; in the introductory paragraph of (b), inserted a comma following "(CCR)"; in (b)4, substituted "nine" for "seven", and in the table, inserted entries "Perfluorooctanoic Acid (PFOA)" and "Perfluorooctanesulfonic Acid (PFOS)".

NEW                    JERSEY                    ADMINISTRATIVE                    CODE
Copyright © 2024 by the New Jersey Office of Administrative Law

ADD-56

# CVR 12-037-001

## Copy Citation

This document is current through September 17, 2024

- **Code of Vermont Rules PAW - ET Table of Contents**
- **AGENCY 12. AGENCY OF NATURAL RESOURCES**
- **SUB-AGENCY 037. WATER QUALITY DIVISION**
- **CHAPTER 001. GROUNDWATER PROTECTION RULE AND STRATEGY**

## 12 037 001. GROUNDWATER PROTECTION RULE AND STRATEGY

**SUBCHAPTER 1** GENERAL PROVISIONS

**§ 12-101.** Authority.

This Rule is adopted by the Secretary under the authority granted by 10 V.S.A §§ 1390 - 1394 .

**§ 12-102.** Purpose.

It is the purpose of this Rule to establish the following:

**(1)** a system of management for the different classes of groundwater;

**(2)** a process for the reclassification of groundwater;

**(3)** standards for the protection of groundwater quality;

**(4)** processes that must be incorporated into regulatory programs to ensure that activities that present a potential threat to groundwater are designed, managed, and permitted to protect groundwater resources; and

**(5)** a system to protect the groundwater resources that are held in trust for the public.

**§ 12-103.** Applicability.

This Rule applies to all activities that are subject to the following Agency rules:

**(1)** Solid Waste Management Rules;

**(2)** Hazardous Waste Management Regulations;

**(3)** Underground Storage Tank Rules;

**(4)** Aboveground Storage Tank Rules;

**(5)** Salvage Yard Rule;

**(6)** Underground Injection Control Regulations;

**(7)** Indirect Discharge Rule;

ADD-57

**(8)** Stormwater Management Rule;

**(9)** Stormwater Management Rule for Stormwater-Impaired Waters;

**(10)** Wastewater System and Potable Water Supply Rules (for wastewater systems only); and

**(11)** Investigation and Remediation of Contaminated Properties Rule.

**§ 12-104.** Provisions for Incorporation.

**(a)** The Secretary, within five years of adoption of this Rule or prior to filing any proposed changes to a rule listed in Section 12-103 of this Rule with the Interagency Committee on Administrative Rules, whichever is sooner, shall review and revise as necessary each rule listed in Section 12-103 of this Rule to ensure the rule:

**(1)** Incorporates the following:

**(A)** restrictions on activities permitted in areas of each class of groundwater, from Subchapter 4 of this Rule;

**(B)** identification of compliance points, from Sections 12-603 of this Rule;

**(C)** procedure for requiring preventive and corrective actions, from Sections 12-606 and 12-607 of this Rule; and

**(D)** permitting prohibitions, from Section 12-604 of this Rule.

**(2)** Applies the groundwater enforcement standards and preventive actions levels established in Sections 12-601 and 12-602 of this Rule.

**(3)** Does not permit an activity that will adversely affect public trust uses.

**(b)** Subsequent to the initial review and revision required in Subsection (a), every seven years thereafter the Secretary shall review, and revise if necessary, the rules listed in Section 12-103 of this Rule to assure continued conformance with Subsection (a).

**§ 12-105.** Classes of Groundwater.

**(a)** The following groundwater classifications have been established by statute:

**(1)** Class I. Suitable for public water system. Character uniformly excellent. No exposure to activities which pose a risk to its current or potential use as a public water system.

**(2)** Class II. Suitable for public water system. Character uniformly excellent but exposed to activities which may pose a risk to its current or potential use as a public water system.

**(3)** Class III. Suitable as a source of water for a potable water supply, irrigation, agricultural use, and general industrial and commercial use.

**(4)** Class IV. Not suitable as a source of water for a potable water supply but suitable for some agricultural, industrial, and commercial use, provided the Secretary may authorize, subject to conditions, use as a source of potable water supply or other use under a reclassification order issued for the aquifer.

**(b)** Unless reclassified, all groundwater in the State is Class III.

**§ 12-106.** Severability.

The provisions of this Rule are severable. If any provision of this Rule is found to be invalid, or if any application of this Rule to any person or circumstance is found to be invalid, the invalidity shall not affect other provisions that can be given effect in the absence of the invalid provision or application.

**SUBCHAPTER 2** DEFINITIONS

**§ 12-201.** Definitions.

As used in this Rule, the following terms shall have the specified meaning.

**(1)** "Agency" means the Agency of Natural Resources.

**(2)** "Activity" means all activities to which this Rule applies, as identified in Section 12-103 of this Rule.

**(3)** "Aquifer" means a water bearing stratum of permeable rock, sand, gravel, or other soils.

**(4)** "Background groundwater concentration" means the amount of a naturally occurring substance present in groundwater absent human actions or influence.

**(5)** "Compliance point" means point of compliance as defined in this Subsection.

**(6)** "Contamination" means the presence in groundwater of a substance in an amount exceeding the groundwater enforcement standard established for the substance.

**(7)** "Existing use of groundwater" means any present use of groundwater, including use for potable water supplies, public water systems, and agricultural uses and all other non-potable groundwater uses.

**(8)** "General permit" means a permit that applies to a class or category of discharges, emissions, disposal, facilities, or activities within a common geographic area, including the entire State or a region of the State.

**(9)** "Groundwater" means water below the land surface in a zone of saturation.

**(10)** "Groundwater enforcement standards" are those standards adopted pursuant to Section 12-601 of this Rule and contained in Appendix One.

**(11)** "High potential risk activities" means the following activities:

**(A)** a solid waste landfill, except those that are closed in accordance with an enforcement action or a certification under the Solid Waste Management Rules;

**(B)** a hazardous waste treatment or disposal facility;

**(C)** the storage of a regulated substance in an underground storage tank with a capacity greater than 1,100 gallons;

**(D)** the storage of a regulated substance in an aboveground storage tank with a capacity greater than 1,100 gallons;

**(E)** an automobile graveyard, as defined by 24 V.S.A. § 2241 ;

**(F)** a new indirect discharge of sewage using a disposal system with a design capacity greater than 50,000 gallons per day;

**(G)** the land application of biosolids or stabilized septage; and

**(H)** injection wells.

**(12)** "Indirect discharge system" means an indirect discharge, as defined in the Indirect Discharge Rules, that is issued a discharge permit pursuant to the Indirect Discharge Rules.

**(13)** "Individual permit" means a permit that authorizes a specific discharge, emission, disposal, facility, or activity that contains terms and conditions that are specific to the discharge, emission, disposal, facility, or activity.

**(14)** "Injection well" means injection well, as defined in the Underground Injection Control Regulations, the discharge to which is issued a discharge permit, or otherwise permitted, pursuant to the Underground Injection Control Regulations.

**(15)** "Moderate potential risk activities" means the following activities:

**(A)** the storage of a regulated substance in an underground storage tank with a capacity less than or equal to 1,100 gallons;

**(B)** the storage of a regulated substance in an aboveground storage tank with a capacity less than or equal to 1,100 gallons;

**(C)** a solid waste storage or transfer facility with a leachate collection system;

**(D)** a hazardous waste storage facility;

**(E)** a hazardous waste generator that meets the requirements of Section 7-308(a) of the Vermont Hazardous Waste Management Regulations (Large Quantity Generators); and

**(F)** a new indirect discharge of sewage using a disposal system with a design with a capacity less than 50,000 gallons per day.

**(16)** "Monitoring well" means a device used to monitor the depth or elevation of the piezometric surface, or groundwater quality, quantity, or both.

**(17)** "New indirect discharge system" means either a new indirect discharge of sewage or a new indirect discharge of non-sewage waste, as defined in the Indirect Discharge Rules.

**(18)** "Non-potable groundwater" means groundwater that is not potable groundwater or that will not be potable groundwater for at least five years, or is scientifically predicted to become unsuitable as a source of potable groundwater within five years.

**(19)** "Permit" means a permit, certification, license, registration, determination, or similar form of permission required from the Secretary by law. However, the term excludes a professional license issued pursuant to 10 V.S.A. §§ 1936 (UST inspector licenses), 6607 (hazardous waste transporters), and 6607a (waste transportation).

**(20)** "Person" means any individual, partnership, company, corporation, cooperative, association, unincorporated association, joint venture, trust, the state of Vermont or any department, agency, subdivision, or municipality, the United States government or any department; agency, or subdivision, or any other legal or commercial entity.

**(21)** "Point of compliance" means the locations identified in Section 12-603 of this Rule.

**(22)** "Potable groundwater" means groundwater meeting groundwater enforcement standards.

**(23)** "Potable water supply" means potable water supply as defined in the Wastewater System and Potable Water Supply Rules.

ADD-60

**(24)** "Proposed," in reference to a public water source, means proposed in an application for a public water source permit or proposed in a petition to reclassify groundwater.

**(25)** "Public trust use" means those uses of groundwater designated in this Rule as uses for which groundwater is held in the public trust. Public trust uses include existing and future uses of groundwater. Public trust uses can be competing uses.

**(26)** "Public water source" means any groundwater used, or permitted to be used, as a source of drinking water for a public water system.

**(27)** "Public water source protection area" means public water source protection area as defined in the Water Supply Rule.

**(28)** "Public water system" means public water system as defined in the Water Supply Rule.

**(29)** "Qualified Hydrogeologist" means a person with training or experience in hydrogeology, surficial geology, and bedrock geology sufficient to adequately prepare the hydrogeologic studies and analyses required by this Rule.

**(30)** "Receptor" means any natural or human-constructed feature that may be adversely affected when contacted by groundwater that contains a substance in exceedance of the groundwater enforcement standards. Examples of receptors include public water sources, sources of water for potable water supplies, surface waters, wetlands, soils, sensitive ecological areas, outdoor and indoor air, and enclosed spaces such as basements, sewers, and subsurface utilities.

**(31)** "Secretary" means the Secretary of the Agency of Natural Resources or the Secretary's duly authorized representative.

**(32)** "Stormwater hotspot" means an area that generates higher concentrations of hydrocarbons, trace metals, and toxicants than are found in typical stormwater runoff.

**(33)** "Technically impractical to achieve complete remediation" means a situation where the Secretary has determined, using the following factors, that it is impractical to remediate contamination to eliminate exceedances of the groundwater enforcement standards:

**(A)** the nature of the subsurface geology;

**(B)** the types and physical properties of the substances in exceedance of the groundwater enforcement standards;

**(C)** the sources of contamination and causes of any exceedance of the groundwater enforcement standards;

**(D)** the amount of any hazardous material released;

**(E)** the date of the original release into the groundwater of the substances in exceedance of the groundwater enforcement standards (i.e., age of contamination);

**(F)** the fate and transport of the substances in exceedance of the groundwater enforcement standards;

**(G)** whether technology or methods exist that can remediate the contamination to eliminate exceedances of the groundwater enforcement standards;

**(H)** whether remediation of the contamination to eliminate exceedances of the groundwater enforcement standards would result in greater harm to human health or the environment than either lesser remediation or no remediation;

ADD-61

**(I)** the cost effectiveness of remediation as measured by the cost of the technology or methods for remediation relative to the tangible environmental and health benefits to any receptor of the contaminated groundwater; and

**(J)** any other factors the Secretary determines are relevant.

**(34)** "Vermont Action Levels" means the numeric guidelines reached and derived by the Vermont Department of Health for particular chemicals that have Maximum Contaminant Levels promulgated by the United State Environmental Protection Agency and are of specific public health interest as determined by the Vermont Department of Health.

**(35)** "Wastewater System" means wastewater system as defined in the Wastewater System and Potable Water Supply Rules.

**SUBCHAPTER 3** PUBLIC TRUST

**§ 12-301.** Public Trust Uses of Groundwater; Groundwater Quality.

**(a)** It is the policy of the State that the groundwater resources of the State are held in trust for the public.

**(b)** This policy is accomplished in part by regulating groundwater withdrawal pursuant to the Groundwater Withdrawal Reporting and Permitting Rules, in a manner that benefits the people of the state and is compatible with long-range water resource planning, proper management, and use of the water resources of Vermont. This policy is also accomplished in part by minimizing the risks of groundwater quality deterioration by regulating human activities, pursuant to this Rule, that present risks to the use of groundwater in the vicinities of such activities while balancing the State's groundwater policy with the need to maintain and promote a healthy and prosperous agricultural community.

**(c)** The following uses of groundwater are protected as public trust uses:

**(1)** withdrawal for fire suppression or other public emergency purposes;

**(2)** withdrawal for domestic, residential use;

**(3)** withdrawal for farming, as that term is defined in 6 V.S.A. Chapter 215, that is in compliance with the requirements of 6 V.S.A. Chapter 215;

**(4)** withdrawal for dairy processing conducted by dairy processors and milk handlers licensed in accordance with 6 V.S.A. § 2721 ;

**(5)** potable water supplies;

**(6)** public water systems; and

**(7)** closed loop, standing column, or similar non-extractive geothermal heat pumps.

**§ 12-302.** Permitting Determination.

**(a)** An activity that is proposed for initial permitting or expansion and requires an individual permit shall not be permitted unless:

**(1)** The activity is presumed, pursuant to Section 12-303, to not adversely affect public trust uses and not to violate Section 604(a) of this Rule; or

**(2)** the Secretary determines, on a case by case basis, that the activity will not adversely affect public trust uses and will not violate Section 604(a) of this Rule. In order for the Secretary to make this

determination, an applicant must submit information sufficient for the Secretary to make each of the following affirmative findings:

**(A)** The activity will not prevent the public's future use of groundwater as a public water source or source of water for a potable water supply. The Secretary may make this finding if the applicant provides information demonstrating that, subsequent to ceasing the activity, the groundwater enforcement standards will not be exceeded at any point on the property on which the activity is to be located.

**(B)** If located within zone one or two of a public water source protection area, the activity is consistent with the purpose of the identified source protection area and of the approved source protection plan.

**(C)** If located within an overlay district established by a municipality pursuant to 24 V.S.A. § 4414(2) for the protection of aquifers or public water source protection areas, the activity is not inconsistent with the requirements of that overlay district.

**(D)** The activity will not otherwise adversely affect public trust uses.

**(E)** The activity will not result in an exceedance of the groundwater enforcement standards at points of compliance, except as indicated in Section 604(b) of this Rule.

**(b)** An activity that is proposed for initial permitting or expansion and requires a notice of intent to operate under a general permit shall not be permitted unless:

**(1)** the activity is presumed, pursuant to Subsection (c), to not adversely affect public trust uses and not to violate Section 604(a) of this Rule; or

**(2)** the Secretary determines, on a case by case basis, that the activity will not adversely affect public trust uses and will not violate Section 604(a) of this Rule. In order for the Secretary to make this determination, an applicant must submit information sufficient for the Secretary to make each of the affirmative findings listed in Subsection (a)(2).

**(c)** An activity that is proposed for initial permitting or expansion and that requires a notice of intent to operate under a general permit is presumed to not adversely affect public trust uses and not to violate Section 604(a) of this Rule when the general permit has been reviewed, and amended if necessary, by the Secretary to assure the general permit includes conditions that:

**(1)** Subject the activity to:

**(A)** performance or technical standards that constitute the best practical treatment and control technology. For the purposes of this Subsection, best practical treatment and control technology means performance or technical standards that the Secretary has determined are reliable and reasonably assure that the requirement in Section 12-302(a)(2)(A) of this Rule is met; or

**(B)** best management practices that constitute the best practical treatment and disposal practices. For the purposes of this Subsection, best practical treatment and disposal practices means a combination of operational requirements and design standards that the Secretary has determined are reliable and reasonably assure that the requirement in Section 12-302(a)(2)(A) of this Rule is met.

**(2)** Subject the activity to such additional performance or technical standards and best management practices that the Secretary deems necessary to ensure that the activity will not adversely affect public trust uses and will not violate Section 604(a) of this Rule.

**(3)** Require the applicant to certify, as part of the notice of intent to operate under the general permit, each of the following:

**(A)** If located within zone one or two of a public water source protection area, the activity is consistent with the purpose of the identified source protection area and of the approved source protection plan.

ADD-63

**(B)** If located within an overlay district established by a municipality pursuant to 24 V.S.A. § 4414(2) for the protection of aquifers or public water source protection areas, the activity is not inconsistent with the requirements of that overlay district.

**§ 12-303.** General Presumption of Compliance.

**(a)** An activity that is proposed for initial permitting or expansion is presumed to not adversely affect public trust uses and not to violate Section 604(a) of this Rule when the rules to which the activity is subject have been reviewed, and revised if necessary, by the Secretary to assure the rules:

**(1)** Subject the activity to:

**(A)** performance or technical standards that constitute the best practical treatment and control technology. For the purposes of this Subsection, best practical treatment and control technology means performance or technical standards that the Secretary has determined are reliable and reasonably assure that the requirement in Section 12-302(a)(2)(A) of this Rule is met; or

**(B)** best management practices that constitute the best practical treatment and control practices. For the purposes of this Subsection, best practical treatment and control practices means a combination of operational requirements and design standards that the Secretary has determined are reliable and reasonably assure that the requirement in Section 12-302(a)(2)(A) of this Rule is met.

**(2)** Subject the activity to such additional performance or technical standards and best management practices that the Secretary deems necessary to ensure that the activity will not adversely affect public trust uses and will not violate Section 604(a) of this Rule.

**(3)** Require the applicant to demonstrate as a part of the application process, or certify as part of the notice of intent to operate under the general permit, each of the following:

**(A)** If located within zone one or two of a public water source protection area, the activity is consistent with the purpose of the identified source protection area and of the approved source protection plan.

**(B)** If located within an overlay district established by a municipality pursuant to 24 V.S.A. § 4414(2) for the protection of aquifers or public water source protection areas, the activity is not inconsistent with the requirements of that overlay district.

**(b)** The general presumption of compliance provided in this section shall not impede the Secretary's ability to take enforcement action if the activity adversely affects public trust uses or results in an exceedance of the groundwater enforcement standards at points of compliance.

**SUBCHAPTER 4** MANAGEMENT OF GROUNDWATER

**§ 12-401.** Management of Class I Groundwater.

Class I groundwater shall be managed as follows:

**(1)** The Secretary shall identify and reclassify groundwater to Class I in accordance with Subchapter 5 of this Rule.

**(2)** The Secretary shall not permit high potential risk activities or moderate potential risk activities in Class I groundwater areas;

**(3)** The Secretary shall not permit wastewater systems in Class I groundwater areas;

**(4)** The Secretary shall not permit storm water discharge systems that infiltrate to groundwater from stormwater hotspots in Class I groundwater areas.

ADD-64

**(5)** The Secretary shall not permit other activities in Class I groundwater areas unless the applicant seeking approval for the activity demonstrates the activity complies with the requirements in Section 12-604 of this Rule.

**(6)** The Secretary shall participate in Act 250, Section 248, and Section 248a proceedings when the Secretary determines that the proposed project may present a risk to groundwater quality in a Class I groundwater area and shall recommend that the District Environmental Commissions, in issuing Act 25 0 Land Use Permits, and the Public Service Board, in issuing Certificates of Public Good, require that the project conforms to this Rule.

**§ 12-402.** Management of Class II Groundwater.

Class II groundwater shall be managed as follows:

**(1)** The Secretary shall identify and reclassify groundwater to Class II in accordance with Subchapter 5 of this Rule.

**(2)** The Secretary shall not permit high potential risk activities in Class II groundwater areas.

**(3)** The Secretary shall not permit other activities in Class II groundwater areas unless the applicant seeking approval for the activity demonstrates the activity complies with the requirements in Section 12-604 of this Rule.

**(4)** The Secretary may participate in Act 250, Section 248, and Section 248a proceedings when the Secretary determines that the proposed project may present a risk to groundwater quality in a Class II groundwater area, in particular to the purpose for which the groundwater was reclassified as Class II, and may recommend that the District Environmental Commissions, in issuing Act 250 Land Use Permits, and the Public Service Board, in issuing Certificates of Public Good, require that the project conforms to this Rule.

**§ 12-403.** Management of Class III Groundwater.

Class III groundwater shall be managed as follows:

**(1)** The Secretary shall not permit activities in Class III groundwater areas unless the applicant seeking approval for an activity demonstrates the activity complies with the requirements in Section 12-604 of this Rule.

**(2)** The Secretary may participate in Act 250, Section 248, and Section 248a proceedings when the Secretary determines that the proposed project may present a risk to groundwater quality in a Class III groundwater area and may recommend that the District Environmental Commissions, in issuing Act 250 Land Use Permits, and the Public Service Board, in issuing Certificates of Public Good, require that the project conforms to this Rule.

**§ 12-404.** Management of Class IV Groundwater.

Class IV groundwater shall be managed as follows:

**(1)** The Secretary shall not permit activities in a Class IV groundwater area unless the applicant seeking approval for an activity demonstrates the activity complies with the requirements in Section 12-604 of this Rule.

**(2)** The Secretary shall not permit sources of water for potable water supplies or public water sources in a Class IV groundwater area, provided the Secretary may authorize, subject to conditions, use as a source of potable water supply or other use under a reclassification order issued for the aquifer.

**(3)** The Secretary may participate in Act 250, Section 248, and Section 248a proceedings when the Secretary determines that the proposed project may cause or contribute to the deterioration of groundwater quality in a Class IV groundwater area in order to reduce or eliminate the impacts of the proposed project and may recommend that the District Environmental Commissions, in issuing Act 250 Land Use Permits, and the Public Service Board, in issuing Certificates of Public Good, require that the project conforms to this Rule.

**SUBCHAPTER 5** GROUNDWATER RECLASSIFICATION PROCESS

**§ 12-501.** Policy for Groundwater Reclassification.

**(a)** The Secretary shall encourage and promote the reclassification of groundwater to Class I when the groundwater contains a permitted or existing public water source or has a high probability for use as a public water source, the character is uniformly excellent and there is no exposure to activities that pose a risk to its current or potential use as a public water source.

**(b)** The Secretary shall encourage and promote the reclassification of groundwater to Class II when the groundwater has a high probability for use as a public water source and its character is uniformly excellent but exposed to activities that may pose a risk to its current or potential use as a public water source.

**(c)** The Secretary shall support the reclassification of groundwater to Class IV when it would further the purpose of protecting human health by limiting human consumption of the groundwater and of returning, if possible, the groundwater to Class III as soon as practical in light of the circumstances, the potential harm, and the sources causing or contributing to contamination.

**§ 12-502.** Reclassification of Groundwater to Class IV.

**(a)** The Secretary shall reclassify groundwater to Class IV when the Secretary learns the groundwater enforcement standards have been exceeded at a compliance point and when the Secretary determines that such exceedance is expected to last for five or more years from the date the Secretary learns of the exceedance, or the date of the submission of the reclassification petition, whichever is earlier, except if the Secretary reaches one of the following determinations:

**(1)** Institutional controls have been implemented to address the presence of all contamination such as deed restrictions that limit access to groundwater, municipal ordinances that limit the use of contaminated groundwater, and restrictive easements or covenants.

**(2)** All of the following exist:

**(A)** Groundwater yield is 0.1 gallons per minute or less.

**(B)** No contamination is acting nor will act as a source causing or contributing to contamination in an aquifer with sufficient yield.

**(C)** Notice has been recorded and indexed in the land records for the municipality where the lot is located.

**(3)** The contamination is not present due to human actions or influence and reclassification would not further the purposes identified in Section 12-501 of this Rule for reclassification of groundwater to Class IV.

**(4)** All contamination poses a low risk. For the purposes of this determination, low risk exists when the following conditions are met:

**(A)** The groundwater enforcement standard is not exceeded, and will not be exceeded as a result of the contamination, at a receptor that is a public water source or a source of water for a potable water supply.

**(B)** A notice has been recorded and indexed in the land records for the municipality where the lot is located.

**(C)** A remediation plan required pursuant to Section 12-607 of this Rule or a corrective action plan required pursuant to 10 V.S.A. § 6615b exists for the site and either:

**(i)** the Secretary determines through a technical assessment of the contamination that, within ten years of the date the remediation plan or corrective action plan is initially approved or issued by the Secretary, natural attenuation of each substance will result in compliance with the groundwater enforcement standards at the points of compliance; or

**(ii)** the following two conditions are met:

**(I)** The area is served by municipal water, and there are no public or potable groundwater drinking water sources, or groundwater source protection areas, within 2,000 feet of the points of compliance; and

**(II)** the Secretary determines through technical assessment of the contamination that, within ten years of the date the remediation plan or corrective action plan is initially approved or issued by the Secretary, the groundwater enforcement standards will not be exceeded more than 1,000 feet beyond points of compliance and the plume will be receding.

**(b)** The Secretary shall not reclassify groundwater to Class IV in order for it to be used for industrial discharges.

**(c)** The Secretary shall require any person or persons who the Secretary determines is causing or contributing to an exceedance of the groundwater enforcement standards at a point of compliance that is the basis for the reclassification of groundwater to Class IV to take the following actions:

**(1)** Submit an initial report with the elements identified in Section 12-606 of this Rule.

**(2)** Submit a supplemental report with the elements identified in Section 12-606 of this Rule.

**(3)** Take immediate actions to abate the risk to human health or the environment, as described in Section 12-606 of this Rule.

**(4)** Implement a remediation plan with the goals of eliminating exceedances of the groundwater enforcement standards at points of compliance, as described in Section 12-606 of this Rule, and returning the groundwater to Class III.

**§ 12-503.** Reclassification Petition.

**(a)** Petitioners.

**(1)** The following persons may submit a petition to the Secretary to reclassify groundwater:

**(A)** any program or combination of programs within the Agency;

**(B)** the legislative body of the municipality in the area of the proposed reclassification;

**(C)** 25 or more persons affected by the proposed reclassification;

**(D)** any person affected by contamination in the area that could be reclassified to Class IV groundwater;

**(E)** for petitions to reclassify groundwater to Class I or II, the owner of a public water source located in the area of the proposed reclassification; or

ADD-67

**(F)** for petitions to reclassify groundwater from Class IV to Class III, a person who has completed actions authorized in a remediation plan required pursuant to Section 12-607 of this Rule.

**(2)** When required by the Secretary within a remediation plan required pursuant to Section 12-607 of this Rule or a corrective action plan required pursuant to 10 V.S.A. § 6615b , a person who the Secretary determines is causing or contributing to an exceedance of the groundwater enforcement standards at a point of compliance shall submit a petition to the Secretary to reclassify groundwater to Class IV.

**(b)** A petition can be submitted as a standalone document or included and incorporated in a permit application or a supplemental report required pursuant to Section 12-606 of this Rule. When a petition is part of another proceeding, the public participation and other procedural requirements of that proceeding shall apply to the petition.

**(c)** Petition. A petition to reclassify groundwater shall, at a minimum, include:

**(1)** Identification of the current classification and proposed reclassification and a description of the need for the proposed reclassification.

**(2)** Information describing the aquifer structure and groundwater flow regime developed by a qualified hydrogeologist, utilizing information from current and historic federal, state, and municipal data sources, and identifying, modeling, and addressing the following site components within the area proposed to be reclassified:

**(A)** bedrock and surficial geology (e.g. rock type, depositional environment);

**(B)** geological structure (e.g. fracture pattern, jointing, lineaments);

**(C)** soils (e.g. thickness, stratification, hydraulic properties);

**(D)** aquifer types;

**(E)** groundwater flow and direction, including estimated recharge and discharge areas;

**(F)** all existing uses of groundwater proposed to be reclassified, including high potential risk activities and moderate potential risk activities; and

**(G)** potential sources causing or contributing to contamination.

**(3)** A map of the proposed reclassification area delineated on a United States Geological Survey topographic map at a scale of 1:24,000, or at a scale that gives greater detail. The map shall include the following items:

**(A)** legend, graphical scale bar, north arrow, and the base map source;

**(B)** boundaries of the proposed reclassification area;

**(C)** property lines and SPANs, within the reclassification area and for all properties adjacent to the properties on which the proposed reclassification area extends;

**(D)** roads, within the proposed reclassification area and within 300 feet of the proposed boundaries;

**(E)** surface waters, with identified classification if available, and any mapped outstanding resource water (e.g., vernal pools and wetlands) as shown on the Agency of Natural Resources Atlas, within the proposed reclassification area and within 300 feet of the proposed boundaries;

**(F)** existing groundwater withdrawal locations, including public water sources and sources of water for potable water supplies, and the well tags and Vermont State Plane northing and easting coordinates

ADD-68

associated with such locations, within the proposed reclassification area and within 300 feet of the proposed boundaries;

**(G)** monitoring wells and well identification numbers, within the proposed reclassification area and within 300 feet of the proposed boundaries.

**(4)** A digital Geographic Information System (GIS) shapefile, in the Vermont State Plane Coordinate System, that delineates the boundaries of the proposed reclassification area.

**(5)** A narrative description of the following:

**(A)** the current groundwater quality within the proposed reclassification area, including at points of compliance;

**(B)** consequences of potential contamination of the groundwater;

**(C)** quantity of groundwater within the area proposed for reclassification and availability in quantities needed for public trust uses;

**(D)** availability of alternate sources of water;

**(E)** existing uses of groundwater within the proposed reclassification area, including high potential risk activities and moderate potential risk activities; and

**(F)** method used to delineate the boundaries of the area proposed to be reclassified and justification for the method.

**(6)** Compilation of all data available to the petitioner that documents the elements identified above or otherwise demonstrates the need for reclassification. This may include, but is not limited to, field data, published reports including previously submitted reports, and previously submitted permit applications. All materials shall be provided in pdf text searchable files or a compatible format. The Secretary may request data in a spreadsheet format.

**(7)** Listing of names and contact information for all landowners of properties within the proposed classification area and adjoining landowners, indexed with the properties' SPANs. For the purposes of this Section, the term adjoining landowner includes a landowner of property that either shares a property boundary with a tract of land on which the proposed reclassification area extends or is adjacent to a tract of land on which the proposed reclassification area extends and is separated only by a river, stream, or public highway from that tract of land.

**§ 12-504.** Additional Information Required.

**(a)** For petitions to reclassify groundwater to Class I, the following additional information shall be included in the petition for reclassification:

**(1)** Location of the proposed, permitted, or existing public water sources upon which the boundaries of the proposed reclassification area are based.

**(2)** An investigation of the area proposed to be reclassified showing that no high potential risk activities or moderate potential risk activities take place within the proposed boundaries of the reclassification area.

**(3)** A description of why there are no existing threats to the current or potential use of groundwater in the area of the proposed reclassification as a public water source, including a description of how the petitioner will protect such current or potential use through the acquisition of real property, easements, municipal zoning, or other means.

ADD-69

**(4)** Documentation that the proposed reclassification area:

**(A)** contains a permitted or existing public water source; or

**(B)** has a high probability for use as a public water source, which shall include the following:

**(i)** projected maximum demand figure for each proposed public water source upon which the boundaries of the proposed reclassification area are based; and

**(ii)** a hydrogeologic study indicating that the area proposed for reclassification could reasonably meet each projected public water source demand.

**(5)** Documentation of the uniformly excellent water quality throughout the proposed reclassification area.

**(6)** Documentation identifying and explaining how reclassification to Class I is consistent with:

**(A)** any municipal or regional plan provisions that address the quality or use of groundwater or the long-range management of groundwater resources;

**(B)** any provisions of an overlay district established by a municipality pursuant to 24 V.S.A. § 4414(2) for the protection of aquifers; and

**(C)** any provisions of an approved source protection plan.

**(b)** For petitions to reclassify groundwater to Class II, the following additional information shall be included in the petition for reclassification:

**(1)** Location of the proposed, permitted, or existing public water sources upon which the boundaries of the proposed reclassification area are based.

**(2)** An investigation of the area proposed to be reclassified showing that no high potential risk activities take place within the proposed boundaries of the reclassification area.

**(3)** An identification of potential threats to the current or potential use of groundwater in the area of the proposed reclassification as a public water source, including a description of how the petitioner will protect such current or potential use from the threat of future harm through the acquisition of real property, easements, municipal zoning, or other means.

**(4)** Documentation that the proposed reclassification area:

**(A)** contains a permitted or existing public water source; or

**(B)** has a high probability for use as a public water source, which shall include the following:

**(i)** the documented projected maximum demand figure for each proposed public water source upon which the boundaries of the proposed reclassification area are based; and

**(ii)** a hydrogeologic study indicating that the area proposed for reclassification could reasonably meet each projected public water source demand.

**(5)** Documentation of the uniform excellent water quality throughout the proposed reclassification area.

**(6)** Documentation identifying and explaining how reclassification to Class II is consistent with:

ADD-70

**(A)** any municipal or regional plan provisions that address the quality or use of groundwater or the long-range management of groundwater resources;

**(B)** any provisions of an overlay district established by a municipality pursuant to 24 V.S.A. § 4414(2) for the protection of aquifers; and

**(C)** any provisions of an approved source protection plan.

**(c)** For petitions to reclassify groundwater to Class IV, the following additional information shall be included in the petition for reclassification:

**(1)** Identification of the substances in the groundwater that are in exceedance of the groundwater enforcement standards at a point of compliance, including an identification of the source or sources that are causing or contributing to the exceedance of the groundwater enforcement standards.

**(2)** A description of the fate and transport of the substances in the groundwater that are in exceedance of the groundwater enforcement standards at a point of compliance, including:

**(A)** the extent of the area contaminated with substances in exceedance of the groundwater enforcement standards;

**(B)** a description of the stability of each contaminant plume (stable, declining, expanding)

**(C)** any projected expansion of the substances for five years after the date of the petition;

**(D)** any projected retreat of the substances for five years after the date of the petition; and

**(E)** the distribution of substances in the groundwater, soil, and bedrock as appropriate including:

**(i)** the distribution of the substances in aqueous, non-aqueous, sorbed, and vapor phases; and

**(ii)** any other site specific data as appropriate to demonstrate the extent of the contamination and the long term fate and transport of the substances in the subsurface including:

**(I)** vertical distribution of contamination by the substances in the groundwater;

**(II)** horizontal and vertical hydraulic gradients in groundwater;

**(III)** chemical mass transfer flux between geologic units if this information is available;

**(IV)** chemical degradation rates if available;

**(V)** chemical degradation byproducts if available; and

**(VI)** chemical mass flux to any surface water bodies if applicable.

**(d)** For petitions to reclassify groundwater from Class IV to Class III, the following additional information shall be included in the petition for reclassification:

**(1)** Information demonstrating that actions authorized in a remediation plan required pursuant to Section 12-607 of this Rule have successfully reduced the contamination to eliminate exceedances of the groundwater enforcement standards within the area proposed to be reclassified.

**(e)** The Secretary may require additional information necessary for the Secretary to make a final reclassification decision.

ADD-71

**§ 12-505.** Public Participation.

**(a)** Notice of petition.

**(1)** Following receipt of an administratively complete petition to reclassify groundwater, the Secretary shall provide notice of receipt of the petition and a copy of the petition through the Environmental Notice Bulletin.

**(2)** Within 7 calendar days of the Secretary's determination that the petition is administratively complete, the petitioner shall provide notice of the petition on a form developed by the Secretary that includes, at a minimum, instructions on how to access the petition through the Environmental Notice Bulletin and continue to receive notices and information concerning the petition, that is sent to the following persons by U.S. mail:

**(A)** the town clerk for each municipality in which the groundwater proposed for reclassification is located;

**(B)** the regional planning commission for each municipality in which the groundwater proposed for reclassification is located; and

**(C)** each landowner identified pursuant to Section 12-503(c)(7) of this Rule.

**(3)** Within 7 calendar days of the Secretary's determination that the petition is administratively complete, the petitioner shall also provide notice of the petition to the general public by publishing an announcement in a newspaper of general circulation in each municipality in which the groundwater proposed for reclassification is located which includes the name and e-mail or mailing address for the petitioner, a brief description of the proposed reclassification, and instructions on how to access the petition through the Environmental Notice Bulletin and continue to receive notices and information concerning the petition.

**(b)** Draft decision, Public comment period, and Public informational meeting.

**(1)** When the Secretary has issued a draft decision on a petition to reclassify groundwater, the Secretary shall provide notice of the draft decision and a copy of the draft decision through the Environmental Notice Bulletin. The draft decision shall include a draft reclassification order, if applicable.

**(2)** In association with the notice of the draft decision, Secretary shall provide a public comment period for no less than 30 calendar days.

**(3)** Any person may request a public informational meeting within 14 calendar days of the notice of the draft decision. The Secretary shall hold a public informational meeting whenever any person files a written request for such a meeting. If no person requests a public informational meeting, the Secretary may hold such a meeting at his or her discretion.

**(4)** When a public informational meeting is held, the Secretary shall provide at least 14 calendar days' notice of the location, date, and time of the public informational meeting through the Environmental Notice Bulletin. The public comment period shall be extended such that it does not end until at least 7 days following the public informational meeting.

**(c)** Final decision.

**(1)** When the Secretary has issued a final decision on a petition to reclassify groundwater, the Secretary shall provide notice of the final decision, a copy of the final decision, and a response to comments through the Environmental Notice Bulletin. The final decision shall include a final reclassification order, if applicable.

**(2)** When a decision reclassifies groundwater to Class IV, the Secretary shall provide notice to all Vermont licensed well drillers.

ADD-72

**(d)** Consultation with the groundwater coordinating committee.

**(1)** The Secretary may solicit comments from the groundwater coordinating committee on a petition prior to issuing a draft decision.

**(2)** The Secretary may solicit comments from the groundwater coordinating committee during the public comment period.

**(3)** The Secretary shall give comments of the committee due consideration.

**§ 12-506.** Reclassification Decision.

**(a)** Reclassification decision. The draft and final decisions on the petition to reclassify groundwater shall contain the following:

**(1)** The Secretary's affirmative findings on the following:

**(A)** That the factual information provided in accordance with the requirements of Sections 12-503 and 12-504 of this Rule adequately supports the petition for reclassification.

**(B)** If reclassification of groundwater to Class I, that the groundwater contains a permitted or existing public water source or has high probability for use as a public water source, that the character is uniformly excellent, and that there is no exposure to activities that pose a risk to its current or potential use as a public water source.

**(C)** If reclassification of groundwater to Class II, that the groundwater contains a permitted or existing public water source or has a high probability for use as a public water source and that its character is uniformly excellent despite exposure to activities that may pose a risk to its current or potential use as a public water source.

**(D)** If reclassification of groundwater to Class I or II, such reclassification is consistent with:

**(i)** any municipal or regional plan provisions that address the quality or use of groundwater or the long-range management of groundwater resources;

**(ii)** any provisions of an overlay district established by a municipality pursuant to 24 V.S.A. § 4414(2) for the protection of aquifers; and

**(iii)** any provisions of an approved source protection plan.

**(E)** If reclassification of groundwater to Class III, that the groundwater is suitable as a source of water for a potable water supply, irrigation, agricultural use, and general industrial and commercial use.

**(F)** If reclassification of groundwater to Class IV, that the groundwater is not suitable as a source of water for a potable water supply, provided the Secretary may authorize, subject to conditions, use as a source of potable water supply or other use under a reclassification order issued for the aquifer.

**(2)** A map in digital format that clearly delineates the boundaries of the reclassified area and includes a description of the area. The boundaries shall be identified on the map in a manner that allows for easy location at the site (e.g., using natural features, straight lines, placed monuments, property lines).

**(b)** Legislative approval for select reclassifications pursuant to 10 V.S.A. § 1394(f) . No classification of groundwater that involves privately owned land to Class I shall take effect until approved by an Act of the Vermont General. Assembly. No reclassification of groundwater from Class I to another class shall take effect until approved by an Act of the Vermont General Assembly.

ADD-73

**SUBCHAPTER 6** STANDARDS; BACKGROUND GROUNDWATER QUALITY; PREVENTIVE AND CORRECTIVE ACTIONS

**§ 12-601.** Establishment of Groundwater Enforcement Standards.

**(a)** The Secretary adopts and establishes the groundwater enforcement standards contained in Appendix One.

**(b)** When a compliance point is a receptor that is a public water source or a source of water for a potable water supply, the Vermont Action Level established by the Department of Health and contained in Appendix One shall apply in lieu of the groundwater enforcement standard and operate as that standard for the purposes of this Rule for the compliance point.

**§ 12-602.** Establishment of Preventive Action Levels.

In order to provide early warning of a potential exceedance of the groundwater enforcement standards, a preventive action level contained in Appendix One has been adopted and established for each groundwater enforcement standard.

**(1)** For all substances that have carcinogenic, mutagenic, or developmental toxicity properties, as established by the U.S. Environmental Protection Agency or determined by the Vermont Department of Health, the preventive action level is 10% of the groundwater enforcement standard, adjusted for analytical laboratory reporting limits.

**(2)** The preventive action level for all other listed substances is 50% of the groundwater enforcement standard, adjusted for analytical laboratory reporting limits.

**§ 12-603.** Establishment of Compliance Points.

**(a)** A single activity may have multiple compliance points.

**(b)** Activities, except wastewater systems and indirect discharge systems, shall have the following compliance points:

**(1)** any point of present use of groundwater, including use as a public water source or as a source of water for potable water supplies;

**(2)** the boundary of a Class I, Class II, or Class IV groundwater area;

**(3)** zone two of a public water source protection area; and

**(4)** any point at the boundary of the property where the activity is located.

**(c)** Wastewater systems shall have the following compliance points:

**(1)** the boundary of a Class I, Class II, or Class IV groundwater area; and

**(2)** any point on the boundary of the wastewater system presumptive isolation zone as defined in the Wastewater System and Potable Water Supply Rules.

**(d)** Indirect discharge systems shall have the following compliance points:

**(1)** the boundary of a Class I, Class II, or Class IV groundwater area; and

**(2)** any point 150 feet upgradient from a leachfield or sprayfield or land application area and any point 300 feet downgradient from a leachfield or sprayfield or land application area, as measured from:

**(A)** for a leachfield in a mound, the corners of the basal area of the mound;

ADD-74

**(B)** for a leachfield not in a mound, the corners of the leachfield stone or other application surface; and

**(C)** for a sprayfield or land application area, the edges of the disposal area or the land application area.

**(e)** In addition to the compliance points established pursuant to Subsection (b), the following activities shall have the following additional compliance points:

**(1)** For an active certified solid waste landfill operational unit: no more than 150 meters from the edge of the liner in the hydraulically down-gradient direction.

**(2)** For certified hazardous waste treatment or disposal facilities, including waste piles, landfills, and surface impoundments: the edge of the regulated activity.

**(3)** For injection wells: a case-by-case determination.

**(4)** For underground storage tanks: outside of the underground tank system.

**(f)** The Secretary may, and a person may petition the Secretary to, modify the horizontal distances and associated compliance points identified in Subsection (b), (c), or (d) on a case-by-case basis.

**(1)** The Secretary may adopt or approve an increase or decrease to the horizontal distance if the Secretary determines, taking into account the characteristics identified in Subsection (f)(3), that the increase or decrease will not result in potential exceedances of the groundwater enforcement standards or that the increase or decrease is necessary in order to protect an existing use of groundwater.

**(2)** The Secretary shall not approve an increase to the horizontal distance that would allow a compliance point to be located beyond the boundary of the property on which the activity is located.

**(3)** The petitioner seeking a modification to the horizontal distance shall provide the Secretary with information on all of the following characteristics and evidence that the proposed change will not result in potential exceedances of the groundwater enforcement standards at a point of any existing use of groundwater:

**(A)** site topography;

**(B)** nature, thickness, and permeability of unconsolidated materials;

**(C)** nature and permeability of bedrock;

**(D)** groundwater depth, flow direction, and velocity;

**(E)** volume, type, and characteristics of potential sources that may result in contamination, including waste loading;

**(F)** mobility of substances that cause or contribute to contamination;

**(G)** distances to property boundaries and surface waters;

**(H)** engineering design of the activity;

**(I)** life span of the activity;

**(J)** present use of land and groundwater; and

**(K)** potential abatement options if the groundwater enforcement standards are exceeded.

ADD-75

**(4)** The Secretary may request additional information from the petitioner when the Secretary determines such information would aid in the determination of whether modification to the horizontal distance would result in potential exceedances of the groundwater enforcement standards or is necessary in order to protect an existing use of groundwater.

**§ 12-604.** Permitting Prohibitions.

**(a)** The Secretary shall not permit an activity that will result in an exceedance of the groundwater enforcement standards at points of compliance, except as indicated in Subsection (b).

**(b)** The Secretary shall not authorize a remediation plan required pursuant to Section 12-607 of this Rule, or a corrective action plan required pursuant to 10 V.S.A. § 6615 b, that permits activities that will result in an exceedance of the groundwater enforcement standards at a point of compliance or otherwise adversely affect an existing use of groundwater, unless it is technically impractical to achieve complete remediation of the substances for which the groundwater enforcement standards will be exceeded.

**§ 12-605.** Background Groundwater Quality.

**(a)** Application for determining background groundwater quality. A person seeking to establish background groundwater quality, in a particular area, for a substance for which a groundwater enforcement standard has been established shall submit the following to the Secretary for the Secretary's review and approval, prior to conducting sampling:

**(1)** Information describing the aquifer structure and groundwater flow regime developed by a qualified hydrogeologist, utilizing information from current and historic federal, state, and municipal data sources, and identifying, modeling, and addressing the following site components within the for the area of interest:

**(A)** bedrock and surficial geology (e.g. rock type, depositional environment);

**(B)** geological structure (e.g. fracture pattern, jointing, lineaments);

**(C)** soils (e.g. thickness, stratification, hydraulic properties);

**(D)** aquifer types;

**(E)** groundwater flow, including estimated recharge and discharge areas;

**(F)** all existing uses of groundwater proposed to be reclassified, including high potential risk activities and moderate potential risk activities; and

**(G)** potential sources causing or contributing to contamination.

**(2)** A sampling and monitoring plan prepared by a qualified hydrogeologist that will produce data representative of the groundwater quality conditions at and around the area of interest. The plan shall identify, at a minimum, the following:

**(A)** the number of monitoring wells that will be sampled;

**(B)** the location and depth of the monitoring wells, which shall be selected so as to be geologically and geochemically similar to the area of interest and to be unaffected by current and historic activities at the site, including by being hydrogeologically upgradient of such activities if possible;

**(C)** the number and frequency of the samples to be taken from the monitoring wells and any existing sources of water for potable water supplies, public water sources, or non-potable wells or springs;

ADD-76

**(D)** the sampling methodology;

**(E)** the substances to be analyzed in the samples that are collected;

**(F)** the analytical methods to be used in conducting the sample analysis;

**(G)** identification of whether samples obtained prior to the approval of the monitoring plan will be used as data points and, if so, the sampling date, location, method of analysis for each of the samples to be used; and

**(H)** a quality assurance/quality control plan for sample collection, testing, and analysis.

**(3)** The Secretary may request additional information from an applicant when the Secretary determines that the sampling and monitoring plan may not provide data representative of the groundwater quality at and around the area of interest.

**(b)** Following the Secretary's approval of the information submitted pursuant to Subsection (a)(1) and of the sampling and monitoring plan, as well as the completion of sampling, the person seeking to establish background groundwater quality shall submit a background groundwater quality report to the Secretary. The report shall include the following:

**(1)** All sampling results and data collected pursuant to the approved monitoring and sampling plan.

**(2)** An analysis of all data collected pursuant to the approved monitoring and sampling plan.

**(3)** Any discrepancies between the approved sampling and monitoring plan and the sampling completed for the area of interest.

**(4)** A proposed background groundwater concentration of all substances for which the person seeks to establish background groundwater quality and a justification for each concentration. The justification may include statistical analysis.

**(5)** Additional information the Secretary determines is necessary to approve or deny the proposed background groundwater concentrations.

**(c)** Following submission of the background groundwater quality report to the Secretary, the Secretary shall approve or deny the proposed background groundwater concentrations or may establish alternative background groundwater concentrations based on the background groundwater quality report. The Secretary may consult with the groundwater coordinating committee prior to making a final determination regarding background groundwater concentrations.

**§ 12-606.** Preventive Actions.

**(a)** If groundwater monitoring indicates the presence in groundwater of a substance in an amount exceeding the preventive action level at a compliance point that a permitted activity is causing or contributing to, the permittee shall, within 45 calendar days of the detection, submit to the Secretary a report that includes:

**(1)** a description of the potential sources of the substance and causes of any exceedance of the preventive action levels;

**(2)** identification of the substances detected and their detection limits;

**(3)** copies of all sampling data;

ADD-77

**(4)** a description of the reliability of the sampling data, including the quality of the sampling data, sampling procedures, precision and accuracy of the analytical test, size of the data set, and quality control and quality assurance procedures used;

**(5)** recommendations regarding whether any actions should be taken to prevent an exceedance of the groundwater enforcement standards at a compliance point; and

**(6)** identification of any background groundwater concentration approved by the Secretary pursuant to Section 12-605 of this Rule.

**(b)** The Secretary may:

**(1)** Request additional information.

**(2)** Require the permitee to take such actions as the Secretary determines to be necessary to prevent exceedance of the groundwater enforcement standards.

**(c)** In determining what actions to require, the Secretary shall consider any background groundwater concentration approved by the Secretary pursuant to Section 12-605 of this Rule.

**§ 12-607.** Corrective Actions.

**(a)** If groundwater monitoring indicates contamination at a compliance point that a permitted activity is causing or contributing to, the permittee shall:

**(1)** Immediately notify the Secretary of the detection.

**(2)** Within 10 calendar days following the detection, submit to the Secretary an initial report that includes:

**(A)** a description of the potential sources of contamination and causes of any exceedance of the groundwater enforcement standards;

**(B)** identification of the substances detected and their detection limits; and

**(C)** the known impacts on groundwater.

**(3)** Within 30 calendar days, or alternative time period approved by the Secretary, following the detection, submit to the Secretary a supplemental report that includes:

**(A)** Copies of all sampling data.

**(B)** A description of the reliability of the sampling data, including the quality of the sampling data, sampling procedures, precision and accuracy of the analytical test, size of the data set, and quality control and quality assurance procedures used.

**(C)** A description of the human health and environmental impact of the detection, including the substance's mobility in the subsurface, environmental fate, risk posed by the substance, whether the substance has carcinogenic, mutagenic, or developmental toxicity properties, and whether the substance has interactive effects with other substances.

**(D)** An evaluation addressing each of the following and that the Secretary may require be completed by an independent consultant: the effectiveness of the activity as permitted, including any conditions of the permit, in preventing contamination; an evaluation of whether the activity, as designed, constructed, and operated, is performing in accordance with the permit and governing law; and an evaluation of whether design or operational changes would reduce the concentration of the substance in the groundwater.

ADD-78

**(E)** Identification of any background groundwater concentration approved by the Secretary pursuant to Section 12-605 of this Rule for the substance and analysis of whether background conditions are causing or contributing to the exceedance of the groundwater enforcement standards at a point of compliance.

**(F)** Identification of the presence of other potential sources of contamination.

**(G)** A description of the geologic and hydro geologic conditions at the site, including the nature, thickness, and permeability of the unconsolidated materials; the nature and permeability of the bedrock; the depth to the water table; groundwater flow gradients, both vertical and horizontal; and the position of the activity within the groundwater flow system.

**(H)** Identification of all existing uses of groundwater in the vicinity of the activity, a visual survey of uses in the vicinity of the activity, and an identification of all receptors in the vicinity of the activity that could potentially be affected.

**(I)** Identification of permitted activities in the vicinity of the activity.

**(J)** A copy of the petition to reclassify groundwater to Class IV if the person has submitted, or the Secretary has directed the person to submit, such a petition pursuant to Section 12-503 of this Rule.

**(K)** Any other information that the Secretary deems necessary to ensure an appropriate response is required for the exceedance of the groundwater enforcement standards.

**(b)** Based on the nature and degree of the substance that is in exceedance of the groundwater enforcement standards, and the possible receptors of the contaminated groundwater, the Secretary may require the permittee to take immediate actions to abate the risk to human health or the environment. These actions may include ceasing the activity involved; providing alternative sources of drinking water; providing treatment for affected sources of water for potable water supplies and public water sources; conducting a response action to contain the release; installation of monitoring wells; and the collection of additional samples.

**(c)** Based on an evaluation of all information available to the Secretary, including the initial and supplemental reports, the Secretary shall determine whether any response to the detection, beyond any immediate actions required pursuant to Subsection (b), is required in order to remediate the contamination to eliminate exceedances of the groundwater enforcement standards.

**(1)** The Secretary may determine that the permittee is not required to undertake additional responsive actions:

**(A)** if the permittee demonstrates, to the satisfaction of the Secretary, that the detection of the substance in exceedance of the groundwater enforcement standards is solely attributable to a background groundwater concentration approved by the Secretary pursuant to Section 12-605 of this Rule and that the person's actions did not cause or contribute to the detected levels; or

**(B)** if the permittee demonstrates, to the satisfaction of the Secretary, that the detection is solely attributable to a source not under the control of the person and that the person's actions did not cause or contribute to the detected levels.

**(2)** Unless the Secretary determines, pursuant to Subsection (c)(1), that no additional responsive actions are necessary, the Secretary shall require the permittee to implement a remediation plan with the goals of eliminating exceedances of the groundwater enforcement standards at points of compliance and enabling the groundwater to be classified as Class III.

**(A)** The Secretary may require the following actions as part of the remediation plan:

**(i)** installation of new or additional monitoring wells or alternative contaminant investigation methodologies;

ADD-79

**(ii)** change in the monitoring program, including increased monitoring;

**(iii)** investigation of the extent of contamination;

**(iv)** change in the operation of the activity;

**(v)** modification in the design of the activity;

**(vi)** adoption of alternate method of waste treatment or disposal;

**(vii)** ceasing of the activity or closure and abandonment of the activity;

**(viii)** implementation of corrective action to restore groundwater quality:

**(ix)** removal of contaminated soils;

**(x)** submission of appropriate permit or permit amendment applications if permits or permit amendments are required for any of these responsive actions;

**(xi)** submission of a petition to reclassify groundwater to Class IV; and

**(xii)** any other action necessary to remediate the contamination.

**(B)** The Secretary may authorize actions as part of the remediation plan that may result in continued exceedances of the groundwater enforcement standard if the Secretary determines that the action will not adversely affect an existing use of groundwater and that it is technically impractical to achieve complete remediation of the contamination.

**(C)** For activities subject to the Investigation and Remediation of Contaminated Properties Rule, the remediation plan may take the form of a corrective action plan required pursuant to 10 V.S.A. § 6615b .

**(d)** If the Secretary determines that the source of the contamination and cause of the exceedance of the groundwater enforcement standard is an action not subject to this Rule, the Secretary shall:

**(1)** Notify the appropriate local, State, or Federal authorities of the action and submit evidence demonstrating the action is causing or contributing to the exceedance.

**(2)** Cooperate with the appropriate local, State, or Federal Authorities in determining the appropriate response.

**(e)** Notwithstanding the timeframes established by this Section, the Secretary and the person responsible for the activity may agree on an alternative timeframe for the submittal of a report.

**Appendix One.** Table l: Groundwater Enforcement Standards, Vermont Action Levels, and Preventive Action Levels

Bolded values indicate values that have been revised or added since the December 16, 2016 Groundwater Protection Rule and Strategy.

[Display Table]
Notes:

**(a)** All units are micrograms per Liter (5g/L) (i.e., parts per billion (ppb)), unless otherwise noted.

**(b)** Groundwater Enforcement Standard of 1 5g/L for any combination of Aldicarb, Aldicarb sulfone and Aldicarb sulfoxide.

ADD-80

**(c)** Preventive Action Level of 1 5g/L for any combination of Aldicarb, Aldicarb sulfone and Aldicarb sulfoxide.

**(d)** Notwithstanding Section 12-602(1) and (2), the Preventive Action Level is based on the Safe Drinking Water Act monitoring requirements, not as a percentage of the Groundwater Enforcement Standard. See 40 C.F.R. §§ 141.16 and 141.26.

**(e)** Adjusted Gross Alpha excludes Uranium and Radon.

**(f)** Groundwater Enforcement Standard of 0.02 ug/L for any combination of PFOA, PFOS, PFHxS, PFHpA, and **PFNA**.

**(g)** Preventive Action Level of 0.002 ug/L for any combination of PFOA, PFOS, PFHxS, PFHpA, and **PFNA**.

**(h)** Groundwater Enforcement Standard of 23 ug/L for any combination of 1,2,3-TMB, 1,2,4-TMB, and 1,3,5-TMB isomers.

**(i)** Preventive Action Level of 2 ug/L for any combination of 1,2,3-TMB, 1,2,4-TMB, and 1,3,5-TMB isomers.

## Statutory Authority

**STATUTORY AUTHORITY:**

10     V.S.A.     §§     1390     to     1394

## History

**EFFECTIVE DATE:**

September     29,     1988     Secretary     of     State     Rule     Log     #88-37

**AMENDED:**

November 15, 1997 Secretary of State Rule Log #97-55; January 20, 2000 Secretary of State Rule Log #00-02; February 14, 2005 Secretary of State Rule Log #05-004: December 31, 2016 Secretary of State Rule Log #16-063; July 6, 2019 Secretary of State Rule Log #19-027

CODE     OF     VERMONT     RULES
Copyright © 2024 Matthew Bender & Company, Inc. A member of the LexisNexis Group. All rights reserved.

ADD-81