**ORAL ARGUMENT NOT YET SCHEDULED**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE D.C. CIRCUIT**

AMERICAN WATER WORKS
ASSOCIATION, ET AL.,

    *Petitioners,*

    v.

U.S. ENVIRONMENTAL PROTECTION
AGENCY, et al.,

    *Respondents*.

Case No. 24-1188 and
Consolidated Cases

**RESPONDENTS' REPLY IN SUPPORT OF THEIR MOTION TO SEVER
AND HOLD CHALLENGES TO INDEX PFAS IN ABEYANCE**

<div style="margin-left:50%">

ADAM R.F. GUSTAFSON
  *Principal Deputy Assistant Attorney
  General*

BRADLEY CRAIGMYLE
  *Deputy Assistant Attorney General*

*/s/ Kimere J. Kimball*
KIMERE J. KIMBALL
  U.S. Department of Justice
  Env't & Natural Resources Div.
  P.O. Box 7611
  Washington, DC 20044
  (202) 514-2285 (Kimball)
  Kimere.Kimball@usdoj.gov
  *Counsel for Respondents*

</div>

*Of Counsel:*
  Heidi Nalven
  U.S. Environmental Protection
  Agency

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................................1

INTRODUCTION.....................................................................................1

ARGUMENT .........................................................................................2

    I.   Judicial Economy Would Be Served by Abeyance .................................3

    II.  Any Putative Prejudice to the Parties Is Not Outweighed by the Benefits of Judicial Economy...................................................................9

    III. The Court Should Enter an Abeyance with Status Reports ....................10

CONCLUSION ......................................................................................11

CERTIFICATE OF COMPLIANCE ................................................................13

# INTRODUCTION

When EPA formally commenced the rulemaking process to rescind the Index PFAS portions of the 2024 Rule challenged in this action, it informed this Court of the upcoming rulemaking and moved to sever the affected portions of this litigation and place them in abeyance. The reason for this is clear: EPA is engaged in a rulemaking that could entirely moot this Court's consideration of *all* aspects of the Index PFAS portion of the 2024 Rule. This Court has explained at length that "the *primary* reason for holding a case in abeyance is to promote judicial economy." *Utah v. EPA*, No. 23-1157, 2025 WL 1354371, at *2 (D.C. Cir. May 2, 2025) (emphasis added).

Abeyance here would preserve substantial judicial resources. Even setting aside the questions of law that Petitioners assert when challenging the Index PFAS portion of the 2024 Rule, the record-based challenges are extraordinarily complex, replete with multifaceted statistical studies of where chemicals occur in drinking water and highly technical scientific analyses of issues including the biological mechanisms by which one of the Index PFAS affects the liver. Petitioners have challenged all of these issues and, while it is certainly true that counsel of record are deeply steeped in them, there is no reason the Court should expend resources wading into this morass when EPA is actively engaged in a rulemaking that could

1

obviate the need for judicial review of this record.  Utility Petitioners'[1] and Intervenors' arguments to the contrary are unavailing.

## ARGUMENT

When reaffirming the appropriateness of holding cases in abeyance when an agency decides to reconsider the rule at issue, this Court recently elucidated the factors it considers.  *Utah*, 2025 WL 1354371, at *2-3.  First, as noted *supra*, the "primary reason for holding a case in abeyance is to promote judicial economy." *Id*. at *2.  Second, "the interest in judicial economy must be weighed against any potential prejudice to the parties," but "[e]ven when abeyance is opposed and a party points to some hardship, the possibility of inconvenience will not categorically outweigh the need for the sound use of judicial resources."  *Id*.  And finally, "when a court determines abeyance is warranted, it must be mindful of the duration for which it will defer review" and "a longer abeyance, coupled with periodic status reports, may be justified if an agency has committed to reconsidering a challenged rule."  *Id*. at *3.  All of these factors weigh in favor of severing the Index PFAS issues and abating proceedings on those issues.

---

[1] Industry Petitioners did not file a response to EPA's motion.

## I.    Judicial Economy Would Be Served by Abeyance

As explained in EPA's opening motion, judicial economy would be served by an abeyance because EPA has begun a rulemaking process to rescind the Index PFAS portion of the 2024 Rule.  Mot. (ECF 2160037) ¶ 6.  The effect of such an abeyance on judicial resources is obvious, as EPA's rescission of these provisions would obviate the need for this Court to consider the vast majority of issues Petitioners have raised in this case.  Indeed, all but 15 pages of Industry Petitioners' opening brief arguments and all but *five* pages of Utility Petitioners' opening brief arguments exclusively address Index PFAS.  *See* Industry Br. (ECF 2162576); Utility Br. (ECF 2162526).  The Court need not consider *any* of these issues if EPA rescinds the Index PFAS portion of the Rule.

Utility Petitioners' arguments to the contrary are unavailing.  Utility Opp'n (ECF 2161715) at 8-17.  At the outset, Utility Petitioners' assertion that the mere fact that briefing is completed in this matter cautions against abeyance is simply incorrect.  *Id*. at 8-13.  Oral argument has not even been scheduled in this case yet.  And, upon the agency's explanation that it intends to undertake a rulemaking, this Court has placed cases in abeyance *well* after merits briefing had completed, including even after oral argument.  *See, e.g.*, *United Steel, Paper, & Forestry v. EPA*, No. 24-1151 (D.C. Cir.).  Indeed, in *United Steel*, the agency moved over opposition to place the case in abeyance just *eleven days before* oral argument was

scheduled, and the Court ultimately granted that motion after the argument. *United Steel*, No. 24-1151, Mot. (ECF 2104767) (Mar. 10, 2025); Order (ECF 2113775) (April 30, 2025). And in *Kentucky v. EPA*, the agency moved to place the case in abeyance two months *after* oral argument so the agency could merely *consider* whether to reconsider the rule, and the Court granted that motion. *Kentucky*, No. 24-1050, Mot. (ECF 2101162) (Feb. 18, 2025); Order (ECF 2102525) (Feb. 25, 2025).[2] Here, EPA's rulemaking process is substantially more progressed than in either of those cases; EPA's rule proposing to rescind the Index PFAS portions of the 2024 Rule is already drafted and under review at the Office of Management and Budget. *See* Off. of Mgmt. & Budget, Pending EO 12866 Regulatory Review (2026) https://www.reginfo.gov/public/do/eoDetails?rrid=1285114 [https://perma.cc/CD7D-AWC9].

Moreover, Utility Petitioners point to the fact that there has been additional briefing on a *single issue*—whether EPA had authority to issue regulatory determinations and regulations for the Index PFAS simultaneously and in tandem—through both merits briefing and EPA's motion for partial vacatur. Utility Opp'n at 14-16. But this ignores that—although potentially dispositive— that issue is a small fraction of the issues Petitioners raised regarding the Index

---

[2] For the Court's convenience, the cited *United Steel* and *Kentucky* motions and orders are included in the attached Addendum.

PFAS; the Court has not even begun to consider the vast majority of challenges raised to the Index PFAS.  *See, e.g.*, Utility Br. at 18-32 (challenging deficient procedure), 33-53 (challenging other issues regarding Index PFAS); Industry Br. at 36-42 (challenging deficient procedure), 32-36, 42-62 (challenging other issues regarding Index PFAS); EPA Br. (ECF 2162593) at 28-37 (addressing deficient procedure); 37-64, 72-92 (addressing other challenges to Index PFAS); Intervenor Br. (ECF 2162588) at 10-12 (addressing deficient procedure), 12-21, 23-32 (addressing other challenges to Index PFAS).

Utility Petitioners ignore the fact that the remaining challenges to the Index PFAS—which no panel of this Court has yet considered and which could be entirely obviated if EPA rescinds the Index PFAS through its rulemaking—are largely highly complex, record-based challenges.  These include challenges to such highly technical scientific and statistical analyses supporting determinations that:

- EPA properly relied on rodent studies showing HFPO-DA (one of the Index PFAS) elicits a constellation of adverse liver effects relevant to humans, *see, e.g.*, Industry Br. at 60-62; EPA Br. at 82-86;

- EPA applied appropriate uncertainty factors to address extrapolation of subchronic studies regarding HFPO-DA to analyze chronic effects of the contaminant, *see, e.g.*, Industry Br. at 55-57; EPA Br. at 86-89;

- EPA appropriately addressed non-drinking water sources of HFPO-DA when setting the regulatory levels of HFPO-DA and the Index PFAS, *see, e.g.*, Industry Br. at 57-60; EPA Br. at 79-82;

- EPA reasonably determined there is a substantial likelihood that HFPO-DA occurs at frequencies and levels of public health concern, *see, e.g.*, Industry Br. at 47-55; Utility Br. at 46-48; Intervenor Br. at 13-16; EPA Br. at 40-53;

- EPA reasonably determined there is a substantial likelihood that PFNA (another Index PFAS) occurs at frequencies and levels of public health concern, *see, e.g.*, Utility Br. at 48-51; Intervenor Br. at 16-17; EPA Br. at 53-55;

- EPA reasonably determined there is a substantial likelihood that the Index PFAS co-occur at frequencies and levels of public health concern, *see, e.g.*, Industry Br. at 42-43; Utility Br. at 51-53; Intervenor Br. at 17-18; EPA Br. at 55-59; and

- EPA reasonably assessed the health effects of Index PFAS, *see, e.g.*, Industry Br. at 43-47; Utility Br. at 51-53; Intervenor Br. at 18-21; EPA Br. at 59-64.

Furthermore, Utility Petitioners assert that the Court should not consider EPA's upcoming rulemaking because EPA has stated that the rulemaking "may" moot the instant litigation. Utility Opp'n at 10-11, 16-17. But the mere fact that EPA cannot pre-ordain the outcome of notice-and-comment rulemaking has no bearing on the appropriateness of an abeyance *pending* that rulemaking. Utility Petitioners' attempt to import the elements necessary to *dismiss* a case as moot into the Court's analysis of whether to merely *abate proceedings* pending a rulemaking is thus unavailing.

Similarly, Intervenors' assertion that the Court should not abate proceedings for EPA's rulemaking because a rule resulting from that process may later be

challenged fares no better. Intervenors' Opp'n (ECF 2161699) at 10-11, 16-18.

Addressing issues that arise in that future rulemaking is best left to challenges *to*

*that rulemaking*, not through a potentially advisory opinion in this litigation. As

this Court has explained, "abeyance is appropriate when an agency contemplates a

complete reversal of course that, if adopted, would necessitate substantively

different legal analysis and would likely moot the analysis we could undertake if

deciding the case now." *Utah*, 2025 WL 1354371, at *3 (cleaned up). There could

be no more axiomatic "reversal of course," *id.*, than a rulemaking that seeks not

just to reconsider but to fully *rescind* the Index PFAS portions of the 2024 Rule.

And, as explained *supra*, such a final rule could moot any analysis this Court

undertakes in deciding at the very least the record-based issues regarding the Index

PFAS issues before the Court now.

Intervenors' concerns that EPA is attempting to "stave off judicial review"

by undertaking the rulemaking is similarly misplaced. *Contra* Intervenors' Opp'n

at 10-11 (citing *Sierra Club v. U.S. Dep't of Transp.*, 125 F.4th 1170, 1180 (D.C.

Cir. 2025)). First, EPA first announced the rescission rulemaking months ago, not

in any attempt to evade review. *See* EPA, *EPA Announces It Will Keep Maximum*

*Contaminant Levels for PFOA*, PFOS (May 14, 2025),

https://www.epa.gov/newsreleases/epa-announces-it-will-keep-maximum-

contaminant-levels-pfoa-pfos [https://perma.cc/JT26-RKZ4]. Second, the sole

case Intervenors cite for this position, *Sierra Club*, did not address a motion to abate proceedings, but rather an analysis of whether a case remained ripe for review pending a rulemaking. *See* 125 F.4th at 1179-80. EPA is not asserting that challenges to the Index PFAS are not ripe for review in this proceeding; it is asserting the Court should exercise its discretion to abate proceedings because the issue may very soon become moot.

Finally, Intervenors' arguments regarding judicial economy fare no better. Intervenors' Opp'n at 7-11, 16-18. At the outset, their assertion that the Index PFAS issues cannot be easily severed from the challenges to the PFOA/PFOS portions of the 2024 Rule EPA continues to defend is simply incorrect. *Id*. at 7-8. Indeed, EPA expressly made these provisions of the 2024 Rule severable, which Intervenors themselves directly assert in their merits brief. *See* Intervenors' Br. at 44-45; *see also* EPA Br. at 116-118 (citing JA201, the portion of the Final Rule outlining the severability of these issues). And although Intervenors are correct that Petitioners assert the same arguments to challenge the economic analyses of both the Index PFAS and of PFOA/PFOS, Intervenors' Opp'n at 7-8, this is immaterial. Although EPA considered the impacts of all six PFAS in its analyses, it *also* analyzed PFOA/PFOS separate and apart from the Index PFAS, thus facilitating severing of these issues. *See* EPA Br. at 108 (citing JA2060-61, JA179 at Tbl. 69 (summarizing costs and benefits of PFOA/PFOS standards alone)).

In short, judicial economy would be served by severing the Index PFAS and placing that portion of the case in abeyance.

## II. Any Putative Prejudice to the Parties Is Not Outweighed by the Benefits of Judicial Economy

As this Court has explained, "[e]ven when abeyance is opposed and a party points to some hardship, the possibility of inconvenience will not categorically outweigh the need for the sound use of judicial resources." *Utah*, 2025 WL 1354371, at *2. Here, any putative prejudice to Utility Petitioners and Intervenors is outweighed by the substantial judicial economy that would result from abeyance.

As EPA explained in its opening motion, initial monitoring deadlines for the Index PFAS are still over a year away (April 26, 2027). Mot. ¶ 10 (citing 40 C.F.R. § 141.902(b)(1)(xi)). Although Utility Petitioners respond that monitoring in general costs them money, Utility Opp'n at 18, this does not undercut EPA's abeyance request. As EPA explained, any monitoring specific to the Index PFAS necessary to meet the April 2027 deadline is minimal because the same sampling and analysis is required for PFOA/PFOS, which are unaffected by this requested abeyance. Mot. ¶ 10 (citing 89 Fed. Reg. 32532, 32543, 32605 (Apr. 26, 2024)). And although Utility Petitioners assert that, if the rescission rulemaking takes too long, they may also incur costs to comply with the regulatory limits for the contaminants, Utility Opp'n at 18-19, this highly hypothetical future harm could be

9

addressed, if necessary, through other means.  Utility Petitioners could seek to end the abeyance at that point, or they could potentially seek a judicial stay of the rule.

On the opposite side, Intervenors argue that delay harms them because they may want to use monitoring data regarding Index PFAS.  Intervenors' Opp'n at 14-15.  But until EPA issues a final rule rescinding the monitoring requirements, they remain in effect.  Thus, any harm Intervenors may incur would be caused by a future rescission rule, not by an abeyance of this proceeding.

And finally, Intervenors assert that states may not seek authority to enforce the Index PFAS regulations during the pendency of an abeyance, Intervenors' Opp'n at 13-14.  But this is both speculative and irrelevant.  Unless a state obtains primary enforcement responsibility for a new drinking water standard, EPA is the primary enforcement authority for the rule. 42 U.S.C. § 300g-3(a)(2).

Accordingly, neither Utility Petitioners nor Intervenors have identified any harm that could outweigh the benefits of judicial economy that would result from severing the Index PFAS and abating proceedings.

### III.    The Court Should Enter an Abeyance with Status Reports

The final factor the Court considers is the duration of the abeyance.  *Utah*, 2025 WL 1354371, at *3.  "[A] longer abeyance, coupled with periodic status reports, may be justified if an agency has committed to reconsidering a challenged rule." *Id*. at *3.  Here, EPA announced its intention to rescind the Index PFAS

portion of the 2024 Rule, has drafted a proposed rule, and has begun the interagency review process it must complete before issuing that proposed rule. Off. of Mgmt. & Budget, Pending EO 12866 Regulatory Review (2026) https://www.reginfo.gov/public/do/eoDetails?rrid=1285114 [https://perma.cc/CD7D-AWC9]. Accordingly, as set forth in EPA's opening motion, the Court should sever the Index PFAS issues in this litigation and place proceedings regarding those challenges in abeyance with status reports due on 120-day intervals.

## CONCLUSION

For the foregoing reasons, the Court should sever Petitioners' challenges to the Index PFAS portion of the 2024 Rule and placed the severed challenges in abeyance with status reports due at 120-day intervals.

Respectfully submitted,

ADAM R.F. GUSTAFSON
  *Principal Deputy Assistant Attorney General*

*Of Counsel:*
  Heidi Nalven
  U.S. Environmental Protection Agency

BRADLEY CRAIGMYLE
  *Deputy Assistant Attorney General*

*/s/ Kimere J. Kimball*
Date: March 11, 2026
KIMERE J. KIMBALL
  U.S. Department of Justice
  Env't & Natural Resources Div.
  P.O. Box 7611
  Washington, DC 20044

(202) 514-2285 (Kimball)
Kimere.Kimball@usdoj.gov

# CERTIFICATE OF COMPLIANCE

This document complies with the word limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f), this document contains 2,428 words.

This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Finally, I certify that on March 11, 2026, I electronically filed this document with the Court's CM/ECF system, which will serve each party's counsel of record.

_/s/ Kimere J. Kimball_____
KIMERE J. KIMBALL